# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>        v.<br><br>DEUTSCHE BANK AKTIENGESELLSCHAFT, et al.,<br><br>      Defendants. | **Case No. 22-CV-10018-UA (JSR)** |
| JANE DOE 1, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>        v.<br><br>JP MORGAN CHASE & CO.,<br><br>      Defendant. | **Case No. 22-CV-10019-UA (JSR)** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE INDIVIDUAL AND CLASS ACTION COMPLAINT ON BEHALF OF DEFENDANTS DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK AG NEW YORK BRANCH, AND DEUTSCHE BANK TRUST COMPANY AMERICAS**

David B. Hennes
Lisa H. Bebchick
Andrew S. Todres
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000
david.hennes@ropesgray.com
lisa.bebchick@ropesgray.com
andrew.todres@ropesgray.com

James P. Dowden (*admitted pro hac*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7970
james.dowden@ropesgray.com

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL OVERVIEW .............................................................................................. 2

ARGUMENT .............................................................................................................. 4

I.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TVPA (COUNTS I-III)......... 5

    A.  Count I Should Be Dismissed Because Plaintiff Fails to Allege That Deutsche Bank Participated in a Sex Trafficking Venture in Violation of the TVPA ................................................................................ 5

        1.  Deutsche Bank Did Not "Participate" in a Venture or Benefit from One ............................................................... 6

        2.  Plaintiff Fails to Allege That Deutsche Bank Knew or Should Have Known About Epstein's Sex Trafficking Venture ........................................................................... 9

    B.  Counts II and III Should Be Dismissed Because Section 1595 Does Not Create a Civil Cause of Action for Conspiracy or Attempt and, in Any Event, Are Not Supported by Any Well-Pled Allegations .......... 17

II.  PLAINTIFF FAILS TO STATE A RICO CLAIM (COUNT IV)................................... 18

III.  PLAINTIFF CANNOT STATE A CLAIM UNDER THE  NEW YORK ADULT SURVIVOR'S ACT (COUNT V) ...................................................................... 21

    A.  Count V Is Not a Valid Cause of Action ................................................. 21

    B.  Plaintiff Cannot State a Claim for Negligence ......................................... 22

    C.  Plaintiff Cannot State an Emotional Distress Claim................................. 24

CONCLUSION.......................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.B. v. Hilton Worldwide Holdings, Inc.*,
    484 F. Supp. 3d 921 (D. Or. 2020) ...................................................................................10, 11

*AA by BB v. Hammondsport Central Sch. Dist.*,
    527 F. Supp. 3d 501 (W.D.N.Y. 2021) ...................................................................................22

*In re Agape Litig.*,
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) ...................................................................................23

*Aiken v. Interglobal Mergers & Acquisitions*,
    2006 WL 1878323 (S.D.N.Y. July 5, 2006) ...........................................................................23

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) .............................................................................................................20, 21

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. July 30, 2020) ........................................................................11

*Bank Brussels Lambert, S.A. v. Intermetals Corp.*,
    779 F. Supp. 741 (S.D.N.Y. 1991) ........................................................................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................................4

*Beter v. Murdoch*,
    2018 WL 3323162 (S.D.N.Y. June 22, 2018) .......................................................................19

*C.S. v. Wyndham Hotels & Resorts, Inc.*,
    538 F. Supp. 3d 1284 (M.D. Fla. 2021) .............................................................................11, 16

*Calisch Assocs., Inc. v. Mfg. Hanover Tr. Co.*,
    542 N.Y.S.2d 644 (1st Dep't 1989) .......................................................................................23

*Canosa v. Ziff*,
    2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ................................................................. *passim*

*David v. Weinstein Co. LLC*,
    2019 WL 1864073 (S.D.N.Y. Apr. 24, 2019).........................................................................22

*DeMeo v. Koenigsmann*,
    2015 WL 1283660 (S.D.N.Y. Mar. 20, 2015) .........................................................................4

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) ..............................................................................8, 10

*Doe S.W. v. Lorain-Elyria Motel, Inc.*,
   2020 WL 1244192 (S.D. Ohio Mar. 16, 2020) .......................................................11

*E.S. v. Best W. Int'l, Inc.*,
   510 F. Supp. 3d 420 (N.D. Tex. 2021) ...................................................................13

*Ferrara v. Galluchio*,
   152 N.E.2d 249 (N.Y. 1958)...................................................................................25

*G.G. v. Salesforce.com, Inc.*,
   2022 WL 1541408 (N.D. Ill. May 16, 2022) ...........................................6, 8, 9, 10

*Geiss v. Weinstein Co.*,
   383 F. Supp. 3d 156 (S.D.N.Y. 2019) ........................................................ *passim*

*Guiffre v. Dershowitz*,
   2020 WL 2123214 (S.D.N.Y. Apr. 8, 2020).............................................................22

*Halebian v. Berv*,
   644 F.3d 122 (2d Cir. 2011).......................................................................................4

*Hecht v. Commerce Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990).......................................................................................18

*Hemi Grp., LLC v. City of N.Y., N.Y.*,
   559 U.S. 1 (2010)......................................................................................................20

*Howell v. N.Y. Post Co.*,
   612 N.E. 2d 699 (N.Y. 1993)...................................................................................25

*J.C. v. I Shri Khodiayar, LLC*,
   2022 WL 4482736 (N.D. Ga. Aug. 29, 2022) ..................................................11, 16

*Kelly v. Chase Manhattan Bank*,
   717 F. Supp. 227 (S.D.N.Y. 1989) ..........................................................................25

*Lawson v. Rubin*,
   2018 WL 2012869 (E.D.N.Y. Apr. 19, 2018) ...................................................13, 19

*Lundstrom v. Choice Hotels Int'l Inc.*,
   2021 WL 5579117 (D. Colo. Nov. 30, 2021) ...........................................................10

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018)........................................................... *passim*

*Oliveira v. Frito-Lay, Inc.*,
   251 F.3d 56 (2d Cir. 2001).........................................................................................21

*Ratha v. Phatthana Seafood Co.*,
   35 F.4th 1159 (9th Cir. 2022) ...................................................................................17

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).....................................................................................................19

*Ricchio v. McLean*,
   853 F.3d 553 (1st Cir. 2017)...............................................................................11, 16

*Rothstein v. UBS AG*,
   647 F. Supp. 2d 292 (S.D.N.Y. 2009).....................................................................23

*S.J. v. Choice Hotels Int'l, Inc.*,
   473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................................... *passim*

*S.Y. v. Naples Hotel Co.*,
   476 F. Supp. 3d 1251 (M.D. Fla. 2020)...................................................................11

*SPV OSUS Ltd. v. AIA LLC*,
   2016 WL 3039192 (S.D.N.Y. May 26, 2016) ........................................................24

*Stein v. World-Wide Plumbing Supply Inc.*,
   71 F. Supp. 3d 320 (E.D.N.Y. 2014) ................................................................17, 18

*In re Terrorist Attacks*,
   714 F.3d 118 (2d Cir. 2013).......................................................................................23

*Thomas v. Westchester Cnty. Health Care Corp.*,
   232 F. Supp. 2d 273 (S.D.N.Y. 2002).......................................................................4

*United States v. Anderson*,
   747 F.3d 51 (2d Cir. 2014).........................................................................................18

*United States v. Farhane*,
   634 F.3d 127 (2d Cir. 2011).......................................................................................18

*United States v. Svodoba*,
   347 F.3d 471 (2d Cir. 2003).......................................................................................18

*United States v. Turkette*,
   452 U.S. 576 (1981).....................................................................................................19

*Wolkstein v. Morgenstern*,
   713 N.Y.S.2d 171 (1st Dep't 2000) .........................................................................24

iv

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
   530 F. Supp. 2d 486 (S.D.N.Y. 2007)........................................................................19

**Statutes**

18 U.S.C. § 1591................................................................................................3, 5, 6, 10

18 U.S.C. § 1595................................................................................................5, 6, 12, 17

18 U.S.C. § 1962................................................................................................................18

Patriot Act, Pub. L. 107-56, § 326 (2001) ......................................................................23

**Other Authorities**

CPLR § 214-g ....................................................................................................................22

CPLR § 214-j ................................................................................................................21, 22

Fed. R. Civ. P. 12(b)(6)......................................................................................................1

Defendants Deutsche Bank Aktiengesellschaft, Deutsche Bank AG New York Branch, and Deutsche Bank Trust Companies America (collectively, "Deutsche Bank" or the "Bank") respectfully submit this memorandum of law in support of their Motion to Dismiss the Individual and Class Action Complaint (the "Complaint") filed by Plaintiff Jane Doe 1, individually and on behalf of all others similarly situated ("Plaintiff"), for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## PRELIMINARY STATEMENT

In this action, Plaintiff seeks damages against Deutsche Bank under the Trafficking Victims Protection Act ("TVPA") for allegedly participating in Jeffrey Epstein's criminal sex trafficking venture.  Plaintiff also brings related claims under the federal racketeering statute and the recently-enacted New York Adult Survivor's Act.  Plaintiff's allegations of abuse by Epstein are serious and may entitle her to compensation from Epstein's estate, his criminal co-conspirators, or others.  But the Complaint does not come close to adequately alleging that Deutsche Bank, which provided routine banking services to Epstein between 2013 and 2018, was part of Epstein's criminal sex trafficking ring.  All of Plaintiff's claims are deficient, and none can be maintained.

*First*, to establish TVPA liability for participating in criminal sex trafficking, the Complaint must adequately allege both that Deutsche Bank participated in a venture with Epstein and his co-conspirators, *and* that it did so with knowledge that the venture was actively engaged in specific acts of trafficking of Plaintiff.  The Complaint contains no such allegations.  Rather, it alleges that (i) Epstein had been convicted of a different, non-trafficking offense not involving Plaintiff six years earlier; (ii) Deutsche Bank onboarded Epstein as a client with knowledge of that earlier offense, and (iii) the Bank failed to maintain effective anti-money laundering controls over

---

[1] Unless otherwise stated, all emphasis is added, and any internal quotation marks and citations have been omitted.  Citations to the Complaint are "¶ _."

Epstein's accounts during the period he was a client.  These allegations, taken together, do not plausibly allege that Deutsche Bank participated in or knew about an Epstein-sponsored sex trafficking ring or knew that Plaintiff was a victim of it.  Plaintiff's additional claims that the Bank conspired or attempted to benefit from Epstein's sex trafficking ring are not viable under the TVPA, which does not create a civil cause of action for conspiracy or attempt.  Even if they were viable claims, the Complaint does not contain any non-conclusory allegations that Deutsche Bank entered into an agreement with Epstein to facilitate his sex trafficking operations or intended to finance those operations.  As such, the three TVPA claims (Counts I-III) should be dismissed.

*Second*, Plaintiff cannot allege a Racketeer Influenced and Corrupt Organization Act ("RICO") violation because the Complaint does not plausibly allege any predicate TVPA violation and also fails to properly allege an injury to business or property, as required under the RICO statute.  Moreover, the Complaint plainly establishes that it was Epstein's conduct that was the direct cause of Plaintiff's injuries—not Deutsche Bank's rendering of routine banking services to Epstein.  As such, Count IV should be dismissed.

*Third*, Plaintiff fails to state a claim based on the New York Adult Survivors Act ("ASA"). The ASA operates only as a revival window for previously time-barred civil claims, not as a stand-alone cause of action.  Here, the Complaint merely generally alleges "intentional and negligent acts and omissions" under the ASA—it does not plead a specific cause of action for recovery, let alone a viable one.  Finally, the Complaint does not plausibly allege—nor could it—that Deutsche Bank had a legal duty to protect Plaintiff from Epstein's criminal actions, or that the Bank was the cause of the alleged harm Epstein inflicted.  As such, Count V should be dismissed.

## FACTUAL OVERVIEW

In 2006, Epstein was arrested following an investigation into allegations that he paid a 14-year-old girl for a "massage."  ¶¶ 40, 166.  In 2007, Epstein pled guilty to two crimes related to

prostitution, including the solicitation of a minor to engage in prostitution.  ¶ 168.  Epstein's plea

deal, made public in 2008, afforded him and his alleged co-conspirators immunity from a variety

of charges, including sex trafficking.  *Id.*  Epstein received an 18-month prison sentence and was

required to register as a sex offender following his release.  *Id.*

From 2000 through 2013, Epstein was a banking client of JP Morgan Chase & Co ("JPM").

¶ 69.  During that time, Plaintiff alleges that Epstein's "relationship with" the then-head of JPM's

private banking division, Jes Staley, was "key to Epstein running his illegal operation" and that

"Staley knew exactly what [Epstein] was doing."  ¶¶ 70-71.  In November 2012, a relatively low-

level JPM employee named Paul Morris, who had worked on Epstein's accounts, left JPM and

joined Deutsche Bank as a relationship manager.  ¶ 177.  Plaintiff does not allege that Mr. Morris

knew of or ever spoke to Mr. Staley while working for JPM, let alone the substance of any of those

discussions.  Shortly after joining Deutsche Bank, Mr. Morris allegedly identified Epstein, who

was known to have "an extensive network of friends and connections that included prominent

financial institutions, politicians, royalty, and billionaires" (¶ 164), as a potential client.  ¶ 178.

Months later, on August 19, 2013, Epstein was onboarded as a client.  ¶¶ 77, 186.

In November 2018, the *Miami Herald* published an investigative report detailing Epstein's

history of sexual abuse.  ¶ 240.  Shortly thereafter, on December 21, 2018, Deutsche Bank ended

its relationship with Epstein.  ¶ 242.  On July 2, 2019, Epstein was indicted for one count of

criminal sex trafficking conspiracy and one count of criminal sex trafficking, both in violation of

18 U.S.C. § 1591, and he was arrested on July 8, 2019.  ¶¶ 116-117.

Most of the allegations in the Complaint are based on (and, in many instances, copied and

pasted from) a July 20, 2020 Consent Order (the "Consent Order" or "CO") that Deutsche Bank

entered into with the New York State Department of Financial Services ("DFS") to resolve an

investigation into Deutsche Bank's banking relationship with Epstein.  ¶ 154.[2]  Plaintiff relies on statements in the Consent Order—and frequently distorts them—to attempt to support the claim that the Bank *knew* that certain financial transactions "were being used by Epstein to facilitate his sex abuse and his sex-trafficking venture."  ¶ 249 (purporting to cite DFS "conclu[sions]").  However, as is clear on its face, the Consent Order contains no finding or conclusion that Deutsche Bank participated in or should have known that Epstein was engaged in criminal sex trafficking while he was a client.  Rather, the Consent Order states that the Bank "failed to scrutinize" Epstein's accounts for evidence of sex trafficking (CO ¶ 56), which was "compounded by a series of procedural failures, mistakes, and sloppiness in how the Bank managed and oversaw the Epstein accounts" (CO ¶ 58) in alleged violation of anti-money laundering ("AML") obligations under the Bank Secrecy Act ("BSA").  Nowhere in the Consent Order is any knowledge of Epstein's criminal conduct attributed to the Bank.  *See* CO ¶ 57 (whether Epstein used Deutsche Bank accounts for criminal activity or another purpose are "questions that must be left to the criminal authorities").

## **ARGUMENT**[3]

The Complaint asserts five causes of action against Deutsche Bank; namely, that the Bank violated the TVPA (Counts I-III), the RICO statute (Count IV), and the newly-enacted ASA (Count V).[4]  But these claims lack any well-pled facts.  Instead, they are based on wholly

---

[2] The Consent Order is attached as Exhibit A to the Declaration of David B. Hennes accompanying this motion.  The Court can consider it on a motion to dismiss because it is "incorporated by reference in the complaint" and was "relied on [by Plaintiff] in bringing suit."  *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011).  The Court can also take judicial notice of the Consent Order.  *See Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (court can take judicial notice of administrative enforcement orders).

[3] Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That standard requires Plaintiff to "do more than plead mere conclusory allegations or legal conclusions masquerading as factual conclusions."  *DeMeo v. Koenigsmann*, 2015 WL 1283660, at *6 (S.D.N.Y. Mar. 20, 2015).

[4] Deutsche Bank is not aware of any case in which a court has sustained a claim against a bank providing routine banking services under the TVPA or under RICO for sex trafficking.

conclusory allegations that the Bank "knowingly participated in the Epstein sex-trafficking venture by (among other things) providing the financial underpinnings for Epstein to have ready and reliable access to resources—including cash—to recruit, lure, coerce, and entice young women and girls to be sexually abused and to cause them to engage in commercial sex acts and other degradations" and by "knowingly enabling him to make payments to victims." ¶¶ 78-79.

## I.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TVPA (COUNTS I-III)

Section 1595 of the TVPA enables victims of criminal sex trafficking and forced labor to seek monetary damages from those who participated in the venture that caused them harm.  The statute provides, in relevant part, that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known was engaged in an act in violation of this chapter)."  Here, Plaintiff brings three distinct, but equally deficient, claims under Section 1595 for participation, conspiracy, and attempt to violate the TVPA.  Each claim should be dismissed because the Complaint wholly fails to allege that Deutsche Bank (i) participated in any such venture or had knowledge of any specific sex trafficking of Plaintiff or more generally, (ii) entered into an agreement with Epstein to facilitate his sex trafficking operations, or (iii) intended to finance those operations.

### A.   Count I Should Be Dismissed Because Plaintiff Fails to Allege That Deutsche Bank Participated in a Sex Trafficking Venture in Violation of the TVPA

Plaintiff's first claim is that Deutsche Bank allegedly "participated" in Epstein's sex trafficking venture in violation of Section 1591(a)(2) of the TVPA (¶¶ 281-301), which provides that "whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in" sex trafficking shall be criminally liable.  18 U.S.C. § 1591(a)(2).  To state a claim for Section 1591(a)(2) liability under Section 1595, a plaintiff is

required to plead, at minimum, that "'the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated [Section 1591] *as to the plaintiff*.'"  *G.G. v. Salesforce.com, Inc.*, 2022 WL 1541408, at *13 (N.D. Ill. May 16, 2022) (emphasis in original) (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021));  *see also S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 151-53 (E.D.N.Y. 2020) (allegations that defendant failed to adequately detect signs of sex trafficking or had general awareness of sex trafficking are insufficient to state a claim).

Here, the Complaint does not adequately allege that Deutsche Bank participated in a venture of any sort with Epstein, much less received a benefit from Epstein for that purpose.  And even if it did (it does not), Plaintiff's claim would still fail because the Complaint contains no factual allegation that Deutsche Bank knew or should have known that a particular Epstein venture was engaged in specific acts of sex trafficking involving Plaintiff.

1.    Deutsche Bank Did Not "Participate" in a Venture or Benefit from One

Plaintiff's claim fails at the threshold because the Complaint does not allege that Deutsche Bank "participat[ed] in a venture" with Epstein.  18 U.S.C. § 1595.  To plead "participation in a venture," Plaintiff must allege facts that Deutsche Bank engaged in "specific conduct that furthered the sex trafficking venture."  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (Sweet, J.);  *see also Canosa v. Ziff*, 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019) (Engelmayer, J.) (plaintiff must allege that defendant took "concrete steps" to aid criminal sex trafficker).  However, "'participation' itself requires more than just passive facilitation, but some level of active engagement."  *Salesforce.com, Inc.*, 2022 WL 1541408, at *14 (citing *Black's Law Dictionary* (11th ed. 2019)).  Moreover, under Section 1595, Plaintiff must also separately allege that the Bank received a benefit for its participation in that venture.  *See Geiss v. Weinstein Co.*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019) (plaintiff must allege a "causal relationship between

affirmative conduct furthering the sex-trafficking venture and receipt of a benefit"). Plaintiff alleges nothing even remotely of the sort.

Two recent cases in this District make the distinction between actual "participation" and "passive facilitation" clear. In *Noble*, an alleged victim of Harvey Weinstein alleged that Robert Weinstein participated in his brother's sex trafficking venture by "facilitat[ing]" his brother's travel and knowingly "[paying] for prior settlements of claims made by women against" him. 335 F. Supp. 3d at 169. Judge Sweet rejected this claim, holding that these allegations were not "factual allegations of participation," in part because Robert was not "present for any of the alleged assaults and was not told about the assaults." *Id.* In *Canosa*, Judge Engelmayer applied the same standard to sustain a participation claim against a Harvey Weinstein-affiliated company where, "in contrast" to the allegations against Robert Weinstein in *Noble*, the Weinstein company was alleged to have "actively participated in the recruitment and enticement of women," by allegedly giving Harvey "medication and other paraphernalia [] that he needed to perform sexual acts" and helping to "cover [] up" assaults after they occurred." 2019 WL 498865, at *3, *24.

Here, the Complaint comes nowhere close to alleging facts like those alleged in *Canosa*, or even the allegations in *Noble* that were rejected as insufficient, and contains no facts whatsoever involving any participation in sex trafficking activity by Deutsche Bank. For example, the Complaint does not allege that Deutsche Bank took "concrete steps" to aid Epstein's sex trafficking ring, such as recruiting women or covering up sexual assaults. *Canosa*, 2019 WL 498865, at *3, *24. Nor does the Complaint allege that Deutsche Bank paid settlements to Epstein's victims with its own money to protect Epstein, as Robert Weinstein was alleged to have done for his brother. *See Noble*, 335 F. Supp. 3d at 524 (finding that even this allegation was insufficient to state a claim against Robert Weinstein).

Rather, Plaintiff generally alleges that Deutsche Bank "participated in, assisted, supported, and facilitated" (¶ 283) Epstein's sex trafficking venture by "providing the financial underpinnings for Epstein to have ready and reliable access to resources—including cash" (¶¶ 78, 135) to pay for expenses, such as travel (¶ 229), legal expenses (¶ 228), and rent (*id*).  In other words, Deutsche Bank was providing routine banking services to a client, nothing more.  That does not nearly qualify as "active engagement" in a sex trafficking venture, and therefore cannot sustain a claim under the TVPA.  *Salesforce.com, Inc.*, 2022 WL 1541408, at *12.  The decision in *Salesforce* illustrates this point.  In that case, the court addressed and rejected a similar argument as to claims that technology company Salesforce participated in sex trafficking by helping to build the infrastructure of notorious sex-trafficking website Backpage, and had "continued to provide software and support to Backpage" even during a period when Backpage had been the subject of "persistent controversy and allegations regarding sex trafficking."  *Id.* at *2.  The court rejected those claims, holding that the "fact that Salesforce's software played a critical role in Backpage's expansion, indeed, even if such expansion would not be possible without the capabilities provided by that software, is not enough to demonstrate Salesforce's own participation in any venture with Backpage."  *Id.* at *15; *see also Noble*, 335 F. Supp. 3d at 524 (allegations that Robert Weinstein paid for Harvey Weinstein's travel "by virtue of his job responsibilities" found to be insufficient).

Nor is Plaintiff's allegation that Deutsche Bank onboarded Epstein based on estimates that it stood to earn between "$2-4 million annually over time" from providing banking services to him (¶ 181) tantamount to "participat[ing] in an alleged common undertaking" with him to engage in a sex trafficking venture.  *Red Roof*, 21 F.4th at 727.[5]  Considerations internal to the Bank in

---

[5] Plaintiff's allegation that Deutsche Bank's profit estimate and onboarding decision was tied to Epstein's "sex-trafficking venture" (¶ 81) misrepresents the language in the Consent Order that Plaintiff cites in support thereof.  Indeed, the allegation purports to quote an internal Deutsche

evaluating whether to onboard a prospective client—such as potential revenue estimates—do not constitute evidence of participating in a common undertaking with that prospective client.  Earning fees from providing routine banking services to a client does not qualify, either.  As such, the Complaint also fails to allege any "causal relationship between [the Bank's alleged] participation in sex trafficking and [the] purported benefit [the Bank received]."  *Geiss*, 383 F. Supp. 3d at 169.

In short, the Complaint is devoid of any allegations from which the Court could infer that Deutsche Bank participated in Epstein's sex trafficking operation, much less received any kind of benefit from Epstein doing so.  As such, the participation claim fails for the reasons above.

2.      Plaintiff Fails to Allege That Deutsche Bank Knew or Should Have Known About Epstein's Sex Trafficking Venture

In addition to participation in a venture, Plaintiff must also allege, at minimum, that Deutsche Bank knew or should have known that the venture "was involved in sex trafficking *of the plaintiff*" (*Salesforce.com, Inc.*, 2022 WL 1541408, at *14), and that Deutsche Bank knew or should have known that the venture it was participating in was "a *particular* sex trafficking venture."  *Choice Hotels*, 473 F. Supp. 3d at 154 (emphasis in original) ("having only an abstract awareness of sex trafficking in general" is insufficient); *see also Salesforce.com, Inc.*, 2022 WL 1541408, at *14 (knowledge of "sex trafficking more generally" is insufficient).  Allegations that a defendant failed to adequately detect signs of sex trafficking potentially in violation of "other statutes, [] contracts, or the common law" are also insufficient.  *Choice Hotels*, 473 F. Supp. 3d at 154 ("there is no basis to read such a responsibility into the text of the TVPA").[6]

_____

Bank e-mail cited in the Consent Order, but the actual e-mail quoted in the Consent Order does not link Deutsche Bank's onboarding decision to a desire to profit off of a "sex trafficking venture."  CO ¶ 21 (noting generally "how lucrative the [Epstein] relationship could be," including estimated "revenue of $2-4 million annually over time").

[6] Courts in this District have imposed a more stringent knowledge standard, requiring a plaintiff to plead that a defendant had actual, and not merely constructive, knowledge that it was participating in a sex trafficking venture.  *See Noble*, 335 F. Supp. 3d at 523-24; *Canosa*, 2019

Here, Plaintiff's attempt to plead that Deutsche Bank had the requisite knowledge fails for two fundamental reasons.  *First*, the Complaint contains no allegations whatsoever that the Bank knew or should have known that Plaintiff herself was a victim of sex trafficking.  *Second*, the Complaint fails to adequately allege that Deutsche Bank knew or should have known that Epstein was engaged in a sex trafficking venture when the Bank onboarded him as a client in 2013 or anytime thereafter.  Rather, the Complaint only alleges that at the time of Epstein's onboarding, the Bank was on notice of Epstein's prior conviction of solicitation, a different offense, six years earlier (¶ 180), and "failed to scrutinize" Epstein's accounts for evidence of sex trafficking ((¶ 246) (quoting CO ¶ 56)) while he was a client.  These allegations do not support a reasonable inference that the Bank knew or should have known that Epstein was involved in the trafficking of Plaintiff—or even in sex trafficking more generally—while he was a client.

***Knowledge of Trafficking of Plaintiff***.  As a threshold matter, Plaintiff's participation claim fails because the Complaint does not allege that Deutsche Bank knew or should have known at any point that Plaintiff herself was a victim of Epstein's sex trafficking venture.  It is well-settled that "a claim under [Section] 1595 requires that 'the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated [Section 1591] ***as to the plaintiff***.'"  *Salesforce.com, Inc.*, 2022 WL 1541408, at *13 (emphasis in original) (quoting *Red Roof,* 21 F.4th at 726 (collecting cases)); *see also Lundstrom v. Choice Hotels Int'l Inc.*, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021)

---

WL 498865, at *24.  *Choice Hotels* and courts in other Districts have criticized the more stringent standard as improperly imposing a criminal *mens rea* standard onto a civil remedy statute.  *See Choice Hotels*, 473 F. Supp. 3d at 153; *see also Red Roof*, 21 F.4th at 725-26; *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 937-38 (D. Or. 2020).  The Second Circuit has yet to address this issue.  In any event, Plaintiff's allegations fall well short of establishing that the Bank "should have known" that it was participating in a particular sex trafficking venture as to Plaintiff, much less that it actually knew, and thus fail under either standard.

(failure to allege defendant "should have known about plaintiff's sex trafficking at its hotels"); *A.B.*, 484 F. Supp. 3d at 938-39 (failure to "allege[] facts which sufficiently link notice of Plaintiff['s] sex trafficking to any of these Defendants"); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *5 (N.D. Cal. July 30, 2020) (same).[7]

But the Complaint does not even attempt to allege that Deutsche Bank knew that Plaintiff herself was a victim of Epstein's sex trafficking venture.  At most, the Complaint alleges that "*Epstein and his co-conspirators* forced Jane Doe 1 to open an account at Deutsche Bank" (¶ 149). But there is no allegation that Deutsche Bank had any reason to suspect, let alone know, that Plaintiff was being trafficked in any way, or that her account had anything to do with trafficking. Nor does the Complaint allege that Plaintiff had ever been publicly identified as victim of a sex trafficking venture prior to or during the time that Deutsche Bank provided banking services to Epstein.  On this basis alone, Plaintiff's participation claim must be dismissed.

**Alleged Knowledge at the Time of Onboarding.**  Plaintiff's TVPA claim fails for the independent reason that other than purely conclusory allegations (*see, e.g.*, ¶¶ 74, 165-174, 180), the Complaint does not allege that Deutsche Bank knew that Epstein was engaged in a sex trafficking venture, involving Plaintiff or anyone else, at the time of his onboarding or thereafter.

---

[7] TVPA complaints that have survived dismissal at the pleading stage contain specific allegations that defendants were on notice of specific trafficking *of the plaintiff*—allegations that are wholly absent here.  *See, e.g.*, *Ricchio v. McLean*, 853 F.3d 553, 555-56 (1st Cir. 2017) (trafficker physically abused plaintiff "in plain daylight view of the front office of the motel"); *J.C. v. I Shri Khodiayar, LLC*, 2022 WL 4482736, at *5 (N.D. Ga. Aug. 29, 2022) (hotel employees observed plaintiff "exhibit[ing] obvious signs, characteristics, and behaviors of a minor victim of sex trafficking"); *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1297-99 (M.D. Fla. 2021) (employees observed signs of physical abuse of plaintiff); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (hotel staff observed the traffickers escort the plaintiffs into the hotels and heard plaintiffs' screams); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192, at *5-6 (S.D. Ohio Mar. 16, 2020) ("Plaintiff points to behavior that she alleges hotel staff should have recognized as signs of *her trafficking*.").

To plead such "constructive knowledge," Plaintiff must allege more than "knowledge or willful blindness of a general sex trafficking problem[,] [which] does not satisfy the *mens rea* requirements of the TVPA." *Choice Hotels*, 473 F. Supp. 3d at 154. Rather, as Judge Cogan explained, the question is "whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture." *Id.* (emphasis in original). That is because the text of Section 1595 "speaks in singular terms— 'participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation of this chapter.'" *Id.* (emphasis in original) (allegations that hotel franchisors Wyndham, Howard Johnson, and Choice were "generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between 'should have known' and 'might have been able to guess'").

Here, the Complaint merely (i) states that Epstein pled guilty to a non-trafficking offense six years prior to onboarding, and (ii) alleges in conclusory fashion that Deutsche Bank was aware that Epstein had a "well-publicized reputation related to the sexual trafficking and sexual abuse of young women" (¶ 165) as a result of that prior offense. *See* ¶¶ 165-174, 180. Neither allegation satisfies "the knowledge element as to a *particular* sex trafficking venture." *Choice Hotels*, 473 F. Supp. 3d at 154. That is because nothing about Epstein's prior conviction or the publicity of his plea deal and out-of-court settlements "related to his 2007 conviction" (¶ 180) would have put the Bank on notice at the time of his onboarding *in 2013* or thereafter that Epstein was involved in a particular sex trafficking venture.[8] Indeed, this plain reliance on a "well-publicized reputation"

---

[8] Accordingly, Plaintiff's related allegations that additional knowledge about Epstein's past was "imputed" (¶ 84) to the Bank through Mr. Morris are not only conclusory but irrelevant because the Complaint does not specifically allege that Mr. Morris had any knowledge of Epstein's involvement in sex trafficking at any point in time. Nor does the Complaint in this action or the complaint filed against JPM allege that Mr. Morris learned anything about Epstein's prior conduct while he was at JPM. Rather, Plaintiff attempts to allege that JPM knew Epstein was operating a sex trafficking venture based on Epstein's relationship with Jes Staley. *See* ¶¶ 70-72; *see also*

(¶ 165) demonstrates that Plaintiff cannot plead facts establishing the Bank's knowledge of any specific venture or sex trafficking activity.

*Alleged Knowledge After Onboarding.*   As to the knowledge Deutsche Bank allegedly acquired during its banking relationship with Epstein, it is well-settled that allegations that a defendant missed "red flags" or failed to take appropriate steps to detect and prevent sex trafficking—even in violation of other legal duties—do not establish that the defendant "had the requisite knowledge of a specific sex trafficking venture [for it to] be held directly liable under the TVPA." *Choice Hotels*, 473 F. Supp. 3d at 154; *see also E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427-28 (N.D. Tex. 2021) (allegations that defendants "failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties" insufficient to state a claim); *Lawson v. Rubin*, 2018 WL 2012869, at *13 (E.D.N.Y. Apr. 19, 2018) ("Plaintiffs did not claim that [defendant] had actual notice of the alleged activity, only that it should have known about alleged trafficking based on its duty to monitor the premises.").

Here, virtually all of the alleged constructive knowledge Deutsche Bank purportedly acquired during its banking relationship with Epstein is based on the Consent Order, in which the DFS concluded that Deutsche Bank failed to meet certain AML obligations under the BSA with respect to Epstein.  But the Consent Order contains no findings that Deutsche Bank should have known of a sex trafficking venture while Epstein was a client.  *See* CO ¶ 57 ("Whether or to what

---

*Jane Doe 1 v. JP Morgan Chase & Co.*, 1:22-CV-10019 ("JPM Compl.") ¶¶ 108-133.  But the Complaint does not allege that Mr. Staley and Mr. Morris even knew each other, let alone that Mr. Staley told Mr. Morris anything about Epstein.  Thus, there is no basis to impute anything to Mr. Morris and then to Deutsche Bank.  *See* ¶¶ 70-72 (describing Mr. Staley's role at JPM with no reference to Mr. Morris); JPM Compl. ¶¶ 168-169 (only mentioning Mr. Morris in the context of his Deutsche Bank employment).

extent those payments or that cash was used by Epstein to cover up old crimes, to facilitate new ones, or for some other purpose are questions that must be left to the criminal authorities."). Rather, the Consent Order states that Deutsche Bank failed to recognize risk associated with Epstein, and that "[t]his substantive failure was compounded by a series of procedural failures, mistakes, and sloppiness" in violation of banking laws. CO ¶ 58.[9] As such, Plaintiff's conclusory allegation that "[i]n light of the[] red flags [identified in the Consent Order] . . . Deutsche Bank should have known that it was facilitating a sex abuse and a sex-trafficking venture" (¶ 235) is contradicted by the plain language of the Consent Order itself.[10]

For example, based on the Consent Order, the Complaint alleges that in 2014, the Bank approved additional accounts for Epstein's "Butterfly Trust," despite allegedly knowing that the

---

[9] The only factual allegations in the Complaint not based on the Consent Order are drawn from alleged confidential witness statements in the *Karimi* class action securities fraud complaint against Deutsche Bank pending before this Court. *See* No. 22-cv-2854, Dkt. 86 at 6-7 (S.D.N.Y. June 13, 2022). These allegations are that: (i) there were "Board level" discussions about Epstein prior to onboarding him, and that the Bank's Reputational Risk Committee repeatedly determined to keep him as a client because they were "interested solely in making money for the Bank" (¶¶ 236, 238); (ii) Deutsche Bank gave Epstein and "other high-net worth individuals" a "special deal" exempting them from certain KYC procedures "because of the amount of business they generated" (¶¶ 237-238), and (iii) the Bank "did not treat him as a high-risk client" (¶ 239). But an allegation that Epstein and *other high-net-worth clients* were exempted from KYC procedures or a desire to retain Epstein for profit reasons does not in any way establish that Deutsche Bank knew or should have known Epstein was engaged in a sex trafficking venture, as is required.

[10] In fact, the Complaint repeatedly distorts the plain words of the Consent Order and the documents cited therein, and those allegations must be rejected. *Compare*, *e.g.*, ¶ 81 ("Deutsche Bank estimated that it would earn between $[2-4 million] annually *by funding the sex trafficking venture* and handling the accounts of Epstein-related entities."), *with* CO ¶ 21 (quoting e-mail among Deutsche Bank employees prior to Epstein onboarding noting generally "how lucrative the relationship [with Epstein] could be," including estimated "revenue of $2-4 million annually over time"); ¶ 193 (alleging $2.65 million in transfers through Deutsche Bank accounts were "pa[id] directly for coercive and commercial sex acts"), *with* CO ¶ 31 ($2.65 million in transfers were for "the stated purpose of covering hotel expenses, tuition, and rent"); ¶ 249 ("Epstein used [] $200,000 per year in cash to facilitate his sex abuse and his sex-trafficking venture), *with* CO ¶ 57 (whether cash was used for criminal activities "*or for some other purpose are questions that must be left to criminal authorities*, but the fact that they were [generally] suspicious should have been obvious to Bank personnel at various levels").

trust's beneficiaries included co-conspirators from his 2006 solicitation offense and women with Eastern European surnames. CO ¶ 28; ¶ 190. But allegations that the Bank knew certain trust beneficiaries were linked to Epstein's solicitation offense from six years earlier—or contained Eastern European surnames—are wholly insufficient to establish knowledge of any particular, ongoing sex trafficking venture. *See Choice Hotels*, 473 F. Supp. 3d at 154 (the question is "whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture").

Plaintiff also alleges that in 2015, Deutsche Bank's Americas Reputational Risk Committee implemented enhanced monitoring on Epstein's accounts as a condition to retaining him as a client and communicated this to "several senior Bank personnel, up to and including the Bank's CEO of the Americas," but not to "all members of the Epstein Relationship team" (and that an AML officer misinterpreted some of those conditions). CO ¶¶ 38-41; ¶¶ 216, 218-219. Plaintiff further alleges that in 2017, the Bank's AML transaction monitoring team met to discuss "suspicions of cash structuring" by an attorney acting on Epstein's behalf who had asked the Bank for guidance on how to withdraw cash on a regular basis without triggering a required filing of a "Currency Transaction Report" with the Treasury Department. CO ¶ 50; ¶ 232. But, again, allegations that the Bank may have violated banking laws related to monitoring or maintaining effective controls and procedures—or made "mistakes" and was "slopp[y] in how [it] managed and oversaw Epstein's accounts"—are not enough to plead constructive knowledge of a sex trafficking venture under the TVPA.[11] As Judge Cogan stated in *Choice Hotels*: "[That defendant

---

[11] The Complaint also cites language in the Consent Order that in 2018, Epstein's attorney withdrew $100,000 in cash from a Bank branch near Epstein's house, stating that Epstein needed the funds for "tipping and household expenses," and that over a roughly four-year period, Epstein withdrew $800,000 in cash total (including for travel). CO ¶¶ 51-52; ¶¶ 232-233. But it is not reasonable to infer that large cash withdrawals by a high net worth individual put the Bank on notice that Epstein was engaged in a sex trafficking venture, particularly when Epstein's *attorney* explained that the withdrawals were for non-criminal purposes.

is not liable under the TVPA] doesn't necessarily absolve [defendant] of the responsibilities they may have—under other statutes, their franchising contracts, or the common law—to train [] staff about the warning signs of sex trafficking and what to do if they appear[,] *[b]ut there is no basis to read such a responsibility into the text of the [TVPA]*."  473 F. Supp. 3d at 154.

Rather, cases where courts have sustained "constructive knowledge" allegations of sex trafficking at the pleading stage—mainly against hotel or motel operators or franchisors whose hotels or motels were used for sex trafficking—universally involve allegations of specific acts that put the defendant on notice of a particular and ongoing sex trafficking venture.  *See, e.g.*, *Ricchio*, 853 F. 3d at 555 (allegations of "high-fives" between the trafficker and motel owner and that trafficker physically abused plaintiff "in plain daylight view of the front office of the motel"); *I Shri Khodiayar, LLC*, 2022 WL 4482736, *5-6 (hotel employees observed victim "exhibit[ing] obvious signs, characteristics, and behaviors of a minor victim of sex trafficking such as 'inappropriate' appearance, physical deterioration, poor hygiene, fatigue, sleep depravation, injuries, loitering, and soliciting male patrons"); *Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d at 1297-99 (hotel employees observed signs of physical abuse, rooms containing sex and drug paraphernalia, and multiple men per day coming and going from these rooms without luggage).[12]

The allegations in the Complaint do not come close to this level.  In short, Plaintiff cannot "bridge[] the scienter gap between 'should have known' and 'might have been able to guess.'" *Choice Hotels*, 473 F. Supp. 3d at 154.  The Complaint does not allege that Deutsche Bank had

---

[12] In light of this high bar to establish constructive knowledge, it is not surprising that hotel-related cases predominate among the civil TVPA cases.  Because hotels physically house sex traffickers and their victims, their operators and franchisors are uniquely positioned to observe actual evidence of sex trafficking.

actual or constructive knowledge that Epstein was engaged in a particular and ongoing sex trafficking venture as to Plaintiff, and Count I of the Complaint should be dismissed.[13]

**B.    Counts II and III Should Be Dismissed Because Section 1595 Does Not Create a Civil Cause of Action for Conspiracy or Attempt and, in Any Event, Are Not Supported by Any Well-Pled Allegations**

The TVPA's civil remedy provision does not create a cause of action for conspiracy or attempt.  Rather, the provision only "impose[s] civil liability on those who 'benefit'" from a TPVA violation.  *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1176 (9th Cir. 2022), *cert. denied*, 2022 WL 17408202 (U.S. Dec. 5, 2022).  Accordingly, the Ninth Circuit has squarely held that the provision does not permit civil suits against those who allegedly attempt to knowingly benefit from a TVPA violation.  *See id.* (holding that a claim for "attempt to benefit" does not satisfy Section 1595(a)'s requirement that a civil defendant who is not a perpetrator "knowingly benefit[]" from "participation in a venture").  The same reasoning applies to a conspiracy claim.  On this basis alone, Counts II (conspiracy) and III (attempt) are not cognizable causes of action and must be dismissed.  Moreover, even if the TVPA's civil remedy did extend to claims for conspiracy or attempt, the Complaint contains no well-pled allegations in support of either.

*No Conspiracy.*  The Complaint fails to allege that the Bank conspired to commit violations of the TVPA.  That is because "[f]or there to have been a conspiracy, there must have been an agreement to violate the prohibitions on [sex trafficking]."  *Stein v. World-Wide Plumbing Supply Inc.*, 71 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) (citing *United States v. Svodoba*, 347 F.3d 471, 476 (2d Cir. 2003)).  Therefore, "[w]ithout *knowledge*, it cannot be said that [P]laintiff has adequately stated a conspiracy claim with respect to [a TVPA crime]."  *Id.*

But as detailed above, the Complaint does not allege that Deutsche Bank had actual

---

[13] Of course, because Plaintiff fails to allege that the Bank had constructive knowledge, the claim also fails under the "actual knowledge" standard adopted in this District by *Noble* and *Canosa*.

knowledge of Epstein's sex trafficking venture as to Plaintiff or more generally.  Nor can any allegations of "constructive knowledge" possibly establish that Deutsche Bank was party to an agreement to commit violations of the TVPA or had "[acted] with the specific intent to aid in the accomplishment of those unlawful ends," as is required to state a conspiracy claim.  *Svoboda*, 347 F.3d at 477; *see also United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014) ("general knowledge" is insufficient).

**No Attempt.**  The Complaint's failure to allege that Deutsche Bank had knowledge of a sex trafficking venture is also fatal to Plaintiff's attempt claim because "[a] claim of attempt requires plaintiff to allege that defendants had the intent to commit the underlying crime." *Stein*, 71 F. Supp. 3d at 330.  Indeed, because the Complaint has not adequately alleged that the Bank had any knowledge whatsoever of a sex trafficking crime against Plaintiff (either actual or constructive), Plaintiff certainly cannot allege that the Bank *intended* to receive financial benefits for providing banking services to facilitate sex trafficking.  In addition, because the Complaint does not adequately allege that Deutsche Bank participated in Epstein's sex trafficking operation (Section I.A), it cannot possibly plead that the Bank "engaged in conduct amounting to a substantial step towards [violating the TVPA]," as is required to state an attempt claim.  *See United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011).

## II.   PLAINTIFF FAILS TO STATE A RICO CLAIM (COUNT IV)

In Count IV, Plaintiff alleges that Deutsche Bank's purported TVPA violations also constitute predicate offenses to racketeering activity in violation of the federal RICO statute, 18 U.S.C. § 1962.  A civil RICO claim requires three elements: "(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation."  *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990).  None are adequately pled here.

**No Predicate Act or Criminal Enterprise.**  As a threshold matter, for the reasons set forth

above, Plaintiff's claim fails because the Complaint does not adequately allege any predicate TVPA violation.  *See Canosa*, 2019 WL 498865, at *26 (dismissing plaintiff's RICO claims in part for failure to plead a TVPA violation).  The Complaint also fails to establish a RICO violation for a separate reason:  it contains no allegations that Deutsche Bank and Epstein "associated together for a common purpose of engaging in a course of conduct" to form an enterprise.  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  As detailed above, the Complaint alleges that Deutsche Bank made the decision to onboard Epstein on its own, allegedly based on a desire to make a profit for the Bank.  ¶ 81; Section I.A.  But RICO "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original).

**No RICO Injury.**  While TVPA violations can qualify as predicate acts under the RICO statute, RICO claims predicated on TVPA sex trafficking violations are uniformly dismissed for failure to plead an injury to business or property, as required to have RICO standing.  *See, e.g.*, *Geiss*, 383 F. Supp. 3d at 170 ("The phrase 'business or property' excludes personal injuries suffered."); *Canosa*, 2019 WL 498865, at *25 ("[C]ourts have uniformly held that injuries such as emotional distress or physical injury are not cognizable under RICO."); *Lawson*, 2018 WL 2012869, at *10 (same).  Moreover, conclusory allegations of "speculative" or "unquantifiable" injuries are insufficient.  *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 521 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).  The injury must be a "concrete financial loss."  *Beter v. Murdoch*, 2018 WL 3323162, at *5 (S.D.N.Y. June 22, 2018).

Here, Plaintiff fails to allege any concrete injuries compensable under the RICO statute.[14]

---

[14] Deutsche Bank is not aware of any case in which a sex trafficking victim sufficiently alleged RICO injury in connection with a predicate TVPA violation.

The Complaint contains conclusory recitations of speculative injuries to business or property—not any well-pled allegations. *See* ¶¶ 99, 356-359 (generally alleging "economic injuries" and "injuries to the Plaintiff'[s] business and property"). Similar conclusory allegations relating to alleged injuries have been repeatedly rejected as a basis for a RICO claim. *See Canosa*, 2019 WL 498865, at *25 ("[Plaintiff] separately alleges that Canosa was 'injured in [her] person, property and business by reason of these [RICO] violations,' but this claim is entirely conclusory. [Plaintiff] does not allege any facts to support these conclusory allegations."); *Geiss*, 383 F. Supp. at 170-71 (alleged "personal injuries [and] economic injuries flowing from those personal injuries" insufficient for RICO claim based on TVPA).

***No Causation.*** Plaintiff's RICO claim also fails because the Complaint does not establish that Deutsche Bank "directly" caused an injury (had one been pled), as required under the statute. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *see also Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9, 14-15 (2010) (RICO statute requires "direct" and "straightforward" connection between defendant's conduct and plaintiff's injury).

Here, again, Plaintiff's only allegations that Deutsche Bank caused her purported RICO injury are conclusory, non-factual, recitations that she was "directly" injured by the Bank's alleged RICO violation. ¶¶ 356-359. The Complaint lacks any support for those allegations. To the contrary, the Complaint makes clear that Epstein and other individuals were the direct cause of her injuries. *See* ¶ 32 ("Epstein's sex trafficking scheme was supported by virtually unlimited wealth, derived from carefully selected wealthy *individuals* who acted as the financial engine behind the sex-trafficking operation."). Indeed, as the Complaint alleges, "the Epstein sex trafficking venture originated in the 1990s"—long before Deutsche Bank onboarded Epstein in 2013—and continued after Deutsche Bank terminated its banking relationship with him in 2018 until "his subsequent

death on August 10, 2019." ¶ 27.  Moreover, as Plaintiff alleges, there were numerous intervening factors that led to Plaintiff's alleged injury, including the involvement of a co-conspirator who herself was arrested and convicted for facilitating Epstein's operations.  *See* JPM Compl. ¶ 117 ("Without [Ghislaine] Maxwell, Epstein *would never have been able* to recruit his first victims and been able to bring them into his abusive lair."); *id.* ¶ 118 ("Without [Les] Wexner, Epstein's sex trafficking operation and sexual abuse of women could never have occurred to the extent that it did.").  As such, Plaintiff cannot plausibly allege that Deutsche Bank's provision of routine banking services to Epstein "*directly*" caused her injuries.  *Anza*, 547 U.S. at 461.

## III.  PLAINTIFF CANNOT STATE A CLAIM UNDER THE NEW YORK ADULT SURVIVOR'S ACT (COUNT V)[15]

### A.  Count V Is Not a Valid Cause of Action

In Count V, Plaintiff purports to assert a single claim for "intentional and negligent acts and omissions" under the ASA.  ¶¶ 361-382.  But that is not a valid stand-alone cause of action. The ASA, enacted on May 24, 2022, creates a one-year revival window under Section 214-j of New York's Civil Practice Law & Rules ("CPLR"), which allows victims who were sexually abused when they were 18 years or older to bring otherwise time-barred civil claims based on sexual offenses committed against them.  *See* CPLR § 214-j.  It was enacted as a counterpart to the Child Victim's Act ("CVA"), which created a one-year revival window under the same section of the CPLR for victims who were abused as minors.  *See* CPLR § 214-g.  The CVA does not

---

[15] Because Plaintiff's federal question claims (Counts I-IV) should be dismissed, and there is no diversity jurisdiction (¶¶ 1-2)—the Court should not exercise supplemental jurisdiction over Plaintiff's remaining state law claim.  This is especially so because Plaintiff purports to bring such claim under the newly-enacted ASA, which has not been the subject of any case law as of the filing of this motion.  New York state courts should interpret the new law in the first instance.  *See Oliveira v. Frito-Lay, Inc.*, 251 F.3d 56, 64 (2d Cir. 2001) (district court should decline supplemental jurisdiction over remaining state-law claims where the "present issues of state law . . . have not been clearly decided by the New York courts").  If the Court were to retain jurisdiction over Count V, the cause of action should still be dismissed for the reasons set forth herein.

create a stand-alone cause of action.  *See Guiffre v. Dershowitz*, 2020 WL 2123214, at *2 (S.D.N.Y. Apr. 8, 2020) (plaintiff "cannot sue under the CVA because it creates no cause of action . . . Instead, the CVA is a means to an end" to allow plaintiff to raise a separate claim); *see also AA by BB v. Hammondsport Central Sch. Dist.*, 527 F. Supp. 3d 501, 509 (W.D.N.Y. 2021) (noting that other federal courts have "determined that a party cannot sue under the CVA").  The same rule necessarily applies to the ASA, which mirrors the CVA and is contained in the same section of the CPLR.  Thus, Count V is not a valid cause of action and must be dismissed.

In any event, as explained below, to the extent the Court construes the Complaint to assert separate, ASA-revived claims for negligence, negligent infliction of emotional distress ("NIED"), or intentional infliction of emotional distress ("IIED"), each would still fail under New York law.

## B.      Plaintiff Cannot State a Claim for Negligence

"To establish a prima facie case of negligence under New York law, a plaintiff must demonstrate (1) a duty owned by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom."  *David v. Weinstein Co. LLC*, 2019 WL 1864073, at *6 (S.D.N.Y. Apr. 24, 2019).  Here, Plaintiff fails to allege that Deutsche Bank owed Plaintiff a legal duty to protect her from Epstein's criminal conduct or that her injuries were caused by the Bank.

***No Duty***.  The Complaint alleges that "[a]s a financial institution . . . Deutsche Bank owed legal duties to Plaintiff [] and the Class Members to exercise[] reasonable care to monitor Deutsche Bank's customers (including Jeffrey Epstein) for the purpose of preventing them from facilitating and engaging in foreseeable criminal activity using the Bank's facilities that could harm the Plaintiff and the Class Members."  ¶ 365.  But as a matter of black-letter New York law, no such

legal duty exists.  *See In re Terrorist Attacks*, 714 F.3d 118, 126 (2d Cir. 2013) (banks do not owe non-customers a duty "to protect them against the intentional torts of their customers").[16]

Moreover, the duty the Complaint purports to establish—one based on KYC laws and "related regulations" (¶ 368)—is not a valid legal duty either:  neither the BSA nor the USA Patriot Act, which implemented KYC laws (*see* Pub. L. 107-56, § 326), create a legal duty from a bank to a customer.  *See In re Agape Litig.*, 681 F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("[B]ecause the Bank Secrecy Act does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements."); *Aiken v. Interglobal Mergers & Acquisitions*, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) ("[N]either the Bank Secrecy Act nor the Patriot Act affords a private right of action.").

*No Causation.*  Nor does Plaintiff adequately allege that any injuries she allegedly suffered were caused by Deutsche Bank.  Under New York law, the Bank's provision of routine banking services to a customer cannot be the proximate cause of injuries suffered by an alleged victim of that customer's criminal conduct, as required to state a negligence claim.  *See Rothstein v. UBS AG*, 647 F. Supp. 2d 292, 294 (S.D.N.Y. 2009) (Rakoff, J.), *aff'd*, 708 F.3d 82 (2d Cir. 2013) (bank's involvement in transactions with terrorists not the proximate cause of victims' injuries); *see also In re Terrorist Attacks*, 714 F.3d at 124 (bank did not cause 9/11 victims injuries by

---

[16] Plaintiff also alleges that at some unspecified point in time, she was forced by Epstein to "open an account" at Deutsche Bank.  ¶ 149.  The Complaint does not allege any further details about Plaintiff's alleged account.  But even assuming the Bank owed her some duty as an account holder, the scope of such duty would not extend to protecting Plaintiff from the intentional torts of Epstein or other customers.  *See Bank Brussels Lambert, S.A. v. Intermetals Corp.*, 779 F. Supp. 741, 747 (S.D.N.Y. 1991) (bank owes customer a "duty to exercise reasonable skill and care in *carrying out its activities for its customer*").  Furthermore, to the extent the Bank owed Plaintiff contractual duties—again, none are alleged here—a claim for "negligence cannot be based on a breach of a contractual duty."  *Calisch Assocs., Inc. v. Mfg. Hanover Tr. Co.*, 542 N.Y.S.2d 644, 645 (1st Dep't 1989).

"providing routine banking services to organizations and individuals said to be affiliated with al Qaeda").  Moreover, Plaintiff's conclusory allegations that Deutsche Bank was the "direct and proximate" cause of Plaintiff's injuries (¶ 371) are contradicted by the Complaint, which alleges that Epstein's "scheme was supported by virtually unlimited wealth" from "wealthy individuals" (¶ 32), and that the scheme caused harm to victims long before the period that Epstein was a Deutsche Bank client, as well as after Deutsche Bank terminated its relationship with him (¶ 27).[17]

### C.    Plaintiff Cannot State an Emotional Distress Claim

Plaintiff cannot state a claim for NIED or IIED because both are duplicative of Plaintiff's negligence claim and therefore must be dismissed.  And even if those claims could proceed without or independent of the negligence claim, neither has been adequately pled.

*Duplicative of Negligence.*  It is well settled under New York law that "a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action."  *Wolkstein v. Morgenstern*, 713 N.Y.S.2d 171, 172 (1st Dep't 2000).  Here, Plaintiff's NIED and IIED allegations are entirely duplicative of her negligence allegations:  all three "claims" are brought under a single (improper) cause of action, and Plaintiff repeatedly alleges "intentional and negligent" or "reckless and negligent" acts or omissions when referring to the same conduct for all three "claims."  ¶¶ 363, 364, 378, 379, 381.  Moreover, Plaintiff alleges the same injuries for all three "claims."  *See* ¶¶ 371, 373-375.  Therefore, any claims for NIED or IIED to the extent they are alleged are duplicative of the negligence claim and should be dismissed.

*Failure to State NIED or IIED Claims.*  New York law only recognizes a claim for NIED under "unique circumstances," where defendant has a "special duty" to avoid causing plaintiff

---

[17] Plaintiff's conclusory allegation that "[w]ithout [Deutsche Bank's] breaches of legal duties, [Plaintiff's] injuries would not have occurred" (¶ 372) is nothing more than a "textbook example of a 'but-for' theory of causation masquerading as a theory of proximate causation."  *SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *6 (S.D.N.Y. May 26, 2016) (Rakoff, J.).

emotional distress.  *Kelly v. Chase Manhattan Bank*, 717 F. Supp. 227, 235 (S.D.N.Y. 1989).  A "special duty" is owed only in the rarest of cases.  *See, e.g.*, *Ferrara v. Galluchio*, 152 N.E.2d 249, 252 (N.Y. 1958) (doctors liable for distress of patient required to undergo cancer screening every six months due to doctors' negligent treatment of a shoulder injury).  As discussed above, Plaintiff cannot establish that the Bank owed her *any* duty to monitor Epstein's transactions, let alone a *special* duty to avoid causing her emotional distress.  Any claim for NIED must likewise fail.

A claim for IIED requires "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. N.Y. Post Co.*, 612 N.E. 2d 699, 702 (N.Y. 1993).  None of these elements are present here.  As detailed above, the Complaint does not allege that Deutsche Bank had actual or constructive knowledge of Epstein's sex trafficking venture, and it certainly does not allege that Deutsche Bank participated in extreme or outrageous conduct, intended to cause Plaintiff emotional distress, or was the but-for cause of any such distress.  As such, any claim for IIED must fail.

## **CONCLUSION**

For all of the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  December 30, 2022               By:   */s/ David B. Hennes*

James P. Dowden (*admitted pro hac*)          David B. Hennes
**ROPES & GRAY LLP**                          Lisa H. Bebchick
Prudential Tower                              Andrew S. Todres
800 Boylston Street                           **ROPES & GRAY LLP**
Boston, MA 02199                              1211 Avenue of the Americas
Tel: (617) 951-7970                           New York, NY 10036
james.dowden@ropesgray.com                    Tel: (212) 596-9000
                                              david.hennes@ropesgray.com
                                              lisa.bebchick@ropesgray.com
                                              andrew.todres@ropesgray.com

                                              *Counsel for Deutsche Bank*