## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DEUTSCHE BANK AKTIENGESELLSCHAFT, et al., <br><br> Defendants. | **Case No. 22-CV-10018-UA (JSR)** |
| JANE DOE 1, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> JP MORGAN CHASE & CO., <br><br> Defendant. | **Case No. 22-CV-10019-UA (JSR)** |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT ON BEHALF OF DEFENDANTS DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK AG NEW YORK BRANCH, AND DEUTSCHE BANK TRUST COMPANY AMERICAS

David B. Hennes
Lisa H. Bebchick
Andrew S. Todres
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000
david.hennes@ropesgray.com
lisa.bebchick@ropesgray.com
andrew.todres@ropesgray.com

James P. Dowden (*admitted pro hac*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7970
james.dowden@ropesgray.com

# <u>TABLE OF CONTENTS</u>

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

    I.      THE RELEASE BARS PLAINTIFF'S CLAIMS ................................................. 2

          A.     The Court Can Consider the Release on this Motion ................................. 2

          B.     The Bank is an Intended Third-Party Beneficiary of the Release .............. 4

    II.     PLAINTIFF FAILS TO STATE A TVPA CLAIM ................................................ 7

          A.     Plaintiff Does Not Allege a TVPA Beneficiary or Perpetrator Claim....................................................................................................... 7

          B.     Plaintiff Fails to State Any Other TVPA Claims...................................... 12

    III.    PLAINTIFF FAILS TO STATE A RICO CLAIM ............................................. 13

    IV.    PLAINTIFF FAILS TO STATE A CLAIM UNDER NEW YORK LAW.......... 15

CONCLUSION........................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010).....................................................................4, 5

*Brown v. Kay*,
   889 F. Supp. 2d 468 (S.D.N.Y. 2012).....................................................................3, 4

*Canosa v. Ziff*,
   2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ...................................................8, 14, 15

*Deutsch v. Pressler, Felt & Warshaw, LLP*,
   535 F. Supp. 3d 322 (S.D.N.Y. 2021)...........................................................................3

*Doe #1 v. Red Roof Inns, Inc.*,
   21 F.4th 714 (11th Cir. 2021) .....................................................................................10

*Fleites v. MindGeek S.A.R.L.*,
   2022 WL 4456077 (C.D. Cal. July 29, 2022)........................................................12, 13

*Ford v. Grand Union Co.*,
   197 N.E. 266 (N.Y. 1935)............................................................................................15

*G.G. v. Salesforce.com, Inc.*,
   603 F. Supp. 3d 626 (N.D. Ill. 2022).................................................................8, 9, 10

*Giuffre v. Prince Andrew*,
   579 F. Supp. 3d 429 (S.D.N.Y. 2022)...................................................................2, 5, 15

*H.H. v. G6 Hosp., LLC*,
   2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ...............................................................9

*J.C. v. I Shri Khodiyar, LLC*,
   2022 WL 4482736 (N.D. Ga. Aug. 29, 2022) ...............................................................8

*Jean-Charles v. Perlitz*,
   937 F. Supp. 2d 276 (D. Conn. 2013)..........................................................................12

*JN Contemp. Art LLC v. Phillips Auctioneers LLC*,
   507 F. Supp. 3d 490, 500 (S.D.N.Y. 2020)....................................................................7

*Kashef v. BNP Paribas S.A.*,
   2021 WL 603290 (S.D.N.Y. Feb. 16, 2021)................................................................15

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)......................................................................3

*LLM Bar Exam, LLC v. Barbri, Inc.*,
    271 F. Supp. 3d 547 (S.D.N.Y. 2017).....................................................10

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019) .....................................................9

*Maurizi v. Callaghan*,
    2022 WL 1446500 (W.D.N.Y. Feb. 25, 2022) ........................................15

*Midwest Feeders, Inc. v. Bank of Franklin*,
    886 F.3d 507 (5th Cir. 2018) ....................................................................15

*Noble v. Weintein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018)..........................................8, 10, 12

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
    286 F. Supp. 3d 430 (E.D.N.Y. 2017) .....................................................13

*Picard v. Kohn*,
    907 F. Supp. 2d 392 (S.D.N.Y. 2012)......................................................14

*Pinkerton v. United States*,
    328 U.S. 640 (1946)..................................................................................13

*In re Refco Inc. Sec. Litig.*,
    2012 WL 12906289 (S.D.N.Y. Aug. 10, 2012).........................................3

*Ricchio v. McLean*,
    853 F.3d 553 (1st Cir. 2017).......................................................................9

*S.J. v. Choice Hotels Int'l, Inc.*,
    473 F. Supp. 3d 147 (E.D.N.Y. 2020) .....................................................10

*S.Y. v. Best Western Int'l, Inc.*,
    2021 WL 2315073 (M.D. Fla. June 7, 2021).............................................9

*Scollo ex rel. Scollo v. Nunez*,
    847 N.Y.S.2d 899 (N.Y. Sup. Ct. 2007) ..................................................15

*Solis v. 666 Fifth Assocs. LLC*,
    2021 WL 5998416 (S.D.N.Y. Dec. 20, 2021) .......................................4, 5

*Stagl v. Delta Airlines, Inc.*,
    52 F.3d 463 (2d Cir. 1995)........................................................................15

iii

*In re UBS AG Secs. Litig.*,
  2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)..............................................................6

*Vt. Teddy Bear Co. v. 538 Madison Realty Co.*,
  1 N.Y.3d 470 (2004) ....................................................................................................5

*In re World Trade Ctr.*,
  828 F. App'x 734 (2d Cir. 2020) .................................................................................4

**Statutes**

18 U.S.C. § 2 ......................................................................................................................12

18 U.S.C. § 1591(a)(1) .........................................................................................................9

18 U.S.C. § 1591(a)(2) .........................................................................................................9

**Other Authorities**

Federal Rule 11 ..................................................................................................................10

Federal Rule 12(b)(1)......................................................................................................3, 4

Federal Rule 12(b)(6)...................................................................................................2, 3, 4

## PRELIMINARY STATEMENT[1]

Plaintiff's opposition ("Opposition" or "Opp.") to the Bank's motion to dismiss ("Motion" or "Mot.") confirms her inability to assert viable claims against the Bank. *First*, rather than confront the plain language of the expressly "broad" and "all-encompassing" Release—to which she agreed in exchange for a ███████ payment—Plaintiff instead incorrectly counters that (i) the Release cannot be considered on a motion to dismiss, and (ii) the Bank was not an intended third-party beneficiary. But Plaintiff cannot hide from the Release (negotiated by the same sophisticated counsel representing her in this action). This Court has routinely dismissed claims barred by releases at the pleading stage, including where, as here, plaintiffs failed to disclose those releases in their pleadings. And, while Plaintiff concedes that the Release is unambiguous and thus must be interpreted based on its plain terms, the Opposition entirely ignores the plain meaning of those terms—including that the Bank was "engaged by" Epstein and thus fits squarely within that term (as well as numerous others) of the Release as an intended third-party beneficiary. Plaintiff's claim that the Bank is not a third-party beneficiary is contrary to basic tenets of contract interpretation: the fact that the Release excluded by name ████████████████████████ ██████████████████████████████████████████████████████████ ████████████—does not mean that the Release *also silently carved out the Bank and all other financial institutions*. If Plaintiff wanted to retain the ability to bring this action against the Bank immediately after executing the Release and being paid a ████████settlement, she and her counsel should have negotiated to include the Bank in that carve-out.

*Second*, because there are no *non-conclusory* factual allegations in the FAC to support Plaintiff's novel claims, the Opposition invents allegations that are not contained in the FAC in an

---

[1] Unless otherwise defined, capitalized terms have the same meaning as in the Bank's opening memorandum of law in support of its Motion. The citation format follows the Motion's. Mot. n.1.

effort to survive dismissal.  As just one of many examples, Plaintiff claims that Bank personnel "*observed* victims present in [Epstein's] home" (Opp. 19).  But that inflammatory claim is not pled anywhere in the FAC and attempts to improperly bolster the already-contrived allegation highlighted in the Bank's Motion—that "trafficking victims" generally were hypothetically "*observable*" (¶ 236) by Bank personnel at a single meeting.  In any event, neither the actual insufficient allegation nor the newly-contrived assertion is sufficient to demonstrate that Bank personnel knew *Plaintiff* was being trafficked, as required to state a beneficiary claim.  Finally, Plaintiff has not identified a single case that has sustained claims against a bank for facilitating sex trafficking, much less against any type of defendant on facts similar to those alleged in the FAC.

## ARGUMENT

### I.    THE RELEASE BARS PLAINTIFF'S CLAIMS

#### A.    The Court Can Consider the Release on this Motion

Plaintiff's attempt to avoid dismissal by claiming that the Release cannot be considered on a motion to dismiss (Opp. 4-6) is contrary to the law.  Judge Kaplan expressly rejected the exact same argument (advanced by the same counsel representing Plaintiff here) and considered a prior settlement agreement with Epstein that Prince Andrew sought to enforce as a third-party beneficiary on a Rule 12(b)(6) motion.  *See Giuffre v. Prince Andrew*, 579 F. Supp. 3d 429, 438 (S.D.N.Y. 2022) (considering release "notwithstanding the general rule that an affirmative defense is not considered at this stage of the litigation" and fact that "defendant's argument does not rest on the face of the complaint").[2]  Nor has Plaintiff been deprived of the chance to "plead facts in

---

[2] Plaintiff does not dispute the authenticity of the Settlement Agreement, which Plaintiff provided to the Bank (Mot. 2 n.2, Hennes Decl.), and the Court can therefore take judicial notice of it and consider it on this Motion.  *See Giuffre*, 579 F. Supp. 3d at 438 & n.34 (court can consider documents outside the four corners of the complaint without converting to a summary judgment motion where there is no dispute over document's authenticity or document is central to case).

avoidance of" the defense (Opp. 6) where Plaintiff was fully aware of the Release and admits that

its terms are "unambiguous." *Id.* at 7.  The interpretation of the Release is therefore governed by

its plain terms (Mot. 6-7), not any other "facts" that Plaintiff could hypothetically plead.[3]

Further, as this Court has held, it is appropriate to consider a release on a motion to dismiss

because if it "would dispose of this matter . . . it makes no sense to deny dismissal simply because

it was not referenced in the Complaint."  *In re Refco Inc. Sec. Litig.*, 2012 WL 12906289, at *3

(S.D.N.Y. Aug. 10, 2012), *report and recommendation adopted*, 2012 WL 4009175 (S.D.N.Y.

Sept. 12, 2012) (Rakoff, J.).  Plaintiff tries to dismiss *Refco* as a "special master's report and

recommendation to which no party objected" (Opp. 5 n.1), but ignores the fact that this Court

adopted the report "in full."  Indeed, this Court recently reached the same conclusion (relying on

*Refco*) in another decision granting a Rule 12(b)(6) motion based on a prior release that was not

attached to the complaint.  *See Deutsch v. Pressler, Felt & Warshaw, LLP*, 535 F. Supp. 3d 322,

327 (S.D.N.Y. 2021) (Rakoff, J.).  *Refco* follows many decisions in this District.  *See* 2012 WL

12906289, at *3 (collecting cases); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419,

422 (2d Cir. 2011) (plaintiff cannot "fore-stall[] the district court's decision" at pleading stage by

"fail[ing] to include matters" in complaint).[4]  Plaintiff cannot evade the dispositive impact of the

---

[3] And, in any event, Plaintiff cannot possibly plead around the undisputed fact that the Bank was engaged by Epstein, which is the entire basis of this action as specifically pled by Plaintiff both in the initial complaint and in the FAC.  *See* Mot. 8 (reviewing FAC engagement allegations, including that Epstein "officially began" his "relationship" with the Bank).  Any suggestion that Plaintiff was not on notice of what she needed to plead to avoid dismissal is belied by the fact that Plaintiff's counsel in this action negotiated the Settlement Agreement.

[4] As noted in the Motion, the Court may convert this Motion to a motion for summary judgment if it has any doubt about its ability to consider the Release or base dismissal on lack of subject matter jurisdiction pursuant to 12(b)(1).  Mot. 7 n.5.  Plaintiff's suggestion that conversion is inappropriate because the Release was not referenced in the FAC (Opp. 5 n.1) is baseless, particularly where Plaintiff did not disclose the Release to the Court in this action, agrees that the Settlement Agreement is unambiguous, and does not dispute that the Bank was engaged by Epstein.  *See Brown v. Kay*, 889 F. Supp. 2d 468, 479-82 (S.D.N.Y. 2012), *aff'd*, 514 F. App'x

Release simply because her counsel chose not to attach it to the FAC.  *See Brown*, 889 F. Supp.2d at 489 (expressing "disappointment in the conduct of [plaintiff] and his counsel in filing [] Complaint without disclosing therein the fact of the [] Release") (Engelmayer, J.).

### B. The Bank is an Intended Third-Party Beneficiary of the Release

To attempt to avoid the plain language of the Release, Plaintiff claims that because the Settlement Agreement stated that the parties do not believe there is a ████████████████ that the Release would cover ████████████████████████████████ and because ████████████████████ the Settlement Agreement is thus somehow "unambiguous that the parties did not intend to release [any] banks" (or any "financial institutions," more generally).  Opp. 7-9.  This interpretation is contrary to the plain language of the carve-out, basic principles of contract interpretation, black-letter third-party beneficiary law, and logic.  Where an intent to benefit a class of third parties is "shown on the face of the contract," such parties are intended third-party beneficiaries.  *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 418, 430 (S.D.N.Y. 2010) (collecting cases).  Such is the case here.

*First*, to state the obvious:  if Plaintiff and her sophisticated counsel wanted to retain the ability to bring this action immediately after executing the Settlement Agreement, they should have negotiated to include Deutsche Bank in that carve-out.  The fact that the Release carved-out ██████████████████████ establishes that Plaintiff was fully aware of the need to do so and how to do so.  Moreover, if, as Plaintiff claims, the Release actually exempted all "financial

---

58 (2d Cir. 2013) (converting Rule 12(b)(6) motion to summary judgment and awarding judgment to defendants where release not referenced in complaint).  Finally, Plaintiff's contention that *In re World Trade Ctr.*, 828 F. App'x 734 (2d Cir. 2020), on which the *Solis* case cited in the Motion relied, had "nothing to do with a release" (Opp. 6) is wrong.  *See* 828 F. App'x at 735-36 (prior settlement agreement between plaintiff and insurance company was held to moot a later-filed action by plaintiff against a third-party beneficiary of that settlement).  In any event, as set forth in the Motion and noted above, the Court can dismiss this action based on the Release pursuant to Rule 12(b)(6), Rule 12(b)(1), or by converting the Motion to a motion for summary judgment.

institutions or their officers or employees" (Opp. 7) from the clear contractual language in the Release benefiting any third parties that were ever "engaged by" Epstein, then the Release would have said exactly that.  But it does not.  *See Vt. Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) (courts should not "interpret an agreement as impliedly stating something which the parties have neglected to specifically include") (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 72 (1978)).[5]  Alternatively, Plaintiff could have negotiated for some form of a standard "no third-party beneficiary" clause, as contained in the release in the Prince Andrew case on which Plaintiff relies.  *See* Opp. 8 (citing *Giuffre,* 579 F. Supp. 3d at 446) (release by different Epstein victim represented by the same counsel as Plaintiff here provides that "the terms of this Settlement Agreement are not intended to be used by any other person nor be admissible in any proceeding or case against or involving Jeffrey Epstein").[6]  But she did not.  In short, the notion that the carve-out of ███████████████████████████ *also* carves *all* financial institutions and professionals in the world ever engaged by Epstein simply because ███████████ (Opp. 9) is divorced from the actual language of the contract.

> *Second*, while conceding that the Release is unambiguous and thus can only be interpreted

---

[5] Of course, Plaintiff need not "list out every possible person she intended to *preserve* claims against" (Opp. 9) (emphasis in original):  contracts can contain "clear contractual language" (Opp. 9) reflecting an intent to benefit third parties without "nam[ing]" them (*Anwar*, 728 F. Supp. 2d at 418, 430).  Plaintiff could have negotiated for a clear and unambiguous carve-out for "financial institutions engaged by Epstein," without naming any in particular, but did not do so, despite agreeing to a "broad" and "all-encompassing" general release of claims.  Agmt. at 1.

[6] Plaintiff misleadingly omits reference to this provision to try to portray Judge Kaplan's denial of Prince Andrew's motion to dismiss as based on the settlement agreement's confidentiality provision.  But the court had only considered that provision in conjunction with the language noted above as well as various ambiguities, including whether Prince Andrew could qualify as "a potential defendant" in a prior lawsuit in a court that might not have had jurisdiction over him.  *See* 579 F. Supp. 3d at 437-39.  In any event, confidentiality restrictions do not bar third parties from enforcing settlement agreements.  *See, e.g.*, *Solis v. 666 Fifth Assocs. LLC*, 2021 WL 5998416, at *3 (S.D.N.Y. Dec. 20, 2021) (confidential settlement releases third-party beneficiary).

based on its plain meaning, the Opposition ignores entirely the plain meaning of its terms.  Plaintiff does not dispute or even address the plain meaning of the term "engaged," which courts have repeatedly interpreted to encompass the exact services that the FAC alleges the Bank was engaged by Epstein to provide.  *See* Mot. 9.  Plaintiff also ignores the many other terms in the Release that also cover the Bank—including entities that "worked in any capacity" for Epstein or acted as his "agent," "manager," "member," or "partner," and does not dispute in any way that her own repeated allegations squarely place the Bank within the meaning of each of those categories of Releasees (and therefore preclude her claims).  *See, e.g.*, Mot. 9-10 (Bank "agent" for wire transfers; Bank "participated in the operation and management of the [Epstein trafficking] enterprise itself").  Having failed to address any of these arguments in her Opposition, Plaintiff concedes the Bank is covered under numerous terms of the Release.  *See In re UBS AG Secs. Litig.*, 2012 WL 4471265, at *18 n.18 (S.D.N.Y. Sept. 28, 2012) (Sullivan, J.), *aff'd*, 752 F.3d 173 (2d Cir. 2014) (plaintiff opposition that fails to address argument "has conceded the point by silence").

Instead, Plaintiff makes the *ipse dixit* claim that it is "far more reasonable" to interpret the plain language as only covering Epstein's "affiliated companies as well as his former employees and other members of his entourage or household whom *he controlled*," but not "other individuals or entities who were *independent* or outside his inner circle."  Opp. 8.  Setting aside that the FAC repeatedly alleges that the Bank was in Epstein's "inner circle" by virtue of being his "partner" (¶ 72), this argument is directly contradicted by the plain language of the definition of Releasees. That definition expressly covers not only "entities owned or *controlled in whole or part by Jeffrey Epstein*"—which are specifically defined in the Release as "Epstein Entities"—but also separately covers "any entities [] who are or have ever been engaged by (whether as *independent* contractors

or otherwise) . . . or worked *in any capacity* for" Epstein.[7]   The Release could not have been intended to cover only Epstein-controlled entities and not entities "who were independent," when the actual terms of the Release say that it covers entities that are "independent" and differentiates those independent entities from separately-covered "Epstein Entities."  *See JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 507 F. Supp. 3d 490, 500 (S.D.N.Y. 2020) (words should be given "ordinar[y]" meanings and "absurd results should be avoided.").[8]   In sum, the Bank is a third-party beneficiary of the Release under its plain terms and this action should be dismissed.[9]

## II.    PLAINTIFF FAILS TO STATE A TVPA CLAIM

### A.    Plaintiff Does Not Allege a TVPA Beneficiary or Perpetrator Claim

*No Participation or Benefit.*  As set forth in the Motion, the FAC does not contain a single non-conclusory factual allegation establishing that the Bank participated in Epstein's trafficking. Mot. 11-27.    In  response,  Plaintiff  cites  five  purportedly  "specific,  factual  allegations demonstrating" that the Bank was an "active participant" in his trafficking.  Opp. 11.  But all are either conclusory, non-factual allegations, misrepresentations of the Consent Order findings, or descriptions of actions taken *not by the Bank*, but *by Epstein* or his associates:  (i) the Bank did not "provide cash" to Epstein (as the Opposition falsely asserts no fewer than ten separate times)— *Epstein* or his representatives withdrew his own cash (Opp. 11, ¶ 321); (ii) the Consent Order did not find that the Bank "willful[ly]" failed to file SARs (Opp. 11, ¶ 324), (iii) *Epstein's attorney*

---

[7] Plaintiff's assertion that the Bank falls outside of the definition of Releasee and is instead a "co-conspirator" or "joint tortfeasor" (Opp. 8) is nonsensical.  The "co-conspirators" and "joint tortfeasors" referenced in the Release *are*, in fact, Releasees.  *See* Agmt. at 1 (releasing "any and all Claims of Claimant against Releasees . . . including without limitation . . . any and all such claims against any and all *Releasees as* co-conspirators or . . . joint tortfeasors").

[8] Plaintiff's baseless assertion that a broad interpretation of these plain and unambiguous terms is "unreasonable" and without a "limiting principle" (Opp. 8) is belied by the plain text of the Release, which on its face states that it is "broad" and "all-encompassing," as releases often are.

[9] Plaintiff's half-hearted fallback—that there is a potential "ambiguity" (Opp. 9)—is meritless: both the Release's terms and those terms' meanings are clear, which Plaintiff does not dispute.

inquired about how to withdraw cash without triggering reports, which the Bank investigated (Opp. 11, ¶ 337); (iv) the Consent Order did not find any "deliberate omission" by the Bank intended to facilitate Epstein's sex trafficking (Opp. 11, ¶ 325); and (v) *Epstein and his representatives*, not the Bank, directed wires of Epstein's money to others (Opp. 11, ¶ 212).

Plaintiff then uses these manufactured allegations to try to distinguish this case from the clear line of cases requiring allegations of "active engagement" in sex trafficking (not pled here) to state a claim.  Mot. 13-14.  *First*, Plaintiff incorrectly analogizes her conclusory allegations of "deliberate" and "willful" compliance failures to the actual "cover-up" of sex trafficking described in *Canosa*.  *See* 2019 WL 498865, at *3 (defendants "cleaned up after [Harvey Weinstein's] sexual assaults to avoid detection by others").  *Second*, Plaintiff misrepresents the facts of *Noble*, incorrectly asserting that *Noble* only involved Robert Weinstein paying for his brother's travel "without linking that travel to plaintiff's trafficking" (Opp. 13).  *But see Noble*, 335 F. Supp. 3d at 524 (Robert Weinstein "*paid for prior settlements of claims made by women against [Harvey]*").  *Third*, Plaintiff incorrectly claims that the plaintiff in *Salesforce* only alleged Salesforce was providing "standard software" (Opp. 14) to Backpage when, in fact, Salesforce sold Backpage a "fully customizable" product and "provided the technological infrastructure for Backpage to move its business overseas."  *G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626, 631 (N.D. Ill. 2022).  *Fourth*, Plaintiff incorrectly claims that "continuous business relationship[s]" between hotels and traffickers in cases where TVPA claims have been sustained are akin to the "continuous, sustained, and significant business relationship between [the] Bank and Epstein's sex trafficking venture."  Opp. 12.  But the cases Plaintiff cites all involve hotel employees *actually witnessing* acts of sex trafficking.  *See, e.g.*, *J.C. v. I Shri Khodiyar, LLC*, 2022 WL 4482736, at *5 (N.D. Ga. Aug. 29. 2022) ("In support of the 'continuous business relationship' theory, Plaintiff specifically asserts

that [she] exhibited obvious signs, characteristics, and behaviors of a minor victim of sex trafficking . . . [and] could often be seen walking around the hotel's common areas and approaches while wearing little clothing and talking to various adult men.").[10]

In addition, the FAC's allegations do not support a "plausible inference that [the] Bank knowingly participated in the venture" (Opp. 15) in order to benefit from Epstein's sex trafficking. As explained in the Motion, all that the FAC alleges is that the Bank estimated at the time of Epstein's onboarding that it could receive (not even that it did, in fact, receive) $2-4 million in annual revenue from providing routine banking services to Epstein. Mot. 15-16. Thus, Plaintiff also fails to establish a causal relationship between those routine services it provided and the alleged benefit the Bank received for them, as required to state a claim. Mot. 16.

*No Knowledge.* As set forth in the Motion, Plaintiff cannot state a TVPA beneficiary claim for the separate reason that the FAC does not allege the Bank had any knowledge that *Plaintiff herself* was being trafficked. Mot. 18-19. Plaintiff's contention that "nothing in the TVPA's language requires" such knowledge (Opp. 15-16) is wrong as a matter of law. As *Salesforce* and numerous other cases have explained, the text of Section 1591 requires knowledge "as to a specific victim." 603 F. Supp. 3d at 645-46.[11] And Plaintiff's assertion that *Choice Hotels* "effectively

---

[10] *See also Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (hotel employee "exchanging high-fives" while "speaking about 'getting this going again'" with plaintiff's trafficker); *S.Y. v. Best Western Int'l, Inc.*, 2021 WL 2315073, at *10 (M.D. Fla. June 7, 2021) (hotel employees "made promises to the traffickers not to interfere with it"); *H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at *1 (S.D. Ohio Dec. 6, 2019) (hotel employees discovered plaintiff once "tied to a guest room bed" and once "chained up in the bathroom" of the hotel room and ignored her pleas for help); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 971 (S.D. Ohio 2019) (hotel employees ignored plaintiff's "desperate pleas and screams for help").

[11] *Salesforce* states: "Section 1595 requires that the venture engage in an act in violation of § 1591, which requires knowledge *as to a specific victim*. *See* 18 U.S.C. § 1591(a)(1) (criminalizing [trafficking] *a person*); 18 U.S.C. § 1591(a)(2) (criminalizing benefiting from participation in a [trafficking venture] where the defendant knows that 'means [] will be used to cause *the person* to engage in a commercial sex act, or that *the person* has not attained the age of 18 years . . . .' ).

rejected" this statutory requirement reflects a complete misunderstanding of both that decision and its import. As explained in the Motion (at 17 n.15), *Choice Hotels* addressed a split of authority over whether a plaintiff needs to allege "actual knowledge" of trafficking—as opposed to merely "constructive knowledge"—to state a TVPA beneficiary claim. *See* 473 F. Supp. 3d 147, 153-54 (E.D.N.Y. 2020) (dismissal based on failure to plead constructive knowledge). But courts that have agreed with *Choice Hotels still* require allegations of constructive knowledge of trafficking "*as to the plaintiff*." *Salesforce*, 603 F. Supp. 3d at 646; Mot. 18 & n.16 (collecting many additional cases).[12] The Opposition cites no cases to the contrary.

Unable to overcome this clear line of cases, Plaintiff again resorts to distorting the FAC's allegations, baldly and falsely claiming that Bank personnel "*observed* victims present in [Epstein's] home" (Opp. 19). That inflammatory (and false) statement is a literal rewriting of the contrived allegation in the FAC highlighted in the Bank's Motion—that "trafficking victims" generally were hypothetically "*observable*" (¶ 236) by Bank personnel at a single meeting in Epstein's house—and, in any event, still fails to demonstrate that the Bank knew *Plaintiff* was being trafficked, as required to state a TVPA beneficiary claim. *See* Mot. 18 & n.16.[13]

---

Accordingly, a claim under § 1595 requires that 'the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated [§ 1591 *as to the plaintiff*.'" *Id.* (emphasis in original) (including internal citations and quotations); *see also, e.g.*, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (conducting same statutory analysis).

[12] Courts that apply an "actual knowledge" standard, such as *Noble*, of course require knowledge as to the specific plaintiff, too, but Plaintiff's criticism of *Noble*'s knowledge requirement (Opp. 16) is irrelevant because, as set forth in the Motion, her allegations fail under either standard.

[13] As is clear from the deliberate choice to use the word "observable" in the FAC, Plaintiff's counsel took great care to avoid directly alleging that Bank personnel actually observed victims being trafficked, consistent with their obligations under Rule 11. Their last-ditch resort to such conduct here (and to publicize such baseless allegation) is unfortunate and confirms Plaintiff's complete inability to plead the actual facts necessary to state a claim against the Bank. *See LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 547, 579-80 (S.D.N.Y. 2017) ("It is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss.").

Plaintiff also weaves these newly invented allegations together with the FAC's litany of conclusory allegations, including that the Bank "knew that specific victims" were being trafficked and "could have obtained" their names because they observed them at "meetings"[14] at Epstein's home and that "[a]t the very least" the Bank should have known Plaintiff "was a victim." Opp. 17.[15] But the FAC does not actually allege that any Bank employee observed any victims, and, as noted in the Motion, while the FAC alleges Epstein forced Plaintiff to open an account with the Bank, it contains no allegation that the Bank knew that, let alone knew that she was his victim. Mot. 19.[16] Similarly, Plaintiff doubles down on misrepresentations of the Consent Order's findings, asserting that Bank management was alerted to Epstein's "sex trafficking" (Opp. 19), that Mr. Morris sent a memorandum "reviewing Epstein's history of sex trafficking"[17] (Opp. 18), and that the Bank placed conditions on the Epstein relationship to "prevent Epstein from using [Bank] accounts *in furtherance* of sex abuse and coercive sex trafficking" (Opp. 19-20). But these assertions are directly contradicted by the DFS findings on which they are purportedly based.[18]

---

[14] The claim in the Opposition of *multiple* "meetings" at Epstein's home is also a rewriting of the FAC, which only pleads a single meeting. ¶ 236.

[15] Equally unsupported is the conclusory assertion "on information and belief" (¶ 236) that other "Bank employees also met with Epstein personally outside the bank and made observations consistent with Epstein's daily sex trafficking activities, which included being surrounded by certain of his victims." Opp. 19.

[16] All that the Opposition states as to the Bank's knowledge at the time of Epstein's onboarding is that Epstein "could have been charged" for trafficking six years earlier (Opp. 18), but was not.

[17] The Opposition does not identify any allegations that Mr. Morris ever spoke to Staley or knew about Epstein's alleged trafficking while at JPM; there are none in the FAC. Mot. 20 n.19.

[18] *See* CO ¶ 33 (Bank "escalated issues concerning Mr. Epstein"; no reference to "sex trafficking"); CO ¶ 20 (describing memorandum sent by Mr. Morris; no reference to "sex trafficking"); CO ¶ 24 (describing a Bank KYC record for Epstein accounts); CO ¶ 57 (no finding that Epstein used Bank accounts for criminal activity). The Opposition also tries to bolster its allegation that Epstein and other high-net-worth clients were exempted from KYC procedures—which does not reflect the Bank knew about Epstein's sex trafficking (Mot. 22 n.20)—by adding the conclusory allegation that the Bank exempted Epstein "because it knew [it] would reveal [that it] would not be able to serve [him] based on his well-documented and publicized history of sex trafficking." Opp. 18-19.

Ultimately, the FAC contains no actual factual allegations that the Bank knew Plaintiff was being trafficked, or that Epstein was engaged in a sex trafficking venture while he was a Bank client; Plaintiff's newly-contrived assertions in the Opposition do not make it so.  Mot. 18-20.[19]

*No Perpetrator Liability.*  For the reasons above and in the Motion, Plaintiff cannot allege the Bank actually perpetrated trafficking violations.  Plaintiff's only support—a false assertion that the Bank "provided Epstein" *cash* to recruit victims (Opp. 21)—is not alleged in the FAC.[20]

### B.    Plaintiff Fails to State Any Other TVPA Claims

*No Aiding, Abetting, or Inducing.*  As explained in the Motion, because the FAC does not plead that the Bank had constructive knowledge of Epstein's trafficking, it cannot plead the Bank "knowingly gave substantial assistance" to Epstein's venture.  Mot. 26.  In any case, aiding and abetting liability is unavailable under the TVPA.  *See id.* at 25-26.  Plaintiff's contention that *Noble* was wrongly decided on this issue (Opp. 22) is incorrect, and Plaintiff does not identify a single TVPA case where a claim for aiding and abetting liability was sustained.[21]

*No Conspiracy or Attempt.*  If TVPA liability for conspiracy or attempt was "*always* part of the statute" (Opp. 22), the January 2023 amendment to add them as new causes of action would have been unnecessary.  Mot. 25-26.  But even if they were available claims here, the Opposition does not come close to identifying any allegations or case law to support them.

With respect to conspiracy, Plaintiff cannot come close to establishing that the Bank entered into an "agreement" with Epstein to join his trafficking venture with the "intent" to aid in his crimes.  Mot. 26-27 (collecting cases).  *Fleites v. MindGeek S.A.R.L.* is inapposite (Opp. 22):

---

[19] And, as stated in the Motion, allegations of "special deals" for other high-net-worth clients (Opp. 20) have nothing to do with what the Bank knew about Epstein or Plaintiff.  *See* Mot. 22 n.20.

[20] This assertion is not even remotely supported by any of the allegations in the laundry list the Opposition purports to cite in support of it.  *See* Opp. 21.

[21] *See Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 287 (D. Conn. 2013) (rejecting Plaintiff's argument that Section 1595 incorporates aiding and abetting liability under 18 U.S.C. § 2).

there, the court inferred a conspiratorial agreement between Visa and MindGeek, a pornography company for which Visa processed credit card payments, based on *specific factual allegations* that Visa processed payments even after it had obtained direct knowledge that "*MindGeek was hosting and monetizing child pornography*."  2022 WL 4456077, at *10 (C.D. Cal. July 29, 2022).  The plaintiff there alleged facts that, even after (i) MindGeek removed 80% of its content in response to public allegations and a *New York Times* exposé that it was hosting child pornography, and (ii) Visa "landed on a list maintained by anti-trafficking advocates for processing [the] payments," Visa still continued processing the payments.  *Id.* at *4.  The FAC's conclusory allegations come nowhere close to establishing that the Bank continued to provide services to Epstein after obtaining *actual knowledge* of his trafficking—to the contrary, the FAC alleges that the Bank dropped Epstein as a client right after the *Miami Herald* published an Epstein exposé.  ¶¶ 269-271.[22]

Plaintiff's attempt claim fails for the same reasons.  The Opposition does not identify a single case where a TVPA attempt claim has been sustained.  Nor does it identify any "substantial steps" that the Bank took in a specific and intentional effort to violate the TVPA.  Mot. 27.

**No Obstruction of Enforcement.**  There is no private right of action for obstruction of enforcement of the TVPA under Section 1591(d).  *See* Mot. 27 (citing *Doe v. Fitzgerald*, 2022 WL 2784805, at *7 (C.D. Cal. May 13, 2022)).  Plaintiff has not identified any authority to the contrary because none exists.  Nor does the Opposition identify any facts in the FAC that the Bank was aware of and obstructing an ongoing government investigation into Epstein.  Opp. 25-26.

## III.   PLAINTIFF FAILS TO STATE A RICO CLAIM

As set forth in the Motion, Plaintiff comes nowhere close to alleging a viable claim for

---

[22] Plaintiff's other authorities are irrelevant.  *See Pinkerton v. U.S.*, 328 U.S. 640, 647 (1946) (parties that, unlike the Bank, have entered into a conspiracy agreement can be liable for the acts of co-conspirators); *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 440 (E.D.N.Y. 2017) (co-owners of nursing homes agreed to staff homes with forced labor).

RICO or RICO conspiracy (Mot. 27-31).  The Opposition confirms this fact, relying again on conclusory allegations and irrelevant authorities to support non-viable claims.

*No Predicate Act.*  As explained in the Motion, Plaintiff's RICO claim fails at the threshold because the FAC does not allege any predicate act, nor can Plaintiff establish one—as she attempts to do in the Opposition—by conclusorily labeling the Bank's conduct as "willful."  Opp. 26.

*No Formation or Management of Criminal Enterprise or Pattern of Racketeering.*  Nor does the FAC allege that the Bank was "a central figure" in Epstein's enterprise and participated in—let alone directed—its conduct.  Opp. 27.  Plaintiff tries to evade the black-letter law cited in the Motion by repeating its newly-invented assertions about a "nefarious secret" Bank meeting with Epstein (*id.*), but, just as this Court observed in *Picard*, Plaintiff cannot "invok[e] the specter of a purported enterprise in order to give a sinister cast to its paltry, and otherwise unexceptional, factual allegations."  *Picard v. Kohn*, 907 F. Supp. 2d 392, 401 (S.D.N.Y. 2012) (Rakoff, J.).

*No RICO Injury or Causation.*  As *Canosa* (on which Plaintiff relies) makes clear, the general allegation that Plaintiff was prevented from "obtaining employment and income outside the venture" (Opp. 28.) does not establish a RICO injury because it is not supported by a single fact describing "any actual harm to [Plaintiff's] career."  2019 WL 498865, at *26.[23]  Nor, as stated in the Motion, could Plaintiff possibly allege that the Bank was the direct cause of Plaintiff's RICO injuries (which are not injuries to business or property as defined by the statute).  Mot. 30-31.

*No Conspiracy.*  As stated above, the FAC does not allege that the Bank entered into an agreement to support Epstein's trafficking so it cannot be liable for RICO conspiracy.  Mot. 31.

---

[23] Plaintiff's reliance on *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.* is also misplaced because that case involved a clear business injury.  *See* 74 F. Supp. 2d 213, 220 (E.D.N.Y. 1999) (plaintiff insurers "*expended billions of dollars* in the treatment of smoking related diseases").

## IV.   PLAINTIFF FAILS TO STATE A CLAIM UNDER NEW YORK LAW

*No Aiding Battery or IIED Claim.*  The cases on which Plaintiff relies to support her aiding and abetting battery and IIED claims confirm the claims are deficient because the FAC does not allege that the Bank participated in the abuse of specific victims.  Opp. 30-31.[24]

*No Negligence Claim.*  The Opposition confirms what the Bank explained in its Motion: no New York court has ever imposed a duty on a bank to prevent the harm that Plaintiff complains of here.  Moreover, as the Israeli law cases to which Plaintiff tailored her conclusory negligence allegations made abundantly clear, allegations of "noncompliance with banking laws and industry standards"—all that the FAC alleges—are insufficient to create a hypothetical New York law duty. Mot. 35.[25]  Nor does the Opposition dispute that KYC and AML laws do not create a legal duty from bank to customer, as the FAC incorrectly alleges.  Mot. 34 n.32.   Finally, the Opposition does not refute the clear line of cases holding that the provision of banking services cannot proximately cause injuries suffered by a victim of a bank's customer.  *See* Mot. 34.[26]

## CONCLUSION

As set forth in the Motion and herein, the FAC should be dismissed with prejudice.

---

[24] *See Maurizi v. Callaghan*, 2022 WL 1446500, at *14 (W.D.N.Y. Feb. 25, 2022) (aiding and abetting battery claim sustained against skating club that covered up sex abuse despite employee witnessing victim being molested), *report and recommendation adopted*, 2022 WL 1444182 (W.D.N.Y. May 5, 2022); *Scollo ex rel. Scollo v. Nunez*, 847 N.Y.S.2d 899 (N.Y. Sup. Ct. 2007) (triable issues over whether defendants present at crime scene aided and abetted assault that they witnessed); *Giuffre*, 579 F. Supp. 3d at 452 (IIED claim sustained where victim alleged Prince Andrew abused her); *Canosa*, 2019 WL 498865, at *8 (IIED claim sustained against Harvey Weinstein where victim alleges he abused her); *see also Kashef v. BNP Paribas S.A.* 2021 WL 603290, at *9 (S.D.N.Y. Feb. 16, 2021) (examining aiding and abetting under Swiss law).

[25] Plaintiff's other authorities are irrelevant.  *See Stagl v. Delta Airlines, Inc.*, 52 F.3d 463 (2d Cir. 1995) (not a claim against a bank); *Ford v. Grand Union Co.*, 197 N.E. 266 (N.Y. 1935) (same); *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507 (5th Cir. 2018) (dismissing negligence claims under Mississippi law relating to fiduciary duties of bank customers).

[26] *Scurry v. N.Y.C. Hous. Auth.* (cited Opp. 35) is inapposite.  *See* 193 A.D.3d 1, 8-9 (2d Dep't 2021) (negligent maintenance of a door lock proximate cause of murderer entering building).

Dated:  February 28, 2023

By:  */s/ David B. Hennes*

James P. Dowden (*admitted pro hac*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7970
james.dowden@ropesgray.com

David B. Hennes
Lisa H. Bebchick
Andrew S. Todres
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 596-9000
david.hennes@ropesgray.com
lisa.bebchick@ropesgray.com
andrew.todres@ropesgray.com

*Counsel for Deutsche Bank*