# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Jane Doe 1, individually and on behalf of all others similarly situated,

      Plaintiff,

        v.

Deutsche Bank Aktiengesellschaft, et. al.,

      Defendants.

Case No. 1:22-CV-10018 (JSR)

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED AMENDED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; AND (II) APPROVAL OF NOTICE TO THE CLASS

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

EDWARDS HENDERSON LEHRMAN
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820

Paul G. Cassell (*pro hac vice*)
S.J. Quinney College of Law at the University of Utah[1]
383 S. University St.
Salt Lake City, UT 84112
Telephone: 801-585-5202
Fax: 801-585-6833

*Counsel for Jane Doe 1 and the Class*

---

[1] Institutional address for identification purposes, not to imply institutional endorsement.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

HISTORY OF THE LITIGATION ......................................................................... 3

NEGOTIATION OF SETTLEMENT ..................................................................... 5

SETTLEMENT TERMS ........................................................................................ 6

ARGUMENT ......................................................................................................... 7

I.      PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD
        PLAINTIFF TO NOTIFY THE CLASS ..................................................................... 7

        A.      The Rule 23(e)(2) Factors Are Satisfied ............................................... 10

                1.      Lead Plaintiff and Class Counsel Have Adequately Represented the Class
                        ........................................................................................................ 10

                2.      The Proposed Settlement Is the Result of Good Faith, Arm's Length
                        Negotiations .................................................................................. 11

                3.      The Relief Provided by the Settlement Is Adequate when Weighed
                        Against the Risks of Litigation ...................................................... 12

                4.      The Proposed Method for Distributing Relief Is Effective .............. 13

                5.      Class Counsel's Fee and Expense Request Is Fair and Reasonable ......... 15

        B.      The Proposed Settlement Meets the *Grinnell* Factors ............................ 23

II.     THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS
        FOR THE PURPOSE OF THE PROPOSED SETTLEMENT .................................... 27

        A.      Rule 23(a) is Satisfied. ......................................................................... 27

                1.      Rule 23(a)(1)—Numerosity Is Satisfied Because Epstein's Trafficking
                        Venture Injured Many Potential Victims During the Class Period........... 27

                2.      Rule 23(a)(2)—Common Questions of Law and Fact Exist.................. 28

                3.      Rule 23(a)(3)—Plaintiff's Claims Are Typical. ................................ 29

                4.      Rule 23(a)(4)—Plaintiff Will Adequately Represent the Class............... 30

        B.      Rule 23(b)(3)'s Requirements Are Satisfied....................................... 31

                1.      Common Questions of Law and Fact Predominate. ................................ 31

                2.      A Class Action Is Superior to Other Methods of Adjudication. .............. 32

III.            THE COURT SHOULD APPOINT BOIES SCHILLER FLEXNER LLP
        AND EDWARDS HENDERSON LEHRMAN AS CLASS COUNSEL AND PLAINTIFF
        JANE DOE 1 AS SETTLEMENT CLASS REPRESENTATIVE. ............................ 34

IV.        NOTICE TO THE CLASS SHOULD BE APPROVED ........................... 36

PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................................ 37

CONCLUSION ...................................................................................................................... 38

# TABLE OF AUTHORITIES

## Cases

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-CV-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) .................................. 24

*Amchem Prods., Inc v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................... 48

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) ........................................................................................... 15

*Blum v. Stenson*,
465 U.S. 886 (1984) ........................................................................................................... 20

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................................................................................... 19

*Casilao v. Hotelmacher LLC*,
No. CIV-17-800-SLP, 2021 WL 4487984 (W.D. Okla. Sept. 30, 2021) ................................ 45

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ........................................................................................ 34, 43

*Chalmers v. City of New York*,
No. 20 CIV. 3389 (AT), 2022 WL 4330119 (S.D.N.Y. Sept. 19, 2022) ................................ 47

*Christine Asia Co., Ltd. V. Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................. 32

*City of Birimingham Ret. & Relife Sys. v. Davis*,
806 F. App'x 14 (2d Cir. Mar. 12, 2020) ............................................................................. 23

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................................................. 15, 19

*Clark v. Ecolab, Inc.*,
04 Civ. 4488, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ................................................ 10

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) .................................................................................. 51

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ................................................................................................. 42

*Cornwell v. Credit Suisse* Grp.,
No. 08-cv-3758, ECF No. 117 at 5 (S.D.N.Y. July 20, 2011) ............................................... 29

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ........................................................................................... 13, 39

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ............................................................................................... 46

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ................................................................................................. 9

*Dial Corp. v. News Corp.*,
217 F.R.D. 426 (S.D.N.Y. 2016) .......................................................................................... 24

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) ................................................................................................ 33

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,

925 F.3d 63 (2d Cir. 2019) ................................................................................ 33

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000) ............................................................. 20, 21, 22, 25

*Gordon v. Vanda Pharms. Inc.*,
2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ................................................... 18

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................................................... 35

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................ 12

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ..................................................................... 40

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ............................................................................... 42

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ..................................................... 25

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
2009 WL 762438 (S.D.N.Y. Mar. 24, 2009) ...................................................... 21

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................ 38

*In re BHP Billiton Ltd. Sec. Litig.*,
No. 1:16-c-v-01445-NRB, 2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019) ........... 23

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014) .................................................................. 28

*In re CRM Holdings*,
2016 WL 4990290 (S.D.N.Y. Sept. 7, 2016) ...................................................... 19

*In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-0475 (NRB),
2005 WL 7984326 (S.D.N.Y. June 14, 2005) ............................................... 24, 29

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ............................................................................... 46

*In re Elan Sec. Litig.*,
385 F. Supp. 2d 363 (S.D.N.Y. 2005) ................................................................ 30

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................................................... 13

*In re Flag Telecom Holdings, Ltd.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................................. 26, 33

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................... 10, 41

*In re Grana y Montero S.A.A. Sec. Litig.*,
2021 WL 4173684 (E.D.N.Y. Aug. 13, 2021) ................................................... 30

*In re GSE Bonds Antitrust Litig.*,
2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) .................................................... 14

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................ 36

*In re GSE Bonds Antitrust Litigation*,
No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) ............... 24

*In re Indep. Energy Holdings PLC Sec. Litig.*,

2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................................ 41

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ........................................................................... 8, 11

*In re Initial Pub. Offering Sec. Litig.*,
260 F.R.D. 81 (S.D.N.Y. 2009) .................................................................................. 52

*In re JP Morgan Precious Metals Spoofing Litig.*,
No. 18-cv-10356, ECF No. 114 at 2 (S.D.N.Y. July 7, 2022) ............................... 28

*In re KeySpan Corp. Sec. Litig.*,
2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ....................................................... 26

*In re Lloyd's Am. Trust Fund Litig.*,
2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ...................................................... 21

*In re London Silver Fixing, Ltd. Antitrust Litig.*,
No. 14-MC-02573-VEC, 2021 WL 3159810 (S.D.N.Y. June 15, 2021) ................. 24

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................ 26

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................... 14, 37

*In re MF Global Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ....................................................................... 46, 48

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................... 26, 39

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................... 7, 8, 11

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................. 27

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998) ........................................................................................ 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................ 38

*In re Petrobras Securities*,
862 F.3d 250 (2d Cir. 2017) ..................................................................................... 47

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ............................................................................... 7

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................... 15, 37

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................................. 19, 27

*In re Top Tankers, Inc. Sec. Litig.*,
2008 WL 2944620 (S.D.N.Y. July 31, 2008) ......................................................... 20

*In re Vitamin C Antitrust Litig.*,
2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ......................................................... 40

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ....................................................... 36

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) .................................................................... 27

*Jane Doe 30's Mother v. Bradley*,

64 A.3d 379 (Del. Super. Ct. 2012) ............................................................ 48

*Landmen Partners, Inc. V. Blackstone Grp., L.P.*,
No. 08-cv-03601-HB-FM, 2013 WL 11330936 (S.D.N.Y. Dec. 18, 2013) ............................ 23

*Lopez v. Setauket Car Wash & Detail Ctr.*,
314 F.R.D. 26 (E.D.N.Y. 2016) .................................................................. 43

*M.K.B. v. Eggleston*,
445 F. Supp. 2d 400 (S.D.N.Y. 2006) (Rakoff, J.) ................................................ 42

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................ 27

*Meredith Corp. v. SESAC, LLC*,
87 F.Supp. 3d 650 (S.D.N.Y. 2015) .............................................................. 24

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ............................................................................ 25

*NECA IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
2016 WL 3369534 (S.D.N.Y. May 2, 2016) ........................................................ 29

*New York State Ass'n for Retarded Child., Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983) ................................................................... 26

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ................................................................ 16, 41

*Nichols v. Noom, Inc.*,
2022 WL 2705354 (S.D.N.Y. July 12, 2022) ...................................................... 40

*Pantelyat v. Bank of Am., N.A.*,
2019 WL 402854 (S.D.N.Y. Jan 31, 2019) ........................................................ 15

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
277 F.R.D. 97 (S.D.N.Y. 2011) ......................................................... 43, 45, 46

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,
2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006) ...................................................... 39

*Rodriguez v. CPI Aerostructures, Inc.*,
2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021) ...................................................... 52

*S.J. v. Choice Hotels Int'l, Inc.*,
473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................................... 44

*Scott v. Aetna Servs., Inc.*,
210 F.R.D. 261 (D. Conn. 2002) ................................................................ 48

*See In re Petrobras Secs. Litig.*,
2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018) ...................................................... 6

*Sewell v. Bovis Lend Lease, Inc.*,
No. 09 CIV. 6548 RLE, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ................................ 37

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................................... 51

*Solis v. OrthoNet LLC*,
2021 WL 2678651 (S.D.N.Y. June 30, 2021) ...................................................... 28

*The Rick Nelson Co., LLC v. Sony Music Entertainment*,
No. 18-cv-8791, ECF No. 97 at 2 (S.D.N.Y. May 25, 2021) ....................................... 30

*Thompson v. Metropolitan Life Ins. Co.*,
216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................. 10

*Tyson Foods, Inc. v. Bouaphakeo*,

577 U.S. 442 (2016) ................................................................................. 47
*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ............................................................ 51
*Velez v. Novartis Pharms. Corp.*,
   No. 04 CIV 09194 CM, 2010 WL 4877852, (S.D.N.Y. Nov. 30, 2010) ................... 29
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................. 7, 12, 21, 27
*Weber v. Gov't Emps. Ins. Co.*,
   262 F.R.D. 431 (D.N.J. 2009) ............................................................ 40
*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ........................................................... 13, 52
*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ............................................... 29

## Statutes

18 U.S.C. § 1591(a) ......................................................................... 30
18 U.S.C. § 1591(d) ......................................................................... 30
Trafficking Victims' Protection Act of 2000 ................................................. 30

## Other Authorities

2021 WL 4173170 (E.D.N.Y. Sept. 14, 2021) .................................................. 21
Herbert B. Newberg, Newberg on Class Actions § 14:6 ........................................ 19

## Rules

Rule 23 of the Federal Rules of Civil Procedure ....................................... passim

## Regulations

28 U.S.C. § 1715 ............................................................................ 37

Lead Plaintiff Jane Doe 1 ("Lead Plaintiff"), individually and on behalf of a proposed class[2] of similarly situated victims ("Settlement Class"), respectfully submits this memorandum of law in support of her amended unopposed motion for: (i) preliminary approval of the proposed $75 million Settlement[3] in *Jane Doe 1 v. Deutsche Bank Aktiengesellschaft, et. al.*, Case No. 1:22-CV-10018 (JSR) (the "Litigation") between Lead Plaintiff, on behalf of herself and the Class, and Defendants Deutsche Bank Aktiengesellschaft, Deutsche Bank AG New York Branch, and Deutsche Bank Trust Company Americas (collectively, "Deutsche Bank" or the "Bank" or "Defendants" and together with Lead Plaintiff, the "Parties"); (ii) conditional certification of the proposed class for settlement purposes under Rule 23(b)(3) of the Federal Rules of Civil Procedure; (iii) appointment of Boies Schiller Flexner LLP and Edwards Henderson Lehrman (collectively, "Class Counsel") as Class Counsel and Lead Plaintiff as the Settlement Class Representative; (iv) approval of the form and manner of the notice to be provided to the Class; and (v) the scheduling of a hearing (the "Settlement Hearing") on the final approval of the Settlement and Class Counsel's application for an award of attorneys' fees and litigation costs and expenses and deadlines related thereto.   The Parties' agreed-upon, proposed Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class (the "Preliminary Approval Order") is filed herewith.

## PRELIMINARY STATEMENT

The Parties have negotiated, at arm's length and with the assistance of experienced and neutral mediators, a proposed settlement of all claims in this Litigation for $75 million in cash.  This

---

[2] On April 28, 2023, Lead Plaintiff filed a Motion for Class Certification. *See* ECF No. 68, which is pending.

[3] Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation of Settlement, as filed simultaneously herewith.  All emphasis is added and all citations are omitted unless otherwise noted.

resolution represents a substantial recovery that falls well within the range of reasonable resolutions. The matter involved years of case investigation even before filing suit, including numerous pre-suit witness interviews, and hard-fought litigation, including two motions to dismiss Lead Plaintiff's pleadings; production and review of over 200,000 documents from Defendants and numerous nonparties; dozens of witness interviews; 11 depositions of fact and expert witnesses; a motion for class certification and class definition; and formal mediation with experienced mediators. The terms of the Settlement are set forth in the Amended Stipulation of Settlement (the "Stipulation"), filed simultaneously herewith.

Lead Plaintiff and Class Counsel approve of the Settlement. Lead Plaintiff is a victim of Jeffrey Epstein's sex trafficking and actively oversaw the Litigation and authorized the Settlement. Class Counsel have deep litigation experience, including in class action litigation and in litigation on behalf of survivors of sex trafficking and abuse, and are recognized leaders in those fields. Based upon their experience and evaluation of the facts and the applicable law, Class Counsel and Lead Plaintiff submit that the proposed Settlement is fair, reasonable, adequate, and in the best interests of the Class. This is especially so considering the risk that the Class might recover substantially less (or nothing) if the action were litigated through summary judgment, trial, and the likely post-trial motions and appeals that would follow (a process that could last several years). Given these and other risks inherent in this complex class action, and the Settlement's significant value, the Settlement represents an excellent and fair result for the Class. The proposed settlement resolves the Class's claims and satisfies all the criteria for preliminary settlement approval under federal law.

At this stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Class should be notified of the proposed Settlement. Considering the

substantial recovery obtained, and the risks and burdens entailed in summary judgment and trial, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement and enter the Preliminary Approval Order.  Among other things, the Preliminary Approval Order:  (i) preliminarily approves the Settlement on the terms set forth in the Stipulation; (ii) approves the form and content of the Notice of Proposed Settlement of Class Action (the "Notice") and the Summary Notice of Proposed Settlement of Class Action (the "Summary Notice"), attached to the Stipulation as Exhibits A-1 and A-2, respectively; (iii) holds that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances and comply with the notice requirements of Due Process and Rule 23 of the Federal Rules of Civil Procedure; and (iv) sets a schedule and procedures for disseminating the Notice and publication of the Summary Notice, objecting to the Settlement or Class Counsel's application for an award of attorneys' fees and litigation costs and expenses, submitting papers in support of final approval of the Settlement, and the Settlement Hearing.

## HISTORY OF THE LITIGATION

Lead Plaintiff's counsel began investigating this matter in 2021 and ultimately commenced the action on November 24, 2022 by filing an initial individual and class action complaint, which was later amended on January 13, 2023.  The operative Complaint alleges that Jeffrey Epstein's sex trafficking venture was facilitated and enabled by Defendants helping Epstein avoid regulators' scrutiny and providing Epstein with withdrawal and wire services, all so Defendants could profit from Epstein and his associates. *See* ECF No. 42 (Amended Complaint).  Lead Plaintiff alleges that Defendants' assistance to Epstein's sex trafficking enterprise prevented the authorities from discovering his illegal scheme and increased the size and scale Epstein's access to and control of victims, causing damage to members of the Class.

3

In preparation for the filing of this action, Class Counsel engaged in extensive research, conducted dozens of interviews, and reviewed thousands of documents they have accumulated over the past fifteen years of litigation against Jeffrey Epstein, his Estate, and his associates. Class Counsel have confidentially interviewed at least 100 individuals, including dozens of survivors both in the United States and abroad, as well as a number of other witnesses who were close to or associated with Epstein for many years. Additionally, Class Counsel reviewed an enormous volume of publicly available documents regarding Jeffrey Epstein and his sex-trafficking operation inclusive of civil complaints, police reports, investigative reports, other information obtained through criminal investigations, court transcripts, news articles, audio recordings of survivors, and a multitude of other publicly available sources. Finally, Class Counsel conducted significant research into Defendants, including extensive review of other lawsuits filed against the Defendants and other regulatory findings.

Defendants deny all Lead Plaintiff's allegations. They deny that Deutsche Bank participated in the Epstein sex trafficking venture. Defendants further deny that its conduct supported Epstein's sex trafficking venture or prevented law enforcement from apprehending Epstein sooner than it ultimately did. Defendants contest Lead Plaintiff's allegations that Defendants have liability under the Trafficking Victims Protection Act ("TVPA") or under New York law. On December 30, 2022, Defendants moved to dismiss Lead Plaintiff's initial complaint. *See* ECF No. 37. Following Lead Plaintiff's amended pleading on January 13, 2023, Defendants moved to dismiss the operative Complaint on February 7, 2023. ECF No. 43. The Court granted in part and denied in part the motion on March 20, 2023. *See* ECF No. 56. Defendants answered the Complaint on April 10, 2023. *See* ECF No. 63.

The Parties engaged in extensive discovery efforts spanning several months.  All told, hundreds of thousands of pages were reviewed and produced by the Parties and by non-parties in response to subpoenas.  Furthermore, 7 fact witnesses (including non-parties) and 4 expert witnesses testified during depositions.  Fact discovery was set to close on May 30, 2023.  *See* ECF No. 62.

On April 28, 2023, Lead Plaintiff moved for class certification.  *See* ECF No. 68.

### NEGOTIATION OF SETTLEMENT

From May 9 to May 10, 2023, the Parties engaged in a confidential mediation with experienced mediators in large and complex civil sexual abuse matters and class actions, including Simone Lelchuk of Melnick ADR.  In advance of that mediation, Class Counsel and Defendants' Counsel each provided the mediators with mediation statements and engaged in a multi-day mediation to reach a settlement in principle.  The Parties negotiated a Term Sheet, memorializing their agreement to settle Lead Plaintiff's claims against Defendants and to end the Litigation.  The Parties executed the Term Sheet on May 11, 2023.  The Term Sheet included, among other things, the Parties' agreement to settle and dismiss the litigation with prejudice and to grant full mutual releases in return for a cash payment of $75 million by and/or on behalf of Defendants for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court, which the Parties now seek.

Considering the substantial benefit to the Class, and the significant costs and risks of further litigation—and in recognition of the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by well-respected mediators—Lead Plaintiff respectfully submits that the proposed Settlement warrants preliminary approval so that notice can be provided to the Class.

## SETTLEMENT TERMS

The Settlement provides that Defendants will pay or cause to be paid $75 million into an Escrow Account, which amount plus accrued interest comprises the Global Settlement Fund. Stipulation, ¶ 2.2.  Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be paid from the Global Settlement Fund.  *Id.* at ¶ 5.2.  A Claims Administrator will be selected to administer the settlement.  *Id.* at ¶ 1.2.

As set forth in the proposed Notice, Class Counsel will submit an application in support of final approval of the Settlement and an application for an award of (i) attorneys' fees on behalf of Class Counsel to be paid from the Global Settlement Fund in an amount not to exceed thirty percent (30%) of the Settlement Amount, and (ii) litigation costs, charges, and expenses in an amount not to exceed $1.5 million, plus interest accrued on both amounts at the same rate as earned by the Global Settlement Fund.

After payments to Class Members, payment of Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees, costs, charges, and expenses from the Global Settlement Fund, the remaining amount – if any – shall revert to Deutsche Bank, which will then distribute 35% of such funds to a charitable organization to be determined in a mutually agreeable fashion by the Settling Parties as a *cy pres* recipient.  *See In re Petrobras Secs. Litig.*, 2018 WL 4521211, at *5 (S.D.N.Y. Sept. 21, 2018) (Rakoff, J.) (holding *cy pres* recipients may be identified after settlement approval and a determination that there are funds remaining for *cy pres* recipients).  The proposed allocation process described in the Stipulation and Notice is comparable to those approved in numerous other class actions.

The proposed Settlement is in all respects fair, adequate, reasonable, and in the best interests of the Class.

**ARGUMENT**

**I.   PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE CLASS**

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").  Courts have approved class settlements in sex abuse cases with similar allegations and alleged injuries.  *See A.B., et al. v. The Regents of the University of California, et al.*, Case No. 2:20-CV-09555 (C.D. Cal. Oct. 9, 2020); *In re: USC Student Health Center Litigation*, Case No. 2:18-CV-04258 (C.D. Cal. May 21, 2018).  Courts have also approved class settlements in TVPA cases.  *See, e.g.*, *Paguirigan v. Prompt Nursing Employment Agency LLC*, No. 17-cv-01302 (E.D.N.Y. Mar. 7, 2017).Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of a class action settlement. Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval.").  The approval process typically takes place in two stages.  *In re LIBOR-Based Financial Instruments Antitrust Litigation, 2018 WL 3475465, at *1 (S.D.N.Y. July 19, 2018).*  In the first stage, a court provides preliminary approval of the settlement and authorizes notice of the settlement be given to the class.  *See id.* ("Preliminary approval of a proposed settlement is the first in a two–step process required before a class action may be settled.").  That is what Lead Plaintiff seeks in this motion.  In the second stage, which will come only if the Court grants this motion, the court holds a fairness hearing and "makes a final determination as to whether the proposed

settlement is fair, reasonable and adequate." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

Pursuant to Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

    a)  the Lead Plaintiff and Class Counsel have adequately represented the class;

    b)  the proposal was negotiated at arm's length;

    c)  the relief provided for the class is adequate, taking into account:

        (i)  the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)any agreement required to be identified under Rule 23(e)(3); and

    d)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Overlapping with the factors listed in Rule 23(e) are the nine so-called *Grinnell* factors which the Second Circuit has counseled district courts to consider in determining whether to grant final approval to a class action settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Global Settlement Fund in light of the best possible recovery; [and] (9) the range of reasonableness of the Global Settlement Fund to a possible recovery in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

The Rule 23(e) factors are not intended to "displace" any previously adopted factors but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Likewise, "[i]n finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the bases of written submissions and an informal presentation by the settling parties. *Clark v. Ecolab, Inc.*, 04 Civ. 4488, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing Newberg on Class Actions § 11.25). If, after preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the class members receive notice of the settlement. *Id.*

Here, Lead Plaintiff is requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement. As stated above, the proposed Settlement provides for a Global Settlement Fund of $75 million in cash, a beneficial recovery to the Class and "within the range of possible approval." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. at 87 ("Where the proposed settlement appears to be the product of serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.") (quoting *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. at 102).

### A.   The Rule 23(e)(2) Factors Are Satisfied

#### 1.   Lead Plaintiff and Class Counsel Have Adequately Represented the Class

As set forth in support of her motion for class certification, *see* ECF No. 71, Lead Plaintiff's interests in this case align with those of the other Class Members. *See Wal-Mart*, 396 F.3d at 106–07 ("Adequate representation of a particular claim is determined by the alignment of interests of class members."). Lead Plaintiff, who suffered the same or similar injuries as other Class Members, has demonstrated her ability and willingness to pursue the litigation on the Class's behalf through her active involvement in the litigation, including by searching for and producing documents, scheduling a deposition, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 184 (S.D.N.Y. 2014) (finding that Class Representative had adequately represented the class where, similar to here, Class Representative spent time "reviewing pleadings, motions, and other documents; searching for and producing documents; traveling to New York to appear for a deposition; and communicating with counsel concerning the status of the case; and staying apprised of all developments in the case, including discussions about the [s]ettlement"). Lead Plaintiff and Class Counsel zealously advocated for the interests of victims of Jeffrey Epstein and have obtained an excellent result on the Class's claims. Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on a motion to dismiss, a motion for class certification,

and motions relating to discovery issues; and participation in extensive settlement negotiations, which included a two-day mediation.  The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of victims of Jeffrey Epstein.  Accordingly, this factor weighs in favor of approval.

### 2. The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel.  *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983) ("The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate.").  This is particularly true when, as here, a mediator assisted the parties in reaching a settlement.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.) ("[T]he parties engaged in mediation and the mediator's declaration confirms that the settlement agreement was 'a product of extensive and informed negotiations conducted at arm's length' by 'sophisticated and capable counsel.'").  As described above, the Settlement was reached only after extensive, arm's-length negotiations before nationally recognized mediators who are experienced in class actions.  In advance of that mediation, the Parties submitted detailed mediation statements.  The Parties then participated in a mediation, which included providing evidentiary

submissions, and reached the Settlement. Importantly, the mediators engaged by the Parties have mediated a number of similar, large settlements involving sexual abuse victims.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle. Lead Plaintiff agreed to settle after extensive pre- and post-pleading factual investigation, and less than three weeks before the scheduled close of fact discovery when a significant portion of discovery was completed. Lead Plaintiff and Class Counsel therefore had an adequate basis for assessing the strengths and weaknesses of the Class's claims and Defendants' defenses when they agreed to the Settlement. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) (granting final approval of settlement and concluding that "[t]he advanced stage of the litigation and extensive amount of discovery completed weigh heavily in favor of [settlement] approval" because "[t]he parties' counsel were clearly in a position to realistically evaluate the strengths and weaknesses of the claims, and to evaluate the fairness of the proposed [s]ettlement"); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281–82 (S.D.N.Y. 1999) (granting preliminary approval of settlement where, as here, plaintiffs "were well informed of the strengths and weaknesses of their claims" after a large number of "documents had been inspected, depositions and private sworn interviews had occurred, plaintiffs had briefed numerous motions, and plaintiffs had consulted extensively with numerous experts"). These circumstances confirm the fairness of the proposed Settlement.

### 3. The Relief Provided by the Settlement Is Adequate when Weighed Against the Risks of Litigation

Courts consider the best possible recovery and litigation risks in deciding "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court thus

need only determine whether the settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Pantelyat v. Bank of Am., N.A*., 2019 WL 402854, at *7 (S.D.N.Y. Jan 31, 2019) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

If approved, the Settlement will provide Class Members with $75 million in cash less reasonable attorneys' fees, litigation expenses, Notice and Administration Expenses, taxes and tax expenses.  The recovery obtained represents a favorable result for the Class, where the maximum a class member can receive is $5 million dollars without deduction for any amounts previously received from Epstein's estate or others.  Additionally, although Lead Plaintiff and Class Counsel believe their case against Defendants is strong, they acknowledge that Defendants have presented substantial arguments in defense of the matter.  Finally lead Plaintiff and Class Counsel considered the risks that are presented by any jury trial and the inevitable post-trial motions or on appeal. Moreover, even if ultimately successful, the trial and appellate process would likely consume a minimum of two years, if not longer, thereby delaying further the recovery by Class Members of damages they suffered many years ago.

The proposed Settlement therefore balances the risks, costs, and delays inherent in complex class action cases such as this one.  When viewed in the context of these risks and the uncertainty of any future recovery from Defendants, the Settlement is extremely beneficial to the Class.

### 4.   The Proposed Method for Distributing Relief Is Effective

The method of the proposed notice and claims administration process is effective.  This includes well-established, effective procedures for giving notice to potential Class Members, processing claims submitted by Class Members, and efficiently distributing the Global Settlement Amount.

The notice plan includes direct mailing of the Notice to all Class Members who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *USA Today* and *Gazeta Wyborcza*.  Additionally, a dedicated website will be created for the Settlement and will be updated regularly with information and key documents concerning the Settlement, including the Stipulation, Notice, Settlement Forms, Preliminary Approval Order and all briefs and declarations in support of the Settlement and an award of attorneys' fees and expenses.

The proposed claims process also includes a Tier Two Questionnaire and Release that requests the information necessary to allow the Claims Administrator to evaluate each claim individually.  The Stipulation will govern how Class Members' claims will be calculated and how money will be distributed to Eligible Class Member.  At the outset, a Tier One Form will be provided to the Claims Administrator with built-in protections to avoid the possibility of fraudulent claims, and the Claims Administrator will determine based upon a review of a Class Member's Tier One Form whether the Class Member is an Eligible Class Member.  Each Eligible Class Member will be paid $75,000.  Each Participating Claimant will qualify for Tier Two and will be eligible for an Allocated Amount over $75,000 provided that (i) she (or Class Counsel) submit the Tier One Form; (2) she submits a Tier Two Questionnaire and Release to the Claims Administrator and (iii) she is not deemed ineligible by the Claims Administrator.

In determining an Allocated Amount within each Tier, the Claims Administrator and/or her designees shall consider the following: 1) the maximum a Participating Claimant can be awarded is $5,000,000 (inclusive of the $75,000 available to all Eligible Class Members); 2) Participating Claimants who wish to qualify for Tier Two shall submit the Tier Two Questionnaire and Release under penalty of perjury; and 3) the Claims Administrator will hold a meeting with each Participating Claimant who submits a Tier Two Questionnaire and Release and requests such meeting.  In

14

evaluating each claim, the Claims Administrator shall consider the circumstances, severity, type, and extent of the alleged abuse or trafficking, the nature and duration of the relationship with Epstein, and the impact of the alleged conduct on the Participating Claimant.

Finally, a Claims Administrator will be selected to distribute the Net Settlement Amount pursuant to the Stipulation.

### 5.   Class Counsel's Fee and Expense Request Is Fair and Reasonable

Class Counsel will apply for an award of attorneys' fees to Class Counsel of no more than thirty percent (30%) of the Settlement Amount, plus litigation costs and expenses incurred in connection with the prosecution and resolution of this Litigation in an amount not to exceed $1.5 million, plus interest earned on both amounts at the same rate as earned by the Global Settlement Fund.  For the reasons set forth below, Class Counsel respectfully submits that this request, which also will be further briefed in Class Counsel's forthcoming motion for attorneys' fees and expenses,[4] is fair and reasonable.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Courts in this District have consistently adhered to this precedent.  *See, e.g.*, *In re CRM Holdings*, 2016 WL 4990290, at *2 (S.D.N.Y. Sept. 7, 2016) ("Pursuant to the 'equitable' or 'common fund' doctrine . . . attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." (quoting *In re Telik, Inc. Sec. Litig.*,

---

[4] A motion for final approval of the Settlement, including a motion for attorneys' fees and expenses, will be filed thirty-five (35) calendar days before the Settlement Hearing.  *See Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *5 (E.D.N.Y. Sept. 15, 2022) (noting that "it is premature to pass judgment on any anticipated fee application" at the preliminary approval stage).

576 F. Supp. 2d 570, 584-85 (S.D.N.Y. 2008))); *Aeropostale, Inc.*, 2014 WL 1883494, at *11 ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to a reasonable fee-set by the court-to be taken from the fund." (quoting *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *12 (S.D.N.Y. July 31, 2008))).

Typically, courts use one of two methods to determine a reasonable fee:  (1) the percentage of recovery method and (2) the lodestar method.  *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  The percentage of recovery method is the preferred method for calculating the reasonableness of attorneys' fees under precedent from the Supreme Court, Second Circuit, and courts in this District.  *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class. . . ."); *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 2009 WL 762438, at *2 (S.D.N.Y. Mar. 24, 2009) (explaining that while "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases," the "trend in this Circuit is toward the percentage [of the fund] method" (first quoting *Goldberger*, 209 F.3d at 50, and then quoting *Wal-Mart*, 396 F.3d at 121)).

Courts endorse the percentage of recovery method as the preferred means to determine the reasonableness of attorneys' fees because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 121 (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *11 (S.D.N.Y. Nov. 26, 2002)).  In contrast, the lodestar method—under which "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate"—has created "temptation for lawyers to run

up the number of hours for which they could be paid," and "an unanticipated disincentive to early settlements." *Goldberger*, 209 F.3d at 47–49.  The lodestar method also requires courts to "engage in a gimlet-eyed review of line-item fee audits," which is "an inevitable waste of judicial resources." *Id.* at 49.

For these reasons, courts in the Second Circuit and this District typically utilize the percentage of recovery method.  Courts are further guided by the criteria set out in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) for determining a reasonable fee in a common fund case:  (1) the quality of the representation; (2) the requested fee in relation to the settlement; (3) the time and labor expended by counsel; (4) the risk of the litigation; (5) the magnitude and complexities of the litigation; and (6) public policy considerations.  *Id.* at 50. Considering these factors, as are further discussed below, Class Counsel's forthcoming fee request is reasonable.

**The quality of representation.**  Class Counsel's fee request will be substantially premised on the successful outcome obtained for the Class.  When placed in context of similar settlements and analyzed in light of the specific risks faced in this case, Class Counsel respectfully submits that the $75 million outcome was an excellent result.  Indeed, Class Counsel vigorously pursued TVPA claims against sophisticated defense counsel, litigating the case past a challenging motion to dismiss and through a robust fact and expert discovery period. This supports the reasonableness of Class Counsel's forthcoming fee request.

**The relationship of the requested fee to the settlement.**  Class Counsel's forthcoming request for no more than 30% of the Settlement Amount is reasonable and is on par with what courts in this District have awarded counsel in comparable class actions over the last ten years.  *See, e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, No. 1:16-c-v-01445-NRB, 2019 WL 1577313, at *1 (S.D.N.Y.

17

Apr. 10, 2019) (awarding 40% of $50 million settlement plus expenses), *aff'd sub nom. City of Birimingham Ret. & Relife Sys. v. Davis*, 806 F. App'x 14 (2d Cir. Mar. 12, 2020); *Landmen Partners, Inc. V. Blackstone Grp., L.P.,* No. 08-cv-03601-HB-FM, 2013 WL 11330936, at *3 (S.D.N.Y. Dec. 18, 2013) (awarding fees of 33-1/3% of $85 million recovery plus expenses); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-CV-0475 (NRB), 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 28% of $120 million settlement); *In re GSE Bonds Antitrust Litigation*, No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) (Rakoff, J.) (awarding 20% of $386.5 million antitrust class action settlement); *In re London Silver Fixing, Ltd. Antitrust Litig.*, No. 14-MC-02573-VEC, 2021 WL 3159810 (S.D.N.Y. June 15, 2021) (awarding 30% of $38 million in antitrust class action settlement); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) (awarding 26% of $126 million in antitrust class action settlement); *Meredith Corp. v. SESAC, LLC,* 87 F. Supp. 3d 650 (S.D.N.Y. 2015) (awarding 20.2% of $58.5 million in antitrust class action settlement); *Dial Corp. v. News Corp.*, 217 F.R.D. 426 (S.D.N.Y. 2016) (awarding 20% of $244 million in antitrust class action settlement). Given that fee requests for 30% of the Global Settlement Fund have been approved as reasonable in this Circuit, Class Counsel's forthcoming request for no more than 30% is appropriate.

It is also appropriate for the Court to use the fee applicant's lodestar as a cross-check on reasonableness. *Goldberger*, 209 F.3d at 50; *see also In re AOL Time Warner*, *Inc. Sec. & ERISA Litig.*, 2006 WL 3057232, at *28 (S.D.N.Y. Oct. 25, 2006) ("It bears emphasis that the lodestar computation here is a cross-check, calculated with less precision than would be required if lodestar were the primary methodology."). Class Counsel's forthcoming fee request is appropriate under that metric, too.

In this contingency fee case, Class Counsel bore substantial risk that it would be paid nothing for its work on behalf of the Class.  Fees in excess of the lodestar are routinely awarded to account for this contingency-fee risk and other factors.  *See In re Flag Telecom Holdings*, 2010 WL 4537550, at *26 ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." (quoting *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009))).  Lodestar multipliers ranging from 2 to 5 are commonly awarded in class actions.  *See, e.g.*, *Wal-Mart*, 396 F.3d at 123 (affirming district court's fee award representing 3.5 multiplier); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) (awarding fee representing 4.0 multiplier); *see also Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re EVCI Career Colleges Holding Corp.*, 2007 WL 2230177, at *17 (noting, in securities class action, that "[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District"); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (lodestar multiplier of 4.65 was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 489 (lodestar multipliers between 3 and 4.5 are common); Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 14:6 (lodestar multipliers up to 4 "frequently are awarded in common fund cases when the lodestar method is applied").

***Counsel's time and labor***.  Class Counsel expended substantial time and effort pursuing the litigation on behalf of the Class.  Unlike many firms that regularly participate in class action matters, BSF routinely serves as counsel for both plaintiffs and defendants.  BSF is primarily a trial firm and prepares its case strategy based on anticipating the requirements for trial and working

19

back from there in implementing strategy for discovery, experts, and motion practice. EHL is a litigation firm specializing in the civil representation of survivors of violent crimes, primarily victims of sexual abuse and sex-trafficking. Professor Paul G. Cassell, a former federal judge and subject matter expert, provided invaluable strategic insight and litigation skills to bear. Together, Class Counsel respectfully submits that the combined approach taken led directly to the successful settlement.

Throughout its time prosecuting the litigation, Class Counsel staffed the matter efficiently and avoided any unnecessary duplication of effort. Moreover, additional hours and resources will necessarily be expended seeking the Court's final approval of the Settlement, assisting Members of the Class with the completion and submission of Settlement Forms, responding to Class Member inquiries, and presenting the final proposed allocation of settlement proceeds among the Class Members. Given the significant amount of time and effort devoted by Class Counsel to obtain a $75 million recovery, a request for attorneys' fees not to exceed 30% of the Settlement Amount is appropriate.

***The litigation risks***. As set forth above, while Lead Plaintiff remains confident in her claims, trying her case to a jury as a class action would present risk. *See* §V.A.3., *supra*. Defendants raised numerous challenges to Lead Plaintiff's allegations of liability under TVPA and under New York law. Class certification was not certain, and if it were granted, maintaining class certification through trial carries risk. *Christine Asia Co., Ltd. V. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) (the risk of maintaining a class action through trial weighed in favor of final approval because "a class certification order may be altered or amended at any time before a decision on the merits"). Securing a guaranteed,

substantial payout for the Class counsels in favor of awarding Class Counsel its forthcoming fee request.

The fee award also should take into account the risk that Class Counsel would walk away from this case with nothing. Class Counsel undertook this litigation on a wholly contingent-fee basis, has not yet been compensated for any time or expenses since it began to represent the Class, and would have received no compensation or payment of its expenses had this case not been resolved successfully. In undertaking that responsibility, Class Counsel was obligated to ensure that sufficient attorney and paraprofessional resources were dedicated to prosecuting the litigation and that funds were available to pay the substantial out-of-pocket expenses. Under such circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. With the specter of an exceedingly costly loss always looming, Class Counsel's assumption of the contingent-fee risk strongly supports the reasonableness of a fee request. *See Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 727 (2d Cir. 2023) ("The district court reasonably concluded that the significant litigation risk present in this case meant that class counsel had taken on a venture with a high risk of failure, and that the risk should be compensated."); *In re Flag Telecom Holdings*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *see also Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019) ("[A]n unenhanced lodestar fee does not account for the contingent risk that a lawyer may assume in taking on a case.").

***The litigation's complexities and magnitude.*** The Court may make "specific and detailed findings from the record, as well as from its own familiarity with the case" to determine whether

21

Class Counsel has met an element of the *Goldberg* test.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007).  Here, such findings support Class Counsel's contention that the complexity and magnitude of the Litigation support a fee award for Class Counsel's diligent efforts to secure an excellent settlement for the Class.

The Litigation involved significant briefing, motion practice, fact discovery, and expert discovery between Class Counsel and Defendants' Counsel, requiring sophisticated law firms with significant experience both litigating class action lawsuits and negotiating settlements to deploy significant resources in order to litigate effectively on behalf of their clients.  Additionally, the Litigation overlapped with government investigations and regulatory law, expanding the areas covered beyond the already complex substance of the typical class action context.  Due to these overlapping areas of expertise required, discovery and motions practice were particularly complex and hard-fought – and would continue to be hard fought were litigation to continue. Given the complexity and high stakes of the Litigation and the significant public interest it attracted, and the resources required to litigate the matter, Class Counsel's ability to secure a favorable outcome counsels in favor of Class Counsel's proposed fee award.

***Considerations of public policy.***  Public policy considerations support awarding the requested fee, particularly because pursuing sex trafficking victims' rights is a necessary and important goal for the legal community.  The reality is that "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the Global Settlement Fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).  Appropriately compensating Class Counsel for its successful efforts in this case will enhance the incentives for competent counsel to shoulder the significant risk of contingent-fee

litigation in service of the public's interest in pursuing the rights of sex trafficking victims. All
Class Members Are Treated Equitably Relative to One Another

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members
equitably relative to one another.  Fed. R. Civ. P. 23(e)(2)(D).  Here, the proposed method of
allocation is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class
Member preferentially.  The Stipulation and Notice each explain how the Settlement proceeds will
be distributed among Eligible Claimants.  Each Class Member, including Lead Plaintiff, determined
by the Claims Administrator to be an Eligible Class Member will receive distribution pursuant to
these terms.  Awards will be between $75,000 and $5,000,000.

### B.  The Proposed Settlement Meets the *Grinnell* Factors

*The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the
Settlement.*  The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of
"the costs, risks, and delay of trial and appeal" addressed above.  Fed. R. Civ. P. 23(e)(2)(C)(i); *see*
§V.A.3., *supra*.  This case is reflective of the complexity, expense, and duration of class actions.

*The Reaction of the Class to the Settlement.*  Lead Plaintiff supports the Settlement based
on her direct participation in the prosecution of the case, in the mediation, and in the decision to enter
into the Settlement.  At this stage, prior to distribution of notice to Class Members, this factor is not
further addressed.  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 n.1 (S.D.N.Y.
2019) (Rakoff, J.) (consideration of *Grinnell* factor number 2 "is generally premature at the
preliminary approval stage"); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2
(S.D.N.Y. Nov. 20, 2008) ("Consideration of [the class reaction] factor is premature" when "no
notice has been sent."); *Soler v. Fresh Direct, LLC*, No. 20 CIV 3431 (AT), 2023 WL 2492977,
at *5 (S.D.N.Y. Mar. 14, 2023) ("The Court does not consider the second *Grinnell* factor, which

requires the Court to evaluate the 'reaction of the class to the settlement,' *Grinnell*, 495 F.2d at 463, because consideration of this factor is premature at the preliminary approval stage.").

*The Stage of the Proceedings.* The extent and substance of Lead Plaintiff's and Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged are more than adequate to support the Settlement. *See* §V.A.2., *supra*. The voluminous discovery record of over 200,000 pages of documents and 11 depositions, as well as the extensive expert reports and depositions and the evidentiary submissions made during mediation, permitted Lead Plaintiff and Class Counsel to intelligently weigh the strengths and weaknesses of the case and to engage in effective settlement negotiations. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. at 139; *In re Sumitomo Copper Litig.*, 189 F.R.D. at 281–82; *Soler*, 2023 WL 2492977 at *4; *Sewell v. Bovis Lend Lease, Inc.*, No. 09 CIV. 6548 RLE, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012), at *8 ("The Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make…an appraisal' of the Settlement.") (internal citations omitted).

*The Risk of Establishing Liability and Damages.* The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal"). As explained above, Lead Plaintiff has satisfied the fourth *Grinnell* factor. *See* §V.A.3., *supra*.

*The Risks of Maintaining the Class Action through Trial.* Although the risk of maintaining a class through trial is present in every class action, this factor nevertheless weighs in favor of settlement where it is "likely that defendants would oppose class certification if the case were to be litigated." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 39–40 (E.D.N.Y. 2019); *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268–69 (S.D.N.Y. 2012) ("The risk that Defendants could in fact succeed in

their efforts to decertify the class militates in favor of settlement approval."). Such is the case here. Lead Plaintiff and Defendants reached a settlement before the deadline for Defendants' opposition to Lead Plaintiff's class certification motion was due. If the case were to proceed to trial, Defendants could — and likely would — oppose certification of a litigation class and/or move for decertification of any class that the Court might ultimately certify. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); Stipulation at ¶ 1.4 (noting that Defendants will not oppose certification of the class for Settlement purposes only). Although Class Counsel has provided enough information for the Court to determine that it will likely be able to certify the class at the final approval stage for settlement purposes, there is no guarantee that the Class could be certified if the parties proceeded with the litigation, and Defendants have indicated that they are only consenting to class certification for the purposes of settlement. *See, e.g.*, *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 WL 3681138, at *6 (E.D.N.Y. Dec. 11, 2006) ("The parties stipulated to class certification for settlement purposes only. If the class action were litigated, however, it is likely that defendants would oppose certification." (citation omitted)); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476–77 (S.D.N.Y. 1998) (noting that "there is no guarantee that this class would not be decertified before or during trial" and stating that "if the Class were to be decertified at trial, or if class certification were to be reversed on appeal, the class members (other than a few dozen plaintiffs) would recover nothing at all"). Thus, Lead Plaintiff has satisfied the fifth *Grinnell* factor.

   ***Defendants' Ability to Withstand a Greater Judgment.*** While not generally a determining factor, a court may consider a defendant's ability to withstand a judgment greater than that secured by the proposed settlement. *See D'Amato*, 236 F.3d at 86 (upholding district court's conclusion that the while "defendants' ability to withstand a higher judgment weighed against the settlement," it

did not alone "suggest that the settlement is unfair").  Courts generally do not find this factor to be an impediment to settlement when the other *Grinnell* and Rule 23 factors favor settlement.  *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." (quoting *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009)).  This factor is neutral.  *See Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022).

***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.***  The adequacy of the amount recovered in a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman*, 464 F.2d at 693; *see also Glob. Crossing*, 225 F.R.D. at 461 ("The certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) ("Few cases tried before a jury result in a verdict awarding the full amount of damages claimed.").  Here, given the facts and circumstances relating to Defendants, including the nature of Defendants' conduct and knowledge, the time period involved, and the size and complexity of the case, the Settlement amount is reasonable.

In sum, all of the Rule 23 and *Grinnell* factors weigh in favor of preliminary approval of the Settlement, except possibly one neutral factor.  Preliminary approval in these circumstances is entirely appropriate and warranted.

## II.   THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS FOR THE PURPOSE OF THE PROPOSED SETTLEMENT

To grant preliminary approval, the Court must also determine that the requirements for class certification under Rules 23(a) and (b) are met.  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012); Fed. R. Civ. P. 23(e)(1)(B) (requiring court to direct notice to the class if "giving notice is justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal").  As demonstrated below, the proposed Settlement Class readily satisfies the requirements of Rules 23(a) and 23(b)(3).

### A.  Rule 23(a) is Satisfied.

Class certification is warranted when four prerequisites are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy—and the action qualifies under one of Rule 23(b)'s subdivisions.  *See Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 60 (2d Cir. 2020); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) ("Beyond these prerequisites, Rule 23(b) provides additional considerations for a district court to consider prior to the certification of a class.").  Here, the Settlement Class easily meets Rule 23(a)'s requirements.

### 1.  Rule 23(a)(1)—Numerosity Is Satisfied Because Epstein's Trafficking Venture Injured Many Potential Victims During the Class Period

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed when the proposed class contains 40 or more members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  Here, the documents exchanged in discovery, including records produced by Defendants and by the Epstein Estate, identify more than 40 potential class members.  For example,

27

financial records demonstrate payments to women with Eastern European names during the class period from Epstein-related accounts, and records produced by third parties, including the Epstein Estate, identify additional potential women who were victimized by Epstein during the Class Period. Moreover, Plaintiff alleges that Epstein perpetuated—and Deutsche Bank facilitated—a large-scale sex-trafficking venture in which he, at times, abused three to four individuals per day. FAC ¶ 45. Accordingly, the potential Settlement Class satisfies the numerosity requirement.

### 2.   Rule 23(a)(2)—Common Questions of Law and Fact Exist.

Rule 23's commonality requirement is met if all class members' claims share a common question of law or of fact. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "Even a single common question of law or fact may suffice to satisfy the commonality requirement." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) (Rakoff, J.). A question is common to the class if it is "capable of classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Lopez v. Setauket Car Wash & Detail Ctr.*, 314 F.R.D. 26, 28 (E.D.N.Y. 2016) (internal citation omitted).

Lead Plaintiff brings two claims under the Trafficking Victims' Protection Act of 2000 ("TVPA") on behalf of the class: (1) a beneficiary liability claim under 18 U.S.C. § 1591(a), the elements of which are that "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152–53 (E.D.N.Y. 2020) (internal quotations omitted); and (2) an obstruction of TVPA enforcement claim, which requires proof that Deutsche Bank acted to obstruct, attempt to obstruct, interfere with, or prevent an investigation or prosecution into Epstein for trafficking.

18 U.S.C. § 1591(d).

The majority of the elements of the TVPA liability claims are common to the class.  If each Class Member brought an individual action, each would have to prove that Deutsche Bank knew about Epstein's sex-trafficking venture through testimony and evidence from Deutsche Bank's employees; that Deutsche Bank benefited from the trafficking venture through evidence of revenues Deutsche Bank earned from Epstein's accounts; and that Deutsche Bank participated in the venture by, for example, facilitating cash withdrawals used to pay Class Members for commercial sex, facilitating wire transfers of funds to co-conspirators, deliberately failing to file reports that might result in government intervention, and failing to file SARs.  As to the obstruction claim, each Class Member would have to prove that Deutsche Bank obstructed a prosecution or investigation.  The evidence answering all of those questions would be the same in every single individual trial.

Lead Plaintiff also brings two negligence claims, which will involve both legal and factual issues common to the class, such as whether Deutsche Bank owes a duty of care to non-customers.  *See* ECF No. 44 at 33–34; ECF No. 48 at 34–35.  Further, factual issues relevant to the element of breach are common to the class, as each Class Member would argue that Deutsche Bank's breached its duty of care by, for example, directly participating in the sex-trafficking venture that harmed them and helping Epstein conceal the venture from authorities, allowing it to persist for decades.  Accordingly, common questions of law and fact exist in the negligence claims.

### 3.  Rule 23(a)(3)—Plaintiff's Claims Are Typical.

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  "Plaintiffs are not required, in proving typicality, to show that the situations of the named representatives and the

class members are identical." *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 109; *see also Robidoux*, 987 F.2d at 936-37 (the typicality requirement is usually met "irrespective of minor variations in the fact patterns underlying individual claims"). "Courts in this Circuit have held that the typicality requirement is not demanding." *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 107.

Lead Plaintiff's claims are representative of those of the Class Members. Even if there are differences among the specific circumstances of each member of the Class, the central issue is that Lead Plaintiff (like all other Class Members) was victimized by the sex-trafficking venture pursuant to Epstein's well-established *modus operandi* during Epstein's relationship with Deutsche Bank. *See* ECF No. ¶ 72. The claims in this action are directed at Deutsche Bank's course of conduct, and how that conduct affected the Class. More specifically, Plaintiff's claims (like all other Class Members' claims) are based on the same "course of events"—Deutsche Bank's relationship with Epstein—and similar "legal arguments to prove the defendant's liability"— Deutsche Bank's participation in Epstein's sex-trafficking venture and negligence in failing to prevent harm to Epstein's victims. *See Robidoux*, 987 F.2d at 936; *see also Marisol A.*, 126 F.3d at 377 (finding no abuse of discretion in typicality finding where class members' injuries resulted from a "unitary course of conduct by a single system"); *Casilao v. Hotelmacher LLC*, No. CIV-17-800-SLP, 2021 WL 4487984, at *7 (W.D. Okla. Sept. 30, 2021) (rejecting argument that "personal experiences unique to certain class members and not experienced by others demonstrate a lack of typicality" in TVPA case where "the class members' claims are based on the same legal theories and the same operative conduct of Defendants as the claims brought by the Named Plaintiffs"). Thus, Plaintiff's claims are typical of the claims of the other class members.

### 4. Rule 23(a)(4)—Plaintiff Will Adequately Represent the Class.

Under Rule 23(a)(4), adequacy requires that the representative parties will "fairly and

adequately protect the interests of the class." *See In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015).  "A finding that a proposed class representative satisfies the typicality inquiry constitutes strong evidence that [its] interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiff['s] claims will vindicate those of the class." *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 109.  Even if a conflict exists, it does not "necessarily defeat class certification—the conflict must be fundamental."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

Here, Plaintiff will "fairly and adequately" represent the class.  She has actively participated in and monitored the litigation, and has participated fully in discovery.  Plaintiff's interests align with the class members' interests, she suffered the same or similar injuries as the other class members, and she has prosecuted this matter vigorously.  Further, Plaintiff's counsel is "qualified, experienced and generally able to conduct the litigation."  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Accordingly, the adequacy requirement is met.

### B.  Rule 23(b)(3)'s Requirements Are Satisfied.

1. **Lead Plaintiff seeks class certification for purposes of the Settlement pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Both requirements are met here.Common Questions of Law and Fact Predominate.**

Rule 23(b)(3) certification turns on whether common issues predominate over individualized issues.  "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."  *In re Petrobras Sec. Litig.*, 862 F.3d 250, 270 (2d Cir. 2017) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  The requirement calls "only for predominance, not

exclusivity, of common questions." *See Chalmers v. City of New York*, No. 20 CIV. 3389 (AT), 2022 WL 4330119, at *17 (S.D.N.Y. Sept. 19, 2022).  Moreover, "[t]he predominance requirement differs between trial and settlement."  *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 870 (S.D.N.Y. 2018).  Because the proposed Settlement contemplates that there will be no trial, issues relating to the proportion of class-wide evidence to individualized evidence at trial are of lesser importance.  *See* 2 Newberg on Class Actions § 4.63 (5th ed. 2018) ("[I]n settlement class actions, because manageability need not be a concern, predominance – the main focus of manageability – recedes in importance as well.").

Nonetheless, common, class-wide issues predominate in this case.  In this case, Lead Plaintiff brings claims for negligence and violation of the TVPA.  *See* ECF No. 56.  As outlined above, Lead Plaintiff's TVPA claims for beneficiary liability and obstruction of TVPA enforcement will primarily require the adjudication of issues common to the class and subject to common proof, including but not limited to the existence of a sex-trafficking venture operated by Jeffrey Epstein, the banking services Deutsche Bank provided to Jeffrey Epstein, Deutsche Bank's knowledge about the sex-trafficking venture, whether Deutsche Bank benefitted from the sex-trafficking venture, and what steps Deutsche Bank took to obstruct enforcement of the TVPA.  *See* ECF No. 71 at 15–16.  The negligence claims will involve similar factual issues subject to common proof, such as whether Deutsche Bank breached a duty of care by providing financial support to the sex-trafficking venture, what services Deutsche Bank provided to Epstein, the scope of financial support provided, whether Deutsche Bank knew what the financial support was being used for, and whether Deutsche Bank acted reasonably in failing to prevent Epstein from using Deutsche Bank to support his sex-trafficking venture.  *See id.* at 16–17.

## 2.  A Class Action Is Superior to Other Methods of Adjudication.

Lead Plaintiff can also demonstrate that "a class action is superior to other available

32

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The relevant factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* The Supreme Court has held that the last factor, manageability, does not apply in the settlement context. *Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, *would present intractable management problems* . . . for the proposal is that there be no trial."). A Rule 23(b)(3) class is generally superior when it allows for the vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* at 617.

Here, the TVPA was designed to protect victims of trafficking who are particularly vulnerable, and class treatment is therefore superior in such situations. *See Jane Doe 30's Mother v. Bradley*, 64 A.3d 379, 385 (Del. Super. Ct. 2012); *see also Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) (finding class action superior in a case alleging violations of state labor law in part because "class members may fear reprisal"). Further, a class action here would avoid a "multiplicity and scattering of suits" that would follow from numerous victims of one single trafficking venture, enabled by Deutsche Bank, having to independently vindicate their rights in courts across the country. *See In re MF Global Holdings*, 310 F.R.D. at 239; *see also Menocal*, 882 F.3d at 915 (Rule 23(b)(3) class superior where "the putative class members reside in countries around the world"). Litigating this case has required taking substantial discovery from Deutsche Bank, including many depositions and obtaining hundreds of thousands of documents, that would

be relevant to each class member's claims but would be difficult for each class member to obtain on her own in an individual lawsuit.  *See* ECF No. 69 ¶ 6.  Further, Epstein's sex-trafficking scheme operated on an international scale, with victims spanning multiple different countries and multiple states within the U.S.  *See* FAC ¶ 120.  A class action would efficiently curtail the possibility of the "scattering" of suits across the country and is the superior method of adjudicating this dispute.

### III.   THE COURT SHOULD APPOINT BOIES SCHILLER FLEXNER LLP AND EDWARDS HENDERSON LEHRMAN AS CLASS COUNSEL AND PLAINTIFF JANE DOE 1 AS SETTLEMENT CLASS REPRESENTATIVE.

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel."

Fed. R. Civ. P. 23(g)(1).

> In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(a).

Under this criteria, Boies Schiller Flexner LLP ("BSF") and Edwards Henderson Lehrman ("EHL") (collectively, "Proposed Class Counsel") meet Rule 23(a)(4)'s adequacy requirement and should be appointed as Class Counsel under Rule 23(g).  Proposed Class Counsel have already invested substantial time and resources in investigating Lead Plaintiff's claims, prosecuting this case, and gathering discovery from Deutsche Bank and third parties.  Since the filing of the initial complaint, Proposed Class Counsel have been involved identifying and investigating Plaintiff's claims and facilitating the discovery process, including by engaging experts, deposing key Deutsche Bank employees and other witnesses, responding to Deutsche Bank's motion to dismiss, producing documents to Deutsche Bank, collecting documents from third parties by subpoena, and reviewing the many documents produced by Deutsche Bank thus far.  ECF No. 69 ¶ 6; ECF No.

69-1 ¶¶ 2–3.  Proposed Class Counsel have committed, and continue to commit, substantial time and resources to representing the Class, and have worked vigorously and zealously to competently represent the interests of the members of the Class.  ECF No. 69- ¶ 6.

Proposed Class Counsel are eminently qualified to represent the proposed class and its interests.  Proposed Class Counsel have substantial experience handling class actions, complex litigation, banking matters, matters involving trafficking and abuse, and, more specifically, cases related to Epstein's sex-trafficking venture.  ECF No. 69 ¶¶ 3–4, 9; ECF No. 69-1 ¶¶ 4–5, 9, 11; ECF No. 69-2 ¶¶ 13–15.  The team includes David Boies of BSF, one of the most well-known class action attorneys in the United States who has recovered billions of dollars for plaintiffs in class action litigation, ECF No. 69 ¶¶ 3–4, 8; Sigrid McCawley is a Managing Partner of BSF, named Litigator of the Year by the American Lawyer and Top Ten Female Litigator in the country by Benchmark Litigation 2020-2022, who has devoted years of her career to seeking justice for Epstein's survivors, *id.* ¶¶ 10–11; and Brad Edwards and Brittany Henderson, who have likewise been leaders in prosecuting actions against Epstein and his co-conspirators on behalf of over 75 survivors, ECF No. 69-1 ¶¶ 4, 9, 11. In addition to Class Counsel, the Class is represented by Paul Cassell, a former federal judge and one of the nation's leading experts on crime victims' rights. ECF No. 69-2 ¶¶ 8, 14, 18.

The Court should also appoint Jane Doe 1 as Settlement Class Representative.  Jane Doe 1 has actively participated in this case, including in substantial discovery and the production of documents in response to document requests from Deutsche Bank.  She has provided Counsel with information crucial to helping prepare and advance the case and represented the Class in settlement discussions.  Accordingly, the Court should appoint Jane Doe 1 as Settlement Class Representative.

## IV.    NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the agreed-upon form of the proposed Preliminary Approval Order, and described above, Lead Plaintiff will notify Class Members by mailing the Notice and Settlement Forms to all Class Members who can be identified with reasonable effort.

The Notice will advise the Members of the Class of the essential terms of the Settlement and provide information regarding Class Counsel's application for an award of attorneys' fees and expenses. The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for both submitting valid and timely Settlement Forms and objecting to the Settlement, and/or the application for attorneys' fees and expenses. Further, the Notice will provide contact information for the Claims Administrator and Class Counsel and advise Class Members on how to obtain further information regarding the Settlement.

In addition to mailing the Notice and Settlement Forms, the Claims Administrator will cause publication of a Summary Notice in *USA Today* and *Gazeta Wyborcza*. Defendants will serve notice of the proposed Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq*.

The form and manner of providing notice to the Class satisfy the requirements of Due Process and Federal Rule of Civil Procedure 23. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id*. at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014). The requirements of Due Process impose similar requirements. *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

36

Here, the manner of providing notice, which includes (i) individual notice by mail to all Class Members who can be reasonably identified, (ii) the creation of a dedicated website, and (iii) notices published in *USA Today* and *Gazeta Wyborcza* represents the best notice practicable under the circumstances.  The Notice and Summary Notice will also include (i) the rights of the Settlement Class Members, including the manner in which objections can be lodged, (ii) the nature, history and progress of the litigation, (iii) how to file Settlement Forms, (iv) a description of the Plan of Allocation (also described in the Stipulation), and (v) the fees and litigation expenses to be sought by Class Counsel.  *See, e.g.*, *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *13 (E.D.N.Y. Nov. 10, 2021) (finding that notice plan  was "reasonable and adequate" because the proposed notice was "detailed enough to inform the class members of their rights and obligations, and the proposed methods of notice, including publishing the summary notice in *USA Today* and *Gazeta Wyborcza*, are practical and likely to be effective in reaching the affected individuals"); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. at 119–20 (same).  In short, the Notice and Summary Notice satisfy all requirements of Due Process and Rule 23 because they "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70).

### PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff proposes the following schedule for the Settlement-related events in this case:

| Event | Proposed Due Date |
|---|---|
| Deadline for commencing mailing of the Notice and Settlement Forms to the Class (the "Notice Date") | 10 calendar days after entry of Preliminary Approval Order. |
| Deadline for publishing the Summary Notice | 25 calendar days after the entry of Preliminary Approval Order. |

| Deadline for Class Members to Submit Opt-Out Forms | Postmarked no later than 30 calendar days after the Notice Date. |
|---|---|
| Deadline for Claims Administrator to notify Class Counsel and Defendants' Counsel of the name of each person who submits an Opt-Out Form or revocation thereof | Within five (5) calendar days of receipt |
| Deadline for Tier One Form to be Submitted to the Claims Administrator | Postmarked no later than 45 calendar days from the Notice Date. |
| Deadline for Class Counsel to serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of mailing and publishing of the Summary Notice | 45 business days after the entry of Preliminary Approval Order |
| Deadline for Tier Two Questionnaire and Release to be Submitted to the Claims Administrator | Postmarked no later than 60 calendar days from the Notice Date. |
| Deadline for filing of papers in support of final approval of Settlement and Class Counsel's application for attorneys' fees and expenses | 35 calendar days prior to Settlement Hearing. |
| Deadline for receipt of objections to final approval of Settlement and Class Counsel's application for attorneys' fees and expenses | No later than 21 calendar days prior to Settlement Hearing. |
| Deadline for filing reply papers regarding final approval of Settlement and Class Counsel's application for attorneys' fees and expenses | 7 calendar days prior to Settlement Hearing. |
| Settlement Hearing | At the Court's convenience; Parties request 125 calendar days after entry of the Preliminary Approval Order. |
| Deadline for Claims Administrator to provide in writing to Class Counsel and Defendants' Counsel, simultaneously and in a manner that ensures confidentiality, the names of all Eligible Class Members on the same date. | 45 days after entry of the Final Approval Order, or at such time as agreed upon by the Settling Parties. |
| Deadline for Claims Administrator to provide in writing to Class Counsel and Defendants' Counsel, simultaneously and in a manner that ensures confidentiality, the Allocated Amounts for all Participating Claimants on the same date. | 90 days after entry of the Final Approval Order, or at such time as agreed upon by the Settling Parties. |

## CONCLUSION

Lead Plaintiff respectfully requests that the Court: (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of notice to be given to the Class; and (iii) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses.  The Parties' agreed-upon form of proposed

Preliminary Approval Order and exhibits thereto (Notice of Proposed Settlement of Class Action,

Summary Notice of Proposed Settlement of Class Action, Settlement Forms, and Proposed Order

and Final Judgment) are filed herewith.

Dated: June 16, 2023

                                        Respectfully submitted,

                                        */s/ Bradley J. Edwards*
                                        Bradley J. Edwards
                                        Edwards Henderson Lehrman

                                        David Boies
                                        Andrew Villacastin
                                        Sabina Mariella
                                        Alexander Law
                                        Boies Schiller Flexner LLP
                                        55 Hudson Yards
                                        New York, New York
                                        Telephone: (212) 446-2300
                                        Fax: (212) 446-2350
                                        Email: dboies@bsfllp.com
                                        Email: avillacastin@bsfllp.com
                                        Email: smariella@bsfllp.com
                                        Email: alaw@bsfllp.com

                                        Sigrid McCawley (*pro hac vice*)
                                        Daniel Crispino (*pro hac vice*)
                                        Boies Schiller Flexner LLP
                                        401 E. Las Olas Blvd. Suite 1200
                                        Fort Lauderdale, FL 33316
                                        Telephone: (954) 356-0011
                                        Fax: (954) 356-0022
                                        Email: smccawley@bsfllp.com
                                        Email: dcrispino@bsfllp.com

                                        Bradley J. Edwards
                                        Edwards Henderson Lehrman
                                        425 N. Andrews Ave., Suite 2
                                        Fort Lauderdale, FL 33301
                                        Telephone: (954) 524-2820
                                        Fax: (954)-524-2822
                                        Email: brad@epllc.com

Brittany N. Henderson
Edwards Henderson Lehrman
1501 Broadway
Floor 12
New York, NY
Telephone: (954) 524-2820
Fax: (954) 524-2820
Email: brittany@epllc.com

Paul G. Cassell (*pro hac vice*)
S.J. Quinney College of Law at the
University of Utah
383 S. University St.
Salt Lake City, UT 84112
Telephone: 801-585-5202
Fax: 801-585-6833
Email: cassellp@law.utah.edu

(institutional address for identification
purposes, not to imply institutional
endorsement)

*Counsel for Jane Doe 1*