

ROPES & GRAY LLP
1211 AVENUE OF THE AMERICAS
NEW YORK, NY 10036-8704
WWW.ROPESGRAY.COM

August 1, 2023

**BY ECF**

David B. Hennes
T +1 212 596 9395
david.hennes@ropesgray.com

Hon. Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street, Room 1340
New York, NY 10007

Re:   *Jane Doe 1 v. Deutsche Bank*, *et al.*, 22-cv-10018

Dear Judge Rakoff:

Deutsche Bank ("DB") reached written agreements with the EVCP to resolve its objections to DB's subpoena for the express purpose of reducing the EVCP's costs and burden.[1] DB accepted a limited declaration from the EVCP, withdrew its further requests, and agreed not to move to compel further production in exchange for the EVCP agreeing to produce to DB a copy of any production(s) it ultimately made to JPMC. DB lived up to its end of the bargain. But now, contrary to its agreements and Rule 45, the EVCP seeks to charge DB with an unspecified share of the more than $1.5 million in costs it claims to have incurred in connection with its response to ***JPMC's*** subpoena and Motion to Compel. As set forth below, the EVCP's attempt to renege on its agreement with DB should be rejected.

      **A.**    **The EVCP Previously Resolved Its Objections to DB's Subpoena Through Agreements with DB Designed to Minimize the EVCP's Costs and Burden**

On February 8, DB issued a subpoena to the EVCP containing nine requests for documents relating to, among other things, the DB Doe, other EVCP applicants, and releases executed by individuals who received compensation from the EVCP. Ex. A. In order to minimize the burden on the EVCP, both before and after issuing that subpoena, DB engaged in numerous meet-and-confer discussions with the EVCP's counsel, Smith Villazor LLP, which resulted in written agreements between the EVCP and DB with respect to the EVCP's compliance with DB's subpoena. *First*, on February 15, 2023, for the express purpose of "reduc[ing] the EVCP's burden and accommodat[ing] [its] sensitivities," DB agreed to accept a short declaration from the Administrator in response to its request for information relating to releases and to defer any additional requests or motion practice to a later date. Ex. B. at 1-2. The EVCP produced that declaration on February 20. Ex. C. *Second*, on March 15, DB withdrew its requests for further production and agreed not to file a motion to compel in exchange for the EVCP's agreement to produce to DB any materials that it was ordered to (and did) produce to JPMC. Ex. D. at 1-2. Neither these agreements nor the written responses and objections to the subpoena served on DB

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the EVCP's July 21, 2023 letter brief ("Br.") and all emphasis is added unless otherwise indicated.

by the EVCP (Ex. E) contained any reservation of the EVCP's right to seek costs in connection with compliance with DB's subpoena—and for good reason: in exchange for DB's waiver of its right to seek the vast majority of the information it requested, the EVCP agreed to make a limited production and otherwise only produce what it produced to JPMC. That agreement should be enforced.[2]

### B. The EVCP's Significant Claimed Costs Relate to the JPMC Subpoena and a Specific JPMC Request in That Subpoena

The EVCP and JPMC did not reach a similar agreement. Instead, they litigated JPMC's Motion to Compel and, following the Court's Order, commenced negotiations with respect to RFP No. 15 in JPMC's subpoena, culminating in the production of a summary chart. Br. at 2. The EVCP attempts to charge some unspecified amount of that work to DB by misleadingly lumping it together with JPMC and claiming—without factual support and contrary to its written agreements with DB—that the "Banks" collectively made demands that increased the EVCP's costs. *See id.* ("[t]*he Banks* were free to reject [EVCP's] proposal and demand the production of redacted documents, but *they* apparently recognized the benefits of the compromise and chose to engage in negotiations"); ("*the Banks* demanded much more information than what the EVCP originally offered"); ("*they* sent a list of more than *100 questions* . . . .").[3]

But the EVCP's claims are belied by the agreements the EVCP made and inconsistent with its admissions elsewhere in its letter brief. As set forth above, DB had no standing to reject the EVCP's proposal to prepare a summary chart in lieu of producing documents or to make demands in respect of JPMC's RFP because DB had previously agreed to accept (and the EVCP agreed to produce) whatever the EVCP produced to JPMC. Indeed, while accusing "the Banks" of making various demands regarding the summary chart (Br. at 2), the EVCP later admits that JPMC—not DB—drove the negotiations over the chart and prepared the list of questions that JPMC wanted answered in response to JPMC's RFP on the expedited timetable that JPMC wanted so that it could incorporate this information into its class certification briefing. Br. at 4 (chart prepared "in precise accordance with ***JPMC's*** specifications"). DB was not even included in the original discussions between the EVCP and JPM and was only later copied into correspondence in light of its prior agreement to receive whatever the EVCP produced to JPM and the Court's Order requiring the same. Once copied, DB was largely passive in the discussions between the EVCP and JPMC.[4] And, while JPMC offered to pay the costs of a vendor to review and/or redact documents at the EVCP's direction, DB made no such offer, nor did it entertain such an arrangement due to its prior agreements with the EVCP. Consistent with these facts, the EVCP ultimately produced the chart to JPMC and DB pursuant to an April 18, 2023 agreement in which the EVCP expressly reserved

---

[2] Notably, EVCP's letter brief does not provide any of the above detail concerning its prior written agreements with DB; instead, it only notes in a single line of a footnote that the EVCP and DB were able to resolve objections to DB's subpoena without intervention from the Court. Br. at 2 n.2.

[3] *See also id.* at 4 (touting "parties' reliance" on summary chart in class certification briefs, even though DB, unlike JPMC, never filed one).

[4] Recognizing that any production would become part of the record in its case, DB did make a limited request to the EVCP concerning the time period of data collected for JPMC's proposed summary chart.

the right to seek fees, costs, and expenses in responding to *JPMC's* subpoena, but again made no such reservation of rights with respect to DB's subpoena. Ex. F; Br. at 3.

### C.     There Is No Legal Basis for the EVCP's Request to Recover Costs from DB

Rule 45 does not authorize the EVCP to recover from DB any costs it incurred in responding to a ***different subpoena*** from a ***different party*** in a ***different action***. And time that is not "spent in connection with subpoena compliance" is not reimbursable. *See Contant v. Bank of Am. Corp.*, 2020 WL 3260958, at *5 (S.D.N.Y. June 17, 2020) (significantly limiting recoverable costs). Whatever use or benefit DB may have derived from productions in response to JPMC's separate subpoena is irrelevant to the Rule 45 analysis, and the EVCP cites no authority to the contrary. The EVCP agreed to the arrangement with DB in order to minimize its costs and burden; in turn, DB bore a substantial risk that it might receive *nothing* in response to its subpoena if the EVCP was not ordered to produce documents to JPMC. The EVCP should not be permitted to renege on its deal with DB now.

DB has previously offered to reimburse the EVCP for its share of the relatively minimal costs that it may have incurred in complying with DB's subpoena, including preparing the Administrator's declaration and providing fewer than two hours of testimony to DB at the Administrator's full-day deposition. But the EVCP has not, to date, identified any such costs specific to DB. Needless to say, the costs the EVCP is claiming in its brief—namely, litigating a Motion to Compel that DB did not file and responding to other requests by JPMC over which DB had no control—are not costs of compliance with DB's subpoena. Nor are the $1.56 million in costs that the EVCP argues the "Banks" should "split" appropriate or reasonable.[5] The EVCP bears the burden of proving the reasonableness of its costs, yet all it has submitted are heavily-redacted invoices that do not detail any specific work done in response to DB's subpoena.[6] Moreover, the EVCP did not provide fee estimates or secure a fee agreement prior to commencing work.[7] *See In re Aggrenox Antitrust Litig.*, 2017 WL 4679228, at *9 (D. Conn. Oct. 18, 2017) ("[Non-party] cannot fairly charge costs to the [requesting parties] that were incurred before it provided the [requesting parties] with an accurate estimate of production costs . . . .").[8]

---

[5] The EVCP's brief is notably silent as to the Epstein Estate's obligations. The EVCP has previously represented to the Court that the Epstein Estate is obligated to cover the EVCP's costs, and its invoices were addressed to the Epstein Estate for payment.

[6] *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (movant must submit "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done").

[7] Indeed, DB's practice in this action was to agree to the scope and expense of a third-party production *before* the expense was incurred, including in connection with its subpoena to the Epstein Estate.

[8] The EVCP's costs (including nearly $450,000 for the Administrator at $1,000/hr.) are not reasonable, particularly given it did not provide any prior notice to DB that it would be seeking such significant costs from DB. By contrast, after discussions regarding costs in advance of compliance, the Epstein Estate charged DB less than $50,000 total for several substantial productions containing thousands of documents.

For the foregoing reasons, the EVCP's fee request as to DB should be denied in all respects.

Respectfully submitted,

/s/ David B. Hennes

David B. Hennes

cc: All counsel of record (via ECF)