**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jane Doe 1, individually and on behalf of all others similarly situated, | Case No. 1:22-CV-10018 (JSR) |
| Plaintiff, | |
| v. | |
| Deutsche Bank Aktiengesellschaft, et. al., | |
| Defendants. | |

**CLASS REPRESENTATIVE'S MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION**

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Fax: (212) 446-2350

EDWARDS HENDERSON LEHRMAN LLC
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820

Paul G. Cassell (*pro hac vice*)
S.J. Quinney College of Law at the
University of Utah[1]
383 S. University St.
Salt Lake City, UT 84112
Telephone: (801) 585-5202
Fax: (801) 585-6833

*Counsel   for   Settlement   Class
Representative Jane Doe 1 and the Class*

---

[1]     Institutional address for identification purposes, not to imply institutional endorsement.

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. HISTORY OF THE LITIGATION ............................................................................... 2

III. FINAL APPROVAL IS WARRANTED......................................................................... 3

    A. The Rule 23(e)(2) Factors Are Satisfied. .............................................................. 5

        1. Class Representative and Class Counsel Have Adequately Represented the Class. ................................................................................................................... 5

        2. The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations. ...................................................................................................... 6

        3. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation. .............................................................. 8

            i. The Settlement Is Reasonable Given the Costs, Risks, and Delay of Trial and Possible Appeals......................................................................... 8

            ii. The Proposed Method for Distributing Relief and Processing Class-Member Claims Is Effective. ......................................................... 10

            iii. Class Counsel's Fee and Expense Request Is Fair and Reasonable. 14

        4. All Class Members Are Treated Equitably Relative to One Another....... 15

    B. The Proposed Settlement Meets the *Grinnell* Factors. ......................................... 15

IV. FINAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE. ............................................................................................................. 19

    A. Rule 23(a) Is Satisfied........................................................................................ 19

        1. Rule 23(a)(1)—Numerosity Is Satisfied. .................................................. 20

        2. Rule 23(a)(2)—Common Questions of Law and Fact Clearly Exist........ 20

        3. Rule 23(a)(3)—Plaintiff's Claims Are Typical. ....................................... 22

        4. Rule 23(a)(4)— Class Representative Will Adequately Represent the Class. ................................................................................................................. 23

    B. Rule 23(b)(3)'s Requirements Are Satisfied........................................................ 24

        1. Common Questions of Law and Fact Predominate. ................................. 24

        2. A Class Action Is Superior to Other Methods of Adjudication. ............... 25

V. THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE. ...................................... 26

VI. NOTICE TO THE CLASS COMPORTS WITH DUE PROCESS AND SATISFIES THE REQUIREMENTS OF RULE 23. ................................................................................ 28

VII. CONCLUSION.............................................................................................................. 31

i

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc v. Windsor,*
521 U.S. 591 (1997) .......................................................................................... 26

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
222 F.3d 52 (2d Cir. 2000) .................................................................................. 5

*Bellifemine v. Sanofi-Aventis U.S. LLC,*
2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) ..................................................... 16

*Casilao v. Hotelmacher LLC,*
2021 WL 4487984 (W.D. Okla. Sept. 30, 2021) ............................................... 23

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
504 F.3d 229 (2d Cir. 2007) .............................................................................. 20

*Chalmers v. City of New York,*
2022 WL 4330119 (S.D.N.Y. Sept. 19, 2022) ................................................... 24

*Christine Asia Co., Ltd. v. Yun Ma,*
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................ 8, 30

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ..................................................................... 2, 3, 4, 16

*City of Providence v. Aeropostale, Inc.,*
2014 WL 1883494, *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) . 8, 15

*Consol. Edison, Inc. v. Ne. Utilities,*
332 F. Supp. 2d 639 (S.D.N.Y. 2004) ............................................................... 30

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995) ................................................................................ 20

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.,*
502 F.3d 91 (2d Cir. 2007) .................................................................................. 5

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001) .................................................................................. 7

*Denney v. Deutsche Bank AG,*

443 F.3d 253 (2d Cir. 2006) ................................................................ 23

*Doe 1 v. JPMorgan Chase Bank, N.A.*,

2023 WL 3945773 (S.D.N.Y. June 12, 2023) ................................ passim

*Iglesias-Mendoza v. La Belle Farm, Inc.*,

239 F.R.D. 363 (S.D.N.Y.2007) ...................................................... 20

*In re Advanced Battery Techs., Inc. Sec. Litig.*,

298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................... 3

*In re Advanced Battery Techs., Inc. Sec. Litig.*,

298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................... 6

*In re Agent Orange Prod. Liab. Litig.*,

597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987) .................................... 19

*In re Am. Int'l Grp., Inc. Sec. Litig.*,

689 F.3d 229 (2d Cir. 2012) ............................................................ 19

*In re Amla Litig.*,

282 F. Supp. 3d 751 (S.D.N.Y. 2017) ............................................... 20

*In re AOL Time Warner S'holder Derivative Litig.*,

2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ................................... 30

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,

909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................... 17

*In re Drexel Burnham Lambert Grp., Inc.*,

960 F.2d 285 (2d Cir. 1992) ............................................................ 24

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,

2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................. 5, 6

*In re Facebook, Inc.*,

822 Fed. App'x 40 (2d Cir. 2020) .................................................... 16

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,

343 F. Supp. 3d 394 (S.D.N.Y. 2018) ........................................... 16, 27

*In re Glob. Crossing Sec. & ERISA Litig.*,

225 F.R.D. 436 (S.D.N.Y. 2004) .................................................... 5, 19

*In re GSE Bonds Antitrust Litig.*,

2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) .................................... 7

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...........................................................................

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........................................................ 19

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ................................................................................. 30

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................... 8, 16

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................... 28

*In re MF Global Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ......................................................................... 23, 26

*In re PaineWebber P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................... 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................. 4, 17

*In re Petrobras Securities*,
  862 F.3d 250 (2d Cir. 2017) ...................................................................................... 24

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  2008 WL 1956267 (S.D.N.Y. May 1, 2008) ............................................................. 18

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................... 16

*In re Top Tankers, Inc. Sec. Litig.*,
  2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................................................... 27

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ....................................................... 16, 28

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ........................................................... 18

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................................... 27

*Jane Doe 30's Mother v. Bradley*,

64 A.3d 379 (Del. Super. Ct. 2012) ........................................................................ 26

*Joel A. v. Giuliani*,

218 F.3d 132 (2d Cir. 2000) ..................................................................................... 3

*Lopez v. Setauket Car Wash & Detail Ctr.*,

314 F.R.D. 26 (E.D.N.Y. 2016) ............................................................................. 21

*M.K.B. v. Eggleston*,

445 F. Supp. 2d 400 (S.D.N.Y. 2006) .................................................................... 20

*Marisol A. v. Guiliani*,

126 F.3d 372 (2d Cir. 1997) ................................................................................... 23

*McMahon v. Olivier Cheng Catering & Events, LLC*,

2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ........................................................... 3

*Menocal v. GEO Group Inc.*,

882 F.3d 905 (10th Cir. 2018) ............................................................................... 26

*Newman v. Stein*,

464 F.2d 689 (2d Cir. 1972) ............................................................................. 9, 19

*Nichols v. Noom, Inc.*,

2022 WL 2705354 (S.D.N.Y. July 12, 2022) ..................................................... 5, 18

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,

2021 WL 76328 (S.D.N.Y. Jan. 7, 2021) ............................................................... 27

*Pantelyat v. Bank of Am., N.A.*,

2019 WL 402854 (S.D.N.Y. Jan 31, 2019) .............................................................. 9

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,

277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................. 20, 22, 23

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*,

2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006) ........................................................ 17

*Robidoux v. Celani*,

987 F.2d 931 (2d Cir. 1993) ................................................................................... 22

*Rodriguez v. CPI Aerostructures, Inc.*,

2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021) ....................................................... 30

*S.J. v. Choice Hotels Int'l, Inc.*,

473 F. Supp. 3d 147 (E.D.N.Y. 2020) .................................................................... 21

*Scott v. Aetna Servs., Inc.*,
    210 F.R.D. 261 (D. Conn. 2002) ....................................................................... 26

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ..................................................... 16

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..................................................... 29

*Thompson v. Metropolitan Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ........................................................................... 5

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .......................................................................................... 24

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ......................................................................... 29

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................... 3, 28

*Weber v. Gov't Emps. Ins. Co.*,
    262 F.R.D. 431 (D.N.J. 2009) ........................................................................... 18

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .................................................................... 7, 28, 31

## Statutes

18 U.S.C. § 1591(a) ............................................................................................ 21

18 U.S.C. § 1591(d) ............................................................................................ 21

Trafficking Victims' Protection Act of 2000 ...................................................... 21

## Rules

Fed. R. Civ. P. 23(e) ................................................................................... passim

## Regulations

28 U.S.C. § 1715 ................................................................................................ 29

Settlement Class Representative Jane Doe 1 ("Class Representative"), individually and on behalf of the Class, respectfully submits this memorandum of law in support of her unopposed motion for: (i) final approval of the $75 million Settlement between Class Representative, on behalf of herself and the Class, and Defendants Deutsche Bank Aktiengesellschaft, Deutsche Bank AG New York Branch, and Deutsche Bank Trust Companies America (collectively, "Deutsche Bank" or the "Bank" or "Defendants" and, together with Class Representative, the "Parties"); (ii) final certification of the Class for settlement purposes; and (iii) approval of the Plan of Allocation. The terms of the Settlement are set forth in the Amended Stipulation of Settlement dated June 27, 2023 (ECF No. 94-1) (the "Stipulation").[2]  The Court preliminarily approved the Settlement on June 27, 2023 (ECF No. 95) (the "Amended Preliminary Approval Order").  *See* Preliminary Fairness Hearing Transcript (Jun. 1, 2023) at 7:3–5 (The Court: "I thought that there were many, many respects in which this was an excellent settlement, and I appreciate the hard work of counsel in reaching it."), 7:19–20 (The Court: "I do think this was excellent work.").

## I.    INTRODUCTION

After months of hotly contested litigation on fast-paced trial schedule, the Parties reached a historic $75 million settlement agreement for the victim-survivors of Jeffrey Epstein, following arm's-length negotiations by experienced and knowledgeable counsel and overseen by nationally recognized mediators.  This Settlement will provide life-changing relief to dozens of sex-trafficking victims whose lives were destroyed by Epstein.  The Settlement is an excellent result for the Class given the likely amount of recovery, the defenses to liability and damages that

---

[2]    Capitalized terms used herein are defined and have the meanings contained in the Stipulation, the accompanying Joint Declaration of David Boies and Bradley Edwards in Support of Motion for Final Approval of Plan of Allocation and an Award of Attorneys' Fees and Expenses ("Boies & Edwards Decl."), and in the Memorandum of Law in Support of Motion for an Award of Attorneys' Fees and Expenses, submitted concurrently herewith.

Defendants advanced, the nature of the class being comprised of primarily Eastern European women, and the design of a claim process that allowed Epstein survivors to decide the extent to which they want to participate given the significant potential for re-traumatization.  As such, the Settlement satisfies each of the Rule 23(e)(2) factors, as well as the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Given the risks of proceeding to trial, Class Representative respectfully submits that the $75 million Settlement and the Plan of Allocation are fair and reasonable in all respects. Accordingly, Class Representative respectfully requests that the Court grant final approval of the Settlement and the Plan of Allocation under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.    HISTORY OF THE LITIGATION

After years of research and planning, Class Counsel, who were already highly experienced in the inner workings of Jeffrey Epstein's multi-decade sex trafficking enterprise, brought this case against Defendants, alleging that Epstein's sex trafficking venture was facilitated and enabled by Defendants helping Epstein avoid regulators' scrutiny and providing Epstein with withdrawal and wire services, all so Defendants could profit from Epstein and his associates.  Once commenced, the litigation moved forward at a very fast pace against a large, global financial institution.  For a full recitation of the case history, Class Representative respectfully refers the Court to her Memorandum of Law in Support of Unopposed Amended Motion for Preliminary Approval of Class Action Settlement and Approval of Notice to the Class for a discussion of the factual background and procedural history of the Litigation, the significant efforts undertaken by Class Representative and Class Counsel during the Litigation, the risks of continued litigation, and the negotiations leading to the Settlement.  *See generally* ECF No. 89 at 3–5.

## III.   FINAL APPROVAL IS WARRANTED.

The Court should grant final approval of the settlement pursuant to Rule 23(e).  To become final and binding, the Settlement requires this Court's approval. *See* Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval.").  Courts should approve a "class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  In evaluating proposed settlements, courts consider "both the settlement's terms and the negotiating process leading to settlement." *Id*.  This assessment is conducted "in light of the 'strong judicial policy favoring settlements' of class action suits."  *McMahon v. Olivier Cheng Catering & Events, LLC*, 2010 WL 2399328, at *3 (S.D.N.Y. Mar. 3, 2010) (quoting *Wal-Mart*, 396 F.3d at 116); *see In re Adv. Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").  Thus, the Second Circuit has instructed that, although proposed settlements should not be "rubber stamp[ed]," courts should "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

The Parties' $75 million Settlement is reasonable, fair, and adequate under all of the relevant factors, particularly in light of the litigation risks Class Representative and the Class faced. The Settlement therefore warrants final approval from this Court.

In considering whether to grant final approval, there are two steps.  First, the Court conducts an inquiry pursuant to Rule 23(e)(2), which identifies factors that must be considered in determining whether a class settlement is "fair, reasonable, and adequate."  These are whether:

a)  the class representatives and class counsel have adequately represented the class;

b)   the proposed settlement was negotiated at arm's length;

c)   the relief obtained for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

d)   the proposed settlement treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Second, the Court considers the nine so-called *Grinnell* factors, which overlap with the Rule 23(e)(2) factors:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement amount in light of the best possible recovery; and (9) the reasonableness of the settlement amount compared to a possible recovery in light of all of the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  "[T]he new Rule 23(e) factors . . . add to, rather than displace, the *Grinnell* factors," and "there is significant overlap" between the two "as they both guide a court's substantive, as opposed to procedural, analysis."  *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

Not every factor need be satisfied for a settlement to be deemed substantively and

procedurally fair, reasonable, and adequate.  "[R]ather, the court should consider the totality of these factors in light of the particular circumstances."  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *7 (S.D.N.Y. July 12, 2022) (quoting *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)); *see Glob. Crossing*, 225 F.R.D. at 455 (explaining that courts should not substitute their "business judgment for that of counsel, absent evidence of fraud or overreaching").

In this case, evaluation of these factors strongly supports final approval of the Settlement.

### A.  The Rule 23(e)(2) Factors Are Satisfied.

As the Court held in granting Preliminary Approval, the Rule 23(e)(2) factors weigh heavily in favor of approval. *See* ECF No. 95 at 2; ECF No. 91 at 2.

### 1.  Class Representative and Class Counsel Have Adequately Represented the Class.

The determination of adequacy under Rule 23(e)(2)(A) "typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).  Both factors favor approval here.

As set forth in support of her motion for class certification, *see* ECF No. 71, and motion for preliminary approval of the Settlement, *see* ECF No. 89, Class Representative's interests in this case are directly aligned with those of the other Class Members.  *See Wal-Mart*, 396 F.3d at 106–07 ("Adequate representation of a particular claim is established mainly by showing an alignment of

interests between class members.").   Class Representative has demonstrated her ability and willingness to pursue the Litigation on the Class's behalf through her active involvement in the Litigation, including by responding to written discovery, searching for and producing documents in response to numerous requests and follow-up requests, constantly communicating with counsel during the development of the case, scheduling a deposition, traveling across the country in preparation for a deposition, preparing for a deposition, reviewing numerous filings, staying apprised of developments in the case, participating in settlement negotiations, and approving the Settlement.  *See Adv. Battery Techs., Inc.*, 298 F.R.D. at 184 (finding that Class Representative had adequately represented the class where, similar to here, Class Representative spent time "reviewing pleadings, motions, and other documents; searching for and producing documents; traveling to New York to appear for a deposition; and communicating with counsel concerning the status of the case, and staying apprised of all developments in the case, including discussions about the [s]ettlement.").  Class Representative and Class Counsel zealously advocated for the interests of victims of Jeffrey Epstein and have obtained an excellent result on the Class's claims.  Class Representative's decision to settle this case was informed by a thorough investigation of the relevant claims; extensive fact and expert discovery; extensive briefing on motions to dismiss and for class certification, and discovery issues; and participation in extensive settlement negotiations, which included a two-day mediation.  Since preliminary approval, Class Counsel have worked diligently with dozens of Class Members and the Claims Administrator to facilitate the claims process.  The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of victims of Jeffrey Epstein. Accordingly, this factor weighs in favor of approval of the Settlement.

**2.      The Proposed Settlement Is the Result of Good Faith, Arm's Length Negotiations.**

A proposed settlement is presumed fair and reasonable when it is the result of arm's-length negotiations between counsel.  *See EVCI Career Colleges Holding Corp.*, 2007 WL 2230177, at

*4 ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws."); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983) ("The central question raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate."). This is particularly true when, as here, a mediator assisted the parties in reaching a settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019) (Rakoff, J.) ("[T]he parties engaged in mediation and the mediator's declaration confirms that the settlement agreement was 'a product of extensive and informed negotiations conducted at arm's length' by 'sophisticated and capable counsel.'"). The Settlement was reached only after extensive, arm's-length negotiations before two mediators, including Simone K. Lelchuk, a nationally recognized mediator experienced in class actions. Ms. Lelchuk has mediated a number of similar, large settlements on behalf of sexual abuse victims including, most notably, the survivors of Harvey Weinstein. In advance of mediation, the Parties submitted detailed mediation statements and supporting evidence. The Parties then participated in a mediation and reached the Settlement.

Additionally, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle. Class Representative agreed to settle after extensive pre- and post- Complaint investigation, and after a significant portion of fact and expert discovery was completed. Class Representative and Class Counsel therefore had an adequate basis for assessing the strength of the Class's claims and Defendants' defenses when they agreed to

the Settlement.  *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010) (granting final approval of settlement and concluding that "[t]he advanced stage of the litigation and extensive amount of discovery completed weigh heavily in favor of [settlement] approval" because "[t]he parties' counsel were clearly in a position to realistically evaluate the strengths and weaknesses of the claims, and to evaluate the fairness of the proposed [s]ettlement.").  Thus, this factor weighs in favor of granting final approval.

### 3.     The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation.

Under Rule 23(e)(2)(C), the Court must also consider whether the relief provided for the class is "adequate" in light of "the costs, risks, and delay of trial and appeal;" "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv).  These factors support approving the Settlement.[3]

#### i.  The Settlement Is Reasonable Given the Costs, Risks, and Delay of Trial and Possible Appeals.

Courts consider both the best possible recovery and litigation risks in deciding "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case."  *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).  A court thus need only determine whether the settlement falls within a range of reasonableness that

---

[3]     As to the fourth factor under Rule 23(e)(2)(C)(iv), while the Parties entered into a Confidential Settlement Term Sheet that established certain conditions under which Defendants could terminate the Settlement, those conditions were not met and the deadline for Defendants to terminate has since lapsed.  In any event, these types of agreements are "standard" in class action settlements and should have "no negative impact on the fairness of the Settlement."  *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

"'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Pantelyat v. Bank of Am., N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan 31, 2019) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

If approved, the Settlement will provide Class Members with $75 million in cash less reasonable attorneys' fees, litigation expenses, Notice and Administration Expenses, Taxes, and Tax Expenses. The recovery obtained represents an outstanding result for the Class, where the maximum a class member will receive is up to $5 million dollars without deduction for any amounts previously received from Epstein's estate or others. Additionally, although Class Representative and Class Counsel believe their case against Defendants is strong, they acknowledge that Defendants have presented substantial arguments and evidence, including expert testimony, that would have created significant risks for Class Representative at summary judgment and/or at trial, and that could have led to dismissal of some or all of Class Representative's claims, and thus, to a substantially smaller recovery or no recovery at all. Finally, Class Representative and Class Counsel considered the significant risks that are presented by the uncertainty that arises in any jury trial, and that even a favorable verdict could be reduced or reversed in its entirety upon consideration of inevitable post-trial motions or on appeal. Moreover, even if ultimately successful, the trial and appellate process would likely consume a minimum of two years, if not longer, thereby delaying further the recovery by Class Members of damages they suffered beginning, in some cases, more than a decade ago.

The Settlement therefore balances the risks, costs, and delays inherent in complex class action cases such as this one. When viewed in the context of these risks and the uncertainty of any future recovery from Defendants, the Settlement is extremely beneficial to the Class. Given that

many of the Class Members are foreign women from war-torn countries, the swift access to settlement funds will be life changing.

### ii. The Proposed Method for Distributing Relief and Processing Class-Member Claims Is Effective.

The method for effectuating notice and processing class-member claims is, and has been, highly effective.  It includes well-established, effective procedures for giving notice to potential Class Members, processing claims submitted by Class Members, and efficiently distributing the Global Settlement Amount.  This factor supports final approval as well.

As preliminarily approved by the Court, the notice plan included direct mailing of the Notice to all Class Members who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *USA Today* and in *Gazeta Wyborcza*, a prominent Eastern European publication.  After combing through hundreds of thousands of documents including banking records produced by Defendants, flight logs, message pads, police reports from multiple states, news articles, and multiple third-party productions including emails from the Estate of Jeffrey Epstein, Class Counsel hired international Russian and Ukrainian speaking investigators to locate and obtain addresses for potential Class Members.  Furthermore, Class Counsel contacted attorneys known to have represented survivors in previous Epstein related litigation to obtain addresses and ensure that all known or suspected Class Members received proper notice. Subsequently, third-party claims administrator, Omni Agent Solutions ("Omni"), effectuated direct mailing of the Notice to all identified Class Members.

Additionally, the investigative team hired by Class Counsel located and corresponded with dozens of potential Class Members in their native language on social media platforms including Facebook, Instagram, and LinkedIn to provide notice of the underlying action and information relating thereto.  With respect to potential Class Members who were not located through the

aforementioned means, Class Counsel called and emailed all potential survivors using all known contact information.  Class Counsel further asked each known Class Member to provide the identity and contact information for any additional potential Class Member that they were familiar with and then underwent the same investigative measures to locate and contact those individuals.  In total, Class Counsel caused 65 potential Class Members to receive notification of the Settlement by mail, email, or both.

A dedicated website was also created for the Settlement and has been updated regularly with information and key documents concerning the Settlement, including the Stipulation, Notice, Proof of Claim form, Preliminary Approval Order, all briefs and declarations in support of the Settlement and an award of attorneys' fees and expenses, and an informational video with the Claims Administrator addressing Frequently Asked Questions.  *See* Epstein Survivors' Settlement Fund DB, https://www.epsteinssfdb.com/.



The proposed claims process is also effective and includes a Tier Two Questionnaire that requests the information necessary to allow the Claims Administrator to evaluate the claim.  The Plan of Allocation governs how Class Members' claims will be calculated and how money will be distributed to Authorized Claimants.  Eligible Class Members provided Tier One Forms to the Claims Administrator with built-in protections to avoid the possibility of fraudulent claims.  The Claims Administrator will provide $75,000 to each Eligible Class Member provided they were not deemed ineligible by the Claims Administrator.  Each Eligible Class Member that qualified for Tier

Two is eligible for an Allocated Amount over $75,000 (thereby becoming a "Participating Claimant") provided that (i) they submitted a Tier Two Questionnaire to the Claims Administrator and (ii) they were not deemed ineligible by the Claims Administrator.

In determining an Allocated Amount within each Tier, the Claims Administrator and/or her designees shall consider the following: 1) the maximum a Participating Claimant will be awarded is $5,000,000, 2) Participating Claimants who wish to qualify for Tier Two shall submit the Tier Two Questionnaire under penalty of perjury, and 3) the Claims Administrator will hold a meeting with each Participating Claimant who submits a Tier Two Questionnaire and requests such meeting.  In evaluating each claim, the Claims Administrator shall consider the circumstances, severity, type, and extent of the alleged abuse or trafficking, the nature and duration of the relationship with Epstein, and the impact of the alleged conduct on the Participating Claimant.

Class Counsel has gone to great lengths to ensure that this is the most trauma-informed settlement fund to date.  In addition to making privacy concerns a primary focus of the settlement fund, Class Counsel traveled extensively to California, New York, and Florida to meet with Class Members to answer questions and assist in person with the completion of the Tier Two Form.  Class Counsel also met with various attorneys representing Class Members in their offices in person and assisted those attorneys in reviewing the claims of Class Members prior to submission.  In addition to in person meetings, Class Counsel participated in a number of Zoom meetings with Class Members all over the globe at various hours of the night to ensure that Class Members in Ukraine, Russia, Latvia, Dubai, Poland, Sweden, France, London, and China were fully informed about the settlement and the settlement fund process.

Class Counsel takes great pride in the trauma-informed nature of the administration of this fund.  In fact, many Class Members have expressed meaningful gratitude to Class Counsel for the

approach that has been taken to ensure confidentiality and to treat survivors with dignity and respect. A common sentiment is appreciation for Class Counsel spending hours at a time speaking with Class Members and providing them with individualized attention and respect, especially among the Eastern European women who have never shared their story with anyone before.  For example, one Class Member said, "thank you very much for listening. it is a great relief . . . I never dared to speak out, but since you were already quite informed, it made it easier for me . . . I really appreciate it . . . I appreciate the chance to now live my life."  Another expressed that although her English is not very strong, she finally feels like someone understood her, which has allowed her to let go of the terrible secret that she has carried with her since she was very young. Perhaps more meaningfully, the result of this trauma-informed process has included many Class Members expressing this process as having provided the very first step in their emotional and psychological healing, which many had resigned to never obtaining.

Finally, Simone K. Lelchuk, the Claims Administrator selected by the Parties and appointed by the Court, has been processing claims diligently, meeting with claimants and providing them an opportunity to cure any procedural deficiencies in their claims as necessary (such as failing to provide a signature or social security number), and will distribute the Settlement proceeds pursuant to the Court-approved Plan of Allocation.  Class Counsel have also joined Class Members who wish to speak with the Claims Administrator during their in person or Zoom meetings.

### iii.  Class Counsel's Fee and Expense Request Is Fair and Reasonable.

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).  Consistent with the Notice, and as discussed in its Memorandum of Law in Support of an Award for Attorneys' Fees and Expenses filed concurrently herewith, Class Counsel seeks an award of attorneys' fees on behalf of itself in

the amount of 30% of the Settlement Amount and $1,123,965.69 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation. As set forth in that motion, this request is reasonable given the excellent result in this case and is consistent with fee awards in this District in other types of class action settlements of similar size. Accordingly, this factor supports final approval of the Settlement.

**4.    All Class Members Are Treated Equitably Relative to One Another.**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Class Representative or any other Class Member preferentially. The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Eligible Class Members and Participating Claimants. Each Eligible Class Member and Participating Claimant, including Class Representative, will receive distribution pursuant to the Plan of Allocation. Awards will be between $75,000 and $5,000,000. This factor supports final approval as well. *See also* § V., *infra*.

### B.  The Proposed Settlement Meets the *Grinnell* Factors.

***The Complexity, Expense, and Likely Duration of the Litigation Support Approval of the Settlement.*** The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. Fed. R. Civ. P. 23(e)(2)(C)(i); *see* § III.A.3.i., *supra*. This case is reflective of the complexity, expense, and duration of class actions. Absent a settlement, further litigation through summary judgment, trial, and appeals is likely to be costly and take several years, with a material risk that there will be no recovery whatsoever.

***The Reaction of the Class to the Settlement.*** The Class's reaction to the Settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *City of Providence*, 2014 WL 1883494, at *5 (quoting *In re Veeco Instruments Inc. Sec. Litig.*, 2007

WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007).  Not a single class member, many of whom have counsel representing them individually, has chosen to opt out of the settlement.  "A favorable reception by the class constitutes 'strong evidence' of the fairness of a proposed settlement and supports judicial approval."  *Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *3 (S.D.N.Y. Aug. 6, 2010) (quoting *Grinnell*, 495 F.2d at 462).

While the deadline to submit objections (September 29, 2023) has not yet passed, no objections have been filed to date, and no Class Members opted out.  This positive reaction of the Class supports approval of the Settlement.  *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) ("The overwhelmingly positive reaction–or absence of a negative reaction–weighs strongly in favor" of final approval.), *aff'd sub nom.*, *In re Facebook, Inc.*, 822 Fed. App'x 40 (2d Cir. 2020).  The "absence of objections may itself be taken as evidencing the fairness of a settlement."  *City of Providence*, 2014 WL 1883494, at *5 (quoting *In re PaineWebber P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)).

***The Stage of the Proceedings.***  The extent and substance of Class Representative's and Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged are more than adequate to support the Settlement.  *See* § III.A.2., *supra*.  The voluminous discovery record of over 200,000 pages of documents and 11 depositions, as well as the extensive expert reports and depositions and related evidence submitted, permitted Class Representative and Class Counsel to intelligently weigh the strengths and weaknesses of the case and to engage in effective settlement negotiations.  *See, e.g.*, *Marsh*, 265 F.R.D. at 139; *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281–82 (S.D.N.Y. 1999); *Soler v. Fresh Direct, LLC*, 2023 WL 2492977, at *4 (S.D.N.Y. Mar. 14, 2023); *Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012), at *8 ("The Court need not find that the parties have engaged in extensive discovery.  Instead, it is

enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make…an appraisal' of the [s]ettlement.") (internal citations omitted).

  ***The Risk of Establishing Liability and Damages.*** The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  As demonstrated above, Class Representative has satisfied the fourth *Grinnell* factor.  *See* § III.A.3.i., *supra*.

  ***The Risks of Maintaining the Class Action Through Trial.*** Although the risk of maintaining a class through trial is present in every class action, this factor nevertheless weighs in favor of settlement where it is "likely that defendants would oppose class certification if the case were to be litigated."  *Payment Card*, 330 F.R.D. at 39–40; *see also In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 268–69 (S.D.N.Y. 2012) ("The risk that Defendants could in fact succeed in their efforts to decertify the class militates in favor of settlement approval.").  Such is the case here.  Class Representative and Defendants reached a settlement before the deadline for Defendants' opposition to Class Representative's class certification motion was due. If the case were to proceed to trial, Defendants could — and likely would — move for decertification of any class that the Court might ultimately certify.  *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.");  Amended Stipulation ¶ 1.4 (noting that Defendants will not oppose certification of the class for Settlement Purposes only).  Although Class Counsel has provided enough information for the Court to certify the Class at the final approval stage for settlement purposes, there is no guarantee that the Class would be certified if the parties proceeded with the litigation, and Defendants have indicated that they are only consenting to class certification for the purposes of settlement. *See, e.g., Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 WL 3681138, at *6 (E.D.N.Y. Dec. 11, 2006) ("The parties stipulated to class certification for settlement purposes only.  If the class action were litigated,

however, it is likely that defendants would oppose certification." (citation omitted)); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476–77 (S.D.N.Y. 1998) (noting that "there is no guarantee that this class would not be decertified before or during trial" and stating that "if the Class were to be decertified at trial, or if class certification were to be reversed on appeal, the class members (other than a few dozen plaintiffs) would recover nothing at all").   Thus, Class Representative has satisfied the fifth *Grinnell* factor.

      ***Defendants' Ability to Withstand a Greater Judgment.***   As explained in the Motion for Preliminary Approval, a defendant's ability to withstand a greater judgment is not dispositive when other factors favor approval.   *See* ECF No. 89 at 25–26.   Courts generally do not find this factor to be an impediment to settlement when the other *Grinnell* and Rule 23 factors favor settlement.   *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." (quoting *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009)).   The law does not require a defendant to "empty its coffers before a settlement can be found adequate."   *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *9 (S.D.N.Y. Dec. 19, 2014) (quoting *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)).   Accordingly, this *Grinnell* factor is neutral.   *See Nichols*, 2022 WL 2705354, at *10.

      ***The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.***   The adequacy of the amount recovered in a settlement is assessed "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp.

740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman*, 464 F.2d at 693; *see also Glob. Crossing*, 225 F.R.D. at 461 ("The certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3–4 (S.D.N.Y. Sept. 29, 2003) ("Few cases tried before a jury result in a verdict awarding the full amount of damages claimed.").  Here, given the alleged facts and circumstances, including the nature of Defendants' alleged conduct and knowledge, the time period involved, and the size and complexity of the case, the Settlement amount is reasonable.

*        *        *

In sum, all of the Rule 23 and *Grinnell* factors weigh in favor of final approval of the Settlement, except possibly one neutral factor.

## IV.    FINAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE.

The Court should grant final certification of the class pursuant to Rule 23.  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). Here, the Class readily satisfies the requirements of Rules 23(a) and 23(b)(3).  *See Doe 1 v. JPMorgan Chase Bank, N.A.*, 2023 WL 3945773 (S.D.N.Y. June 12, 2023) (Rakoff, J.) (certifying class of women under Rules 23(a) and 23(b)(3) who were sexually abused or trafficked by Jeffrey Epstein from January 1, 1998, through August 10, 2019, which included time period when JPMorgan maintained accounts for Epstein and/or Epstein-related entities).

### A.  Rule 23(a) Is Satisfied.

Class certification is warranted when four prerequisites are met—(1) numerosity,

19

(2) commonality, (3) typicality, and (4) adequacy—and the action qualifies under one of Rule 23(b)'s subdivisions. *Id.* at *2. All four requirements are met here.

### 1. Rule 23(a)(1)—Numerosity Is Satisfied.

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." *Id.* (citing Fed. R. Civ. P. 23(a)(1)). Numerosity is presumed when the proposed class contains 40 or more members. *Id.* (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 700 (S.D.N.Y. 2019) (Rakoff, J.); *In re Amla Litig.*, 282 F. Supp. 3d 751, 758 (S.D.N.Y. 2017) (Rakoff, J.). Following an extensive Court-ordered notice program, 40 Class Members have submitted Tier One Forms to the Claims Administrator, 35 Class Members have submitted Tier Two Questionnaires and Releases, and not one Class Member has filed an objection to the Settlement or opted out. *See* ECF No. 98-1 ¶ 12. Numerosity is therefore satisfied. *See Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. 2007) ("[N]umerosity is generally presumed when the prospective class consists of 40 members or more.").

### 2. Rule 23(a)(2)—Common Questions of Law and Fact Clearly Exist.

Rule 23's commonality requirement is met if all class members' claims share a common question of law or of fact. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "Even a single common question of law or fact may suffice to satisfy the commonality requirement." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) (Rakoff, J.). A question is common to the class if it is "capable of classwide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Lopez v. Setauket Car Wash & Detail Ctr.*, 314 F.R.D. 26, 28 (E.D.N.Y. 2016) (internal citation omitted).

Class Representative brings two claims under the Trafficking Victims' Protection Act of 2000 ("TVPA") on behalf of the class: (1) a beneficiary liability claim under 18 U.S.C. § 1591(a), the elements of which are that "(1) the person or entity must knowingly benefit, financially or by receiving anything of value, (2) from participating in a venture, (3) that the person knew or should have known has engaged in an act in violation of this chapter." *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 152–53 (E.D.N.Y. 2020) (internal quotations omitted); and (2) an obstruction of TVPA enforcement claim, which requires proof that Deutsche Bank acted to obstruct, attempt to obstruct, interfere with, or prevent an investigation or prosecution into Epstein for trafficking. 18 U.S.C. § 1591(d).

The majority of the elements of the beneficiary liability claim are common to the Class— if each Class Member brought an individual action, each would have to prove that Deutsche Bank knew about Epstein's sex-trafficking venture through testimony and evidence from Deutsche Bank's employees themselves; that Deutsche Bank benefited from the trafficking venture through evidence of revenues Deutsche Bank earned from Epstein's accounts; and that Deutsche Bank participated in the venture by, for example, facilitating cash withdrawals used to directly pay class members for commercial sex, paying funds to co-conspirators, deliberately failing to file reports that might result in government intervention, "structuring" cash withdrawals, and failing to file SARs. As to the obstruction claim, each class member would have to prove that Deutsche Bank obstructed a prosecution or investigation.

Class Representative also brings two negligence claims, which will involve both legal and factual issues common to the Class, such as whether Deutsche Bank owes a duty of care to non-customers. *See* ECF No. 44 at 33–34; ECF No. 48 at 34–35. Further, factual issues relevant to the element of breach are common to the Class, as each Class Member would argue that

Deutsche Bank breached its duty of care by, for example, directly participating in the sex-trafficking venture that harmed them and helping Epstein conceal the venture from authorities, allowing it to persist for decades.  Accordingly, common questions of law and fact exist.  *See Doe*, 2023 WL 3945773 at *4 (finding Doe-JPMorgan class satisfied commonality because, "This case raises not just one but many questions that are capable of classwide resolution.").

### 3. Rule 23(a)(3)—Plaintiff's Claims Are Typical.

"Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  "Plaintiffs are not required, in proving typicality, to show that the situations of the named representatives and the class members are identical."  *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 109; *see also Robidoux*, 987 F.2d at 936–37 (the typicality requirement is usually met "irrespective of minor variations in the fact patterns underlying individual claims").  "Courts in this Circuit have held that the typicality requirement is not demanding."  *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 107.

Class Representative's claims are representative of those of the class members.  Like the other Class Members, Class Representative was victimized by the sex-trafficking venture pursuant to Epstein's well-oiled *modus operandi* during Epstein's relationship with Deutsche Bank.  *See* ECF No. ¶ 72.  Further, the claims in this action are directed at Deutsche Bank's alleged course of conduct, and how that conduct affected the Class.  More specifically, Class Representative's claims and the Class Members' claims are based on the same "course of events"—Deutsche Bank's banking relationship with Epstein—and similar "legal arguments to prove the defendant's liability"—Deutsche Bank's alleged participation in Epstein's sex-trafficking venture and negligence in failing to prevent harm to Epstein's victims.  *See Robidoux*, 987 F.2d at 936; *see*

*also Marisol A. v. Guiliani*, 126 F.3d 372 at 377 (2d Cir. 1997) (finding no abuse of discretion in typicality finding where class members' injuries resulted from a "unitary course of conduct by a single system"); *Casilao v. Hotelmacher LLC*, 2021 WL 4487984, at *7 (W.D. Okla. Sept. 30, 2021) (rejecting argument that "personal experiences unique to certain class members and not experienced by others demonstrate a lack of typicality" in TVPA case where "the class members' claims are based on the same legal theories and the same operative conduct of Defendants as the claims brought by the Named Plaintiffs"). Thus, Class Representative's claims are typical of the claims of the other class members. *See Doe*, 2023 WL 3945773 at *6 (finding Doe-JPMorgan class satisfied typicality because "Jane Doe's claims arise out of the same course events as those of other class members, and [] similar legal arguments bear on her and other class members' claims").

### 4.   Rule 23(a)(4)— Class Representative Will Adequately Represent the Class.

Under Rule 23(a)(4), adequacy requires that the representative parties will "fairly and adequately protect the interests of the class." *See In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015). "A finding that a proposed class representative satisfies the typicality inquiry constitutes strong evidence that [its] interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiff['s] claims will vindicate those of the class." *Pub. Employees' Ret. Sys. of Mississippi*, 277 F.R.D. at 109. Even if a conflict exists, it does not "necessarily defeat class certification—the conflict must be fundamental." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

Here, Class Representative has, and will continue to, "fairly and adequately" represent the Class; she has actively participated in and monitored the litigation, and has participated fully in discovery. Class Representative's interests align with the class members' interests, and she has

prosecuted this matter vigorously.   Further, Class Representative's counsel is "qualified, experienced and generally able to conduct the litigation."   *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).   Accordingly, the adequacy requirement is met.   *See Doe*, 2023 WL 3945773 at *7 (finding Doe-JPMorgan class satisfied adequacy because "Jane Doe's interests are aligned with those of class members, she is committed to pursuing this case zealously on behalf of the class, and she has retained qualified counsel").

**B.   Rule 23(b)(3)'s Requirements Are Satisfied.**

Class Representative seeks class certification for purposes of the Settlement pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

**1.   Common Questions of Law and Fact Predominate.**

Rule 23(b)(3) certification turns on whether common issues predominate over individualized issues.   "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."   *In re Petrobras Secs. Litig.*, 862 F.3d 250, 270 (2d Cir. 2017) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).   The requirement calls "only for predominance, not exclusivity, of common questions."   *See Chalmers v. City of New York*, 2022 WL 4330119, at *17 (S.D.N.Y. Sept. 19, 2022).

In this case, Class Representative brings claims for negligence and violation of the TVPA. *See* ECF No. 56.   Class Representative's TVPA claims for beneficiary liability and obstruction of TVPA enforcement will require the adjudication of primarily issues common to the class and subject to common proof, including but not limited to the existence of a sex-trafficking venture,

24

Deutsche Bank's knowledge about the sex-trafficking venture, Deutsche Bank's participation in the sex-trafficking venture, whether Deutsche Bank benefitted from the sex-trafficking venture, and the steps Deutsche Bank took to obstruct enforcement of the TVPA. *See* ECF No. 71 at 15–16. The negligence claims will involve similar factual issues subject to common proof, such as whether Deutsche Bank breached a duty of care by providing financial support to the sex-trafficking venture, the scope of financial support provided, whether Deutsche Bank knew what the financial support was being used for, and whether Deutsche Bank acted reasonably in failing to prevent Epstein from using Deutsche Bank to support his sex-trafficking venture. *See id.* at 16–17.

Thus, common questions of law and fact predominate here. *See Doe*, 2023 WL 3945773 at *10 (finding Doe-JPMorgan class satisfied predominance because "[t]he core of this case—plaintiff's allegation that JP Morgan supported Jeffrey Epstein's sex-trafficking venture while it knew or should have known that that venture was in operation—involves a common set of questions of law and fact").

### 2. A Class Action Is Superior to Other Methods of Adjudication.

Finally, Class Representative can demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The relevant factors include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* A Rule 23(b)(3) class is superior when it allows for the vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc v. Windsor*, 521 U.S. 591, 617 (1997).

Here, the TVPA was designed to protect victims of trafficking who are particularly vulnerable, and class treatment is therefore superior in such situations.  *See Jane Doe 30's Mother v. Bradley*, 64 A.3d 379, 385 (Del. Super. Ct. 2012); *see also Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) (finding class action superior in a case alleging violations of state labor law in part because "class members may fear reprisal").  Further, a class action here would avoid a "multiplicity and scattering of suits" that would follow from numerous victims of one single trafficking venture, allegedly enabled by Deutsche Bank, having to independently vindicate their rights in courts across the country.  *See MF Global Holdings*, 310 F.R.D. at 239; *see also Menocal v. GEO Group Inc.*, 882 F.3d 905, 915 (10th Cir. 2018) (Rule 23(b)(3) class superior where "the putative class members reside in countries around the world").  Litigating this case has required taking substantial discovery from Deutsche Bank, including many depositions and obtaining hundreds of thousands of documents, that would be relevant to each class member's claims but would be difficult for each class member to obtain on her own in an individual lawsuit.  *See* ECF No. 69 ¶ 6.  Further, Epstein's sex-trafficking scheme operated on an international scale, with victims spanning multiple different countries and multiple states within the U.S.  *See* FAC ¶ 120. A class action efficiently curtails the possibility of the "scattering" of suits across the country and is the superior method of adjudicating this dispute.  Class Representative has therefore satisfied the superiority requirement for class certification.  *See Doe*, 2023 WL 3945773 at *11 (finding Doe-JPMorgan class satisfied superiority; "The Court has little problem in concluding that [the superiority] requirement is satisfied here.").

## V.    THE PLAN OF ALLOCATION IS FAIR AND ADEQUATE.

The Plan of Allocation—the method by which the Settlement Fund is distributed to the Class— "must be fair and adequate."  *Facebook*, 343 F. Supp. 3d at 414 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)); *see* Fed. R. Civ. P. 23(e)(2).  Where,

as in this case, a Plan of Allocation is "formulated by competent and experienced class counsel," it "need have only a reasonable, rational basis." *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *3 (S.D.N.Y. Jan. 7, 2021) (quoting *In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *11 (S.D.N.Y. July 31, 2008)).  The Plan of Allocation here is appropriate.

The Plan of Allocation was included in the Notice of Proposed Settlement of Class Action, which was submitted to the Court in connection with the motion for Preliminary Approval of the Settlement.  *See* ECF No. 90-2 at 5–6.  It is based on the same methodology which the Class Administrator used in other cases.  *See* ECF No. 98-1 ¶ 4; *TWC Liquidation Trust, LLC (f/k/a The Weinstein Company Holdings LLC)*, No. 18-10601 (Bankr. D. Del. Mar 19, 2018); *Farruggio et al. v. 918 James Receiver, LLC et al.*, No. 3831/2017 (Sup. Ct. Onondaga Cty. Aug. 25, 2017); *In re USA Gymnastics*, No. 18-09108 (Bankr. S.D. Ind. Dec. 5, 2018).

The Plan also treats all Class Members equitably.  Each Class Member who submits a valid and timely Tier One Form to the Claims Administrator, does not otherwise exclude herself from the Class, and is not otherwise deemed ineligible by the Claims Administrator will receive $75,000, thereby becoming an Eligible Class Member.  An Eligible Class Member cannot receive more than $75,000 without qualifying for Tier Two.  To qualify for Tier Two, an Eligible Class Member who submits a valid and timely Tier Two Questionnaire and Release to the Claims Administrator, and who is not otherwise deemed ineligible by the Claims Administrator, is eligible to receive a maximum of $5,000,000 in total payments (inclusive of the $75,000 available to all Eligible Class Members) from the Settlement.  The Plan describes the various factors and criteria the Claims Administrator will take into consideration in determining an Allocated Amount within Tier Two.

As such, the Plan of Allocation equitably distributes the Settlement Fund to all Authorized Claimants who follow these procedures as specified in the Notice and Proof of Claim Form.  This process is fair, reasonable, and consistent with the plans of allocation in other class action settlements.  There have been no objections to the Plan of Allocation filed to date, which supports approval.  ECF No. 98-1 ¶ 12; *see Veeco*, 2007 WL 4115809, at *14 ("[N]ot one class member has objected to the Plan of Allocation which was fully explained in the Notice of Settlement sent to all Class Members.  This favorable reaction of the Class supports approval of the Plan of Allocation.").  The Plan of Allocation is appropriate and warrants approval.

## VI.   NOTICE TO THE CLASS COMPORTS WITH DUE PROCESS AND SATISFIES THE REQUIREMENTS OF RULE 23.

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner," Fed. R. Civ. P. 23(e)(1)(B).  Notice of a settlement satisfies Rule 23(e) and due process where it fairly apprises "members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70).  Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008).

The form and manner of notice in this case satisfied these requirements.  Based on this Court's guidance at the Preliminary Fairness Hearing, and in accordance with the Amended Preliminary Approval Order, *see* ECF No. 95, the parties crafted a Notice that advised the Members of the Class of the essential terms of the Settlement and provided information regarding Class Counsel's application for an award of attorneys' fees and expenses.  The Notice also provided specifics on the

date, time, and place of the Settlement Hearing and set forth the procedures for both submitting valid and timely Proofs of Claim and Release pursuant to the proposed Plan of Allocation and objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses. Further, the Notice provided contact information for the Claims Administrator and Class Counsel and advised Class Members on how to obtain further information regarding the Settlement.

Pursuant to the Court's Amended Preliminary Approval Order, the Claims Administrator timely (1) caused a copy of the Notice, Tier One Form, and Tier Two Questionnaire and Release to be mailed by First-Class Mail to all identifiable Class Members; (2) posted the same on the case-designated website; and (3) caused publication of the Summary Notice in *USA Today* and *Gazeta Wyborcza*. *See* ECF No. 98-1, Lelchuk Decl. ¶ 8.   Defendants also caused Omni to serve notice of the proposed Settlement on the appropriate federal and state officials under the Class Action Fairness Act, 28 U.S.C. § 1715, *et seq*. *See* ECF No. 99.

The form and manner of providing notice to the Class satisfy the requirements of Due Process and Federal Rule of Civil Procedure 23.  Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014).  In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id*. at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014).  The requirements of Due Process impose similar requirements.  *See Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options . . . in connection with [the] proceedings.'").

Both the substance and method of distributing the Notice comport with Rule 23, the dictates of Due Process, and are consistent with the notices in other, similar actions. The combination of (i) individual notice by mail to all Members of the Class who can be reasonably identified, and supplemental mailings and email notice for Members of the Class who could not be reached by mail on the first attempt (ECF No. 98-1 ¶ 8), (ii) the creation of a dedicated Settlement website, (iii) publication in *USA Today* and *Gazeta Wyborcza*, (iv) notices concerning the rights of the Class Members, including the manner in which objections can be lodged, (v) notices concerning the nature, history and progress of the litigation, (vi) detailed instructions on how to file Tier One and Tier Two Claims, or opt-out of the Settlement, (vii) a detailed description of the Plan of Allocation, and (viii) notice concerning the fees and litigation expenses to be sought by Class Counsel, represent the best notice practicable under the circumstances. For example, in *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021), the court found that the notice plan—similar to that proposed here—was "reasonable and adequate" because the proposed notice was "detailed enough to inform the class members of their rights and obligations, and the proposed methods of notice, including publishing the summary notice in the *Wall Street Journal* and sending it once over a national newswire, are practical and likely to be effective in reaching the affected individuals." *Id.* at *13; *see Christine Asia*, 2019 WL 5257534, at *16 (concluding that direct First-class mail combined with print and Internet-based publication of settlement documents was "the best notice practicable under the circumstances"); *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 119–20 (S.D.N.Y. 2009) (similar); *In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *2 (S.D.N.Y. Sept. 6, 2006) (granting final approval of settlement where, similar to here, "[t]he [p]laintiffs proceeded to publish a summary notice in the *Wall Street Journal* and *New*

*York Times*," "sent out over a million notices to shareholders," and "set up a website and toll-free telephone number to provide shareholders with information about the [s]ettlement").

In short, the Notice and Summary Notice satisfy all requirements of Due Process and Rule 23 because they "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114 (quoting *Weinberger*, 698 F.2d at 70).

## VII.   CONCLUSION

The $75 million Settlement is an excellent recovery for the Class, particularly in light of the certain delay and significant risks of lesser or no recovery posed by continuing the Litigation. For the foregoing reasons, Class Representative respectfully requests that the Court approve the Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated:  September 15, 2023

Respectfully submitted,

*/s/* David Boies

David Boies
Andrew Villacastin
Sabina Mariella
Alexander Law
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY
Telephone: (212) 446-2300
Fax: (212) 446-2350
Email: dboies@bsfllp.com
Email: avillacastin@bsfllp.com
Email: smariella@bsfllp.com
Email: alaw@bsfllp.com

Sigrid McCawley (*pro hac vice*)
Daniel Crispino (*pro hac vice*)
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33316

Telephone: (954) 356-0011
Fax: (954) 356-0022
Email: smccawley@bsfllp.com
Email: dcrispino@bsfllp.com

Bradley J. Edwards
Edwards Henderson Lehrman
425 N. Andrews Ave., Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Fax: (954)-524-2822
Email: brad@cvlf.com

Brittany N. Henderson
Edwards Henderson Lehrman
1501 Broadway
Floor 12
New York, NY
Telephone: (954) 524-2820
Fax: (954) 524-2820
Email: brittany@cvlf.com

Paul G. Cassell (*pro hac vice*)
S.J. Quinney College of Law at the
University of Utah
383 S. University St.
Salt Lake City, UT 84112
Telephone: 801-585-5202
Fax: 801-585-6833
Email: cassellp@law.utah.edu

(institutional address for identification
purposes, not to imply institutional
endorsement)


*Counsel for Jane Doe 1*