UNITED STATES DISTRICT COURT - SOUTHERN DISTRICT OF NEW YORK

Jane Doe 1, individually and on behalf of all
others similarly situated, Plaintiff

v.

Deutsche Bank Aktiengesellschaft, et. al.,
Defendants

JPMorgan Chase Bank, N.A.,
Defendant

Case No. 1:22-CV-10018 (JSR)
& Consolidated Case No. 1:22-CV-10019 (JSR)

**CLASS ACTION LAWSUIT**

## Objector's (Doe #7) Request for Permission to Conduct *Discovery*

Objector Doe #7 requests permission to conduct *Discovery* in support of objections; & to better develop the legal claims of the class for relief from personal injuries & economic injuries sustained from the Defendants' anti-competitive/anti-trade RICO violations causing injury to a subset of the class.

Discovery will allow the injured members of the class and the Defendants time to thoroughly establish the specificity of the legal claims of misappropriated business data & anti-competitive business practices causing economic injury to the subset/class. Objector argues that the profits and benefits generated from these activities are owed to the subset and require additional relief including injunctive or administrative relief to be settled under the terms of this action. *Luevano*

> ["*it is important to consider whether the settlement was reached after extensive factual development, so that counsel on both sides would have had information sufficient to make a reasonable assessment of their risks.*]" *Luevano v. Campbell* (D.D.C. 1981) 93 F.R.D. 68, 86

The targeting of the subset to divert profits rightfully owed to them to the Defendants & the other anti-business/anti-competitive racketeering activity is forced labor. This forced labor allowed the Bank(s), its shareholders, partners, clients & associated businesses to capitalize off the unique & sophisticated work of the subset. Objector argues that these injuries from this forced labor must be properly established for settlement in order to provide adequate relief. Assurance that past & future profits are correctly redirected to the subset; and any ongoing or future similar conduct of misappropriating intellectual property (including but not limited to trade secrets, market data/analysis, business/product development data & design records, research & development data, *inter alia*) is fully addressed to discontinue the anti-trade practices; & relieve the injured members of the class of any future/ongoing economic injury from the racketeering.

The Fourth Circuit established that Doe #1 (& arguably the attorneys/Defendants presenting the settlement to the court) must show that the settlement is lawful.

> *"[Fourth Circuit identified the correct party in a class action who has the burden of proof to show the settlement is in fact fair is the party presenting the settlement to the court]"*
> 1988 Trust for Allen Children v. Banner Life Insurance Co.,
> WL 774731 4th Cir. 2022

*Allen* further established the district court is permitted to allow an Objector to conduct discovery in support of its objections at the settlement stage.

*Discovery* at this stage allows the parties to resolve or protect legal claims relating to the racketeering & economic injuries without approving settlement to resolve the case to the detriment of the members of the class.

> see *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.* (3d Cir. 1995) 55 F.3d 768, 814, [*court should be wary before approving a settlement of a class action in its early stages*]

Objector raised a classwide objection of discriminatory *bias* in class counsels' representation of the class. Objecting with arguments that class counsel was in *collusion* with the Claims Administrator/litigating parties to prevent a subset of the class from establishing their legal claims for economic & personal injuries, Objector argues for discovery where the Claims Administrator declared that class counsel did provide her with a spreadsheet of "select" class members. Class counsel compiled this spreadsheet while willfully ignoring the attorney-client communications of the Objector who contacted class counsel directly as early as June 2023 when she heard of the early settlement through media sources to provide current & proper contact information for members of the class/subset known to her.

> *"[Class counsel owes a fiduciary duty to putative class members vis-à-vis the issues in the class action]". Schick v. Berg,* No. 03 Civ. 6513 (LBS), 2004 WL 856298, at *6 (S.D.N.Y. April 20, 2004)

Objector argues for permission to conduct discovery to analyze the work the attorney's completed. The court's Preliminary Approval of Settlement granted *"sweetheart"* settlement terms to the litigating parties without fully & fairly addressing or protecting the subset's unique claims for economic injuries stemming from the Bank(s)' history of racketeering to assure adequate relief is provided.

Discovery will allow the parties to establish the merits of the work done where the Objections in the record complain that significantly inadequate relief is provided under the proposed terms. The Objections went so far as to point out that no relief was provided to prohibit the Released Parties from continuing their wrongdoing & causing injury to the affected members of the class by misappropriating ultra lucrative intellectual property.

> "[reversal of the district court's approval of a $2 million class settlement that provides for $950,000 in attorneys' fees; with $864,115 split among 4,681 proposed class dancers. ...The 9th Circuit sides with objectors who called the deal a "pittance given what we're entitled." And found the disparity and a "clear-sailing" provision to be an indicator of collusion between the parties; thus, grounds for rejecting the settlement that the district court erred when it ignored the Objections]".

*Roes v SFBSC Management, LLC* No. 17-17079, 2019 WL 6721190 Ninth Circuit

Objector argues that a significant & lucrative extension of the sex trafficking/racketeering is an abusive/retaliatory targeting of the subset (& their business ventures or careers) to divert profits & credit owed to them to the Released Parties (& the other unjoined Defendants who are often referred to as "prominent" or "powerful" persons). Objector argues for discovery to show that there is a disparity in the attorneys' fees & class relief that requires the parties be instructed to continue litigation to develop legal claims & assure more adequate relief is provided under settlement terms. *Moses*

> "[Second Circuit vacated settlement asserting the district court erred when assessing the fairness of a settlement when it failed to consider the $1.25 million fee award that provided roughly $395,000.00 to satisfy the cash claims of approximately 876,000 potential class members. Id. at 241. ...The court instructed the district court to apply the correct standard by "taking into account . . . the terms of [the] proposed award of attorney's fees" when assessing whether the overall settlement was reasonable on remand. Fed. R. Civ. P. 23(e)(2)(C)(iii)]".

*Moses v. New York Times, Co.* 79 F.4th 235 (2d Cir. 2023)

Objector requests *discovery* of:

1. **The Class Counsel's Attorney Work logs for ANY & ALL work it has conducted in the instant action(s) it has requested compensation for;** This includes, but is not limited to, ALL of class counsels' work logs indicating which attorneys worked on the case, on what dates & what tasks

they completed, the number of hours each attorney worked on any & all specific tasks they're requesting compensation for including records/data from any investigative work class counsel completed in support of this class action lawsuit, record of ALL documents filed/served/produced on behalf of the Class & Doe #1 in the instant action (this includes, but is not limited to, any subpoenas, motions, letters, mediation records & general interviews with any parties/non-parties), Deposition records (including transcripts, video/audio files in electronic format; including data explaining the number of hours/days worked on each deposition), record of any & all communications between firms, attorneys, witnesses, class members, investigators & the defendant parties prior to filing the lawsuit and throughout the entire process of litigation in the court that Class Counsel has included as work it should be compensated for.

2. **ANY & ALL Claims Administration records/work logs the Claims Administrator(s) seeks compensation for;** This includes, but is not limited to, ANY & ALL of the records from Omni Agent (including contract for services with the Claims Administrator, Instructions for Claims Management, Claim Forms received, Records of IP Address & Timestamp data linked to each Claim Form Submitted, and other similar detailed records of claims submissions & transmittal), Copy of the Excel file with potentional class members Lelchuk declared was provided to the Claims Administrator July 5 2023 by Class Counsel, record of ANY & ALL claims submitted via the Settlement Website "https://www.epsteinssfjpm.com/", ANY & ALL record of communications between the Claims Adminstrator(s), Class Counsel, Omni Agent & any indvidual claimant including Doe #1; ANY & ALL record of work done to review/manage/approve or deny claims received, Copy of Claims Review Protocols, Criteria & Procedures for approval/denial.

3. **ANY & ALL Records for previous work & investigations done on any Epstein Litigation that Class Counsel declared was relevant in certifying them as qualified/competent to represent the class in the instant action(s) in their brief titled** *Joint Declarations of David Boies & Bradley Edwards in Support of Motions for 1) Final Approval of Class Action Settlement and Approval of Plan of Allocation and 2) An Award of Attorney's Fees & Expenses* (hereafter and at times "joint declarations" or "attorneys' declarations") . This includes, but is not limited to, record of ANY & ALL client contracts with their previous clients (referred to hereafter & at times as "Epstein Survivors"), investigative records (including any private investigation services/records), work logs, names & work related data including contact information for any attorneys who helped class counsel in their prior representation of these Epstein Survivors, ANY & ALL claim settlement records in the related but separate litigation (referred to hereafter as "Epstein Litigation") the class counsel referenced in its joint declarations as evidence of its competence to represent the class, ANY & ALL records that would disclose demographical information & class counsel's relationship to or with the Epstein Survivors the class counsel declared it has represented in Epstein Litigation.

4.     **ANY & ALL records or data in the possession of the Defendant Bank(s) that explain the profits/benefits earned or forecasted to be earned through its racketeering & sex trafficking.** This includes, but is not limited to, permission to conduct *discovery* through phases beginning with permission to serve the Defendant Bank(s) with Interrogatories, then conducting of depositions, inspection of business records of the Bank(s), interview their associates, clients or partners who are or may be identified through *discovery* as persons/entities who participated in, profited/benefitted from the sex trafficking & racketeering that is the subject of this class action.

## CONCLUSION

The 7th Circuit held in *Reynolds* that the district court owes a fiduciary duty to the class.

> "[noting that various courts "have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class" and he is to apply "the high duty of care that the law requires of fiduciaries]"
>
> *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002)

With the district court owing fiduciary duty to the class, the Objector asks the court to permit Objector to conduct discovery; and grant permission for her to use the court's ECF system to serve & file case related materials including subpoenas, interrogatories, answers/legal communication or responsive materials from discovery.

And, to set a timeframe for discovery to be conducted that respectfully allows an appropriate amount of time for the Objector to draft & serve subpoenas, interrogatories and any related motions that may arise; receive & review the responsive materials discovery will obtain; & then conduct any additional phases of discovery that may be necessary to properly develop adequate terms of relief to be structured into any settlement reached in this class action.

There is no immediate or urgent need for distribution of settlement at this time; & with the Objections & discovery, the Objector seeks to improve classwide terms of settlement to fully & finally resolve the underlying legal claims.

**DATED:** 10/17/2023

s/Jane Doe #7 (seven)
redacted for Anonymity
USPS Service Address Redacted
janedoenumberseven@gmail.com
Phone Number Redacted

CASE NUMBER:    1:22-CV-10018 (JSR) & Consolidated Case  1:22-CV-10019 (JSR)

## CERTIFICATE OF SERVICE

The undersigned certifies she electronically filed the foregoing

**Objector's (Doe #7) Request for Permission to Conduct *Discovery***

**w/ Addendum to Objector's Request for Permission to Conduct Discovery**

via the ECF system for the   Southern District of New York  , thus effecting service on all attorneys registered for electronic filing.

Causing a copy of the foregoing Request for Permission to Conduct Discovery to be served electronically upon the Attorneys as follows:

*class counsel*:
David Boies dboies@bfsllp.com; Bradley Edwards brad@epllc.com; Alexander Law alaw@bfsllp.com; Daniel Crispino dcrispino@bfsllp.com ;

Andrew Villacastin AVillacastin@bsfllp.com

**Attorney for the Government of the US Virgin Islands:**
David Ackerman dackerman@motleyrice.com

**Attorneys for Duetsche Bank Aktiengesellschaft, et al:**
Andrew Cashmore andrew.cashmore@friedfrank.com
Lisa H. Bebchick Lisa.Bebchick@ropesgray.com
Michael Ardeljan Michael.Ardeljan@ropesgray.com
Kathryn E. Caldwell kathryn.caldwell@ropesgray.com
Andrew Simon Todres andrew.todres@ropesgray.com
David B. Hennes david.hennes@ropesgray.com
James P. Dowden james.dowden@ropesgray.com

**Attorneys for JP Morgan Chase Bank, N.A., et al:**
Boyd Milo Johnson, III boyd.johnson@wilmerhale.com
Felicia H. Ellsworth felicia.ellsworth@wilmerhale.com
Robert Lee Boone robert.boone@wilmerhale.com
Andrew H. Schapiro andrewschapiro@quinnemanuel.com

Dated: 10/17/2023

s/Jane Doe #7 (seven)
redacted for Anonymity
USPS Service Address Redacted
Electronic Mail Address Redacted
Phone Number Redacted

janedoenumberseven@gmail.com
(provided as general email for purposes of identity protection)

**ADDENDUM TO OBJECTOR'S LETTER REQUESTING PERMISSION FOR DISCOVERY**

Doe #7 submits this addendum to her request for permission to conduct Discovery in support of her objections and to better establish her legal claims against the Defendants because she received a copy of a reply brief arguing the court should disregard her objections October 17th at appx 10pm.

At the time of drafting the request for Discovery, she had not received the reply brief to her objections.

At the time of submitting this addendum she has not had the opportunity to fully read the reply brief; and is not fully apprised of its contents, argument or has been able to really ascertain which party sent the brief on whose behalf.

Doe #7 has / I have only been able to make a cursory review of the document; & **skim** over the table of contents to get a preface of the contents & preliminary understanding that whoever submitted the brief has made some argument to disregard the objections.

Based on the table of contents, it appears the party who submitted the brief has presented some arguments that include ignoring the Objections because 1) no one else has objected 2) Doe #7 has a "history" of making "frivolous/irrational" arguments & 3) a number of claims were submitted with no one opting out which should be construed as indicating fairness.

Based on this cursory understanding of arguments I ask the court to either grant a continuance of the final fairness hearing to allow parties the time to complete briefing on the objections.

Or, I ask the court to review the arguments in the reply brief in favor of granting discovery.

The arguments in the reply brief appear to support my request for discovery.

It argued that I failed to support my objections; & I have requested discovery to better establish my legal claims and my objections.

It argued that no other members objected; my objections argue that the class representative was an insufficient representative & that the specific claims of the subset I represent weren't developed sufficiently prior to settlement. I maintain my arguments in support of discovery & my objections by stating that anyone who survived the levels of abuse & the severity of retaliatory harassment including intentional economic & emotional injuries inflicted on the subset wouldn't entertain any "potential" offers valued at "possibly" being awarded $75,000 to five million dollars.  This supports my argument that discovery must be conducted to analyze the claims submitted to assess true levels of similarity and severity of the injury caused to each member; and analyze the approval/denial process of the claims administration procedures; & assess any conflicts between the parties/class members based on indicators of bias or conflicts

evident in the claims submitted.

My objections & grounds for discovery included arguments that the class counsel failed to adequately & equally represent the entire class, particularly putative members, despite having a fiduciary duty to amply do so. I also objected arguing that there was bias in the claims submissions/acceptance process.  To date, class counsel nor its claims administrator has ever contacted me (or any of the members of the class known to me) to obtain any deposition, interview or claim from us.  Yet, they admit in the declarations of the Claims Administrator they did assure those things were conducted on behalf of a selected group of class members known to them.

Class counsel had every opportunity to contact Doe #7 since at least June 2023.  In fact, they referenced a case "*Latham v 1953 Trust, et al 2020 SDNY* " that I attempted to litigate my claims in several years ago. By referencing the case, class counsel imply that they have had my contact information & some knowledge of my legal claims for years. Yet, in the years of knowing of my existence & claims, they have never once reached out to me to investigate my claims, interview my witnesses, depose me or my family/etc.  I've fielded numerous calls, emails, text messages & inquiries from concerned members of the public, witnesses & other survivors. No one from class counsels' staff contacted me about this highly publicized statement in *Latham* that was entered into the public record; not a single defendant named in *Latham*   (or their attorneys) ever contacted me **or refuted** any involvement in anything I described in my statement or denied having any relationship with me.

Yet, the arguments raised in support of ignoring my objections leads with *Latham* as grounds to disregard my objections to declare the settlement lawful.

Class counsel indicates they deposed, interviewed & investigated the claims of other members of the class. I argue that this indicates the class counsel did use bias to represent members of the class disproportionately, inadequately & in their own interest. David DeBoies is actually named as a defendant in the *Latham* case.  He has had years to investigate why he was named in a list of defendants; & he didn't. Nor did he address any potential conflicts of interest he would have with the class/subset of the class based on *Latham*.

All of this supports my request for permission to conduct discovery; & reinforces the objections I raised to the terms of settlement that was reached very early in the litigation.

The cursory review of the reply brief arguing in support of approving the settlement over my objections also indicates that I need to elaborate, for the record, further on the details of my objections, legal claims & request for discovery that was not explicitly laid out in any previous filing.

For that reason, I state the following:

1. I am an adult woman who was introduced to Jeffery Epstein as a child (as early as the age of 3)

in Cook County IL. My family had moved from a condominum tower on the Gold Coast to large homes in the county (before they became gang infested due to the gangwars that were initiated as a result of my being trafficked).

2. I was being trafficked for sexual/lewd reasons to an ultra prominent senior royal before Jeffery ever met me.

3. He was introduced to me by my trafficker, my maternal grandmother, who had met him through another relative who was involved in a romantic relationship with the mother of one of Jeffery's children.

4. My maternal grandmother was known as a wealthy, prominent person with a respected social & political status as a tribal sovereign with ties dating back to the King of England for centuries.

5. These centuries old ties to Great Britain's royal family introduced her to a network of prominent persons; some of whom had cultural/ritualistic interests in sex acts with children.

6.   Due to conflicts that arose in her being able to discreetly provide me to this clientele, she enlisted Jeffery as a caregiver-employee who was entrusted to traffick me to the ultra prominent clients around the world.

7.   It is through this employment that Jeffery was introduced to some of the ultra prominent social networks he is now "mysteriously" known as having become member of during his time in Chicago.

8. Jeffery & I were groomed to treat each other respectfully as caregiver/nanny & beloved child prodigy in the care of a special nanny/babysitter throughout my early childhood years.

9.   Once I matured into puberty/teenage years, I had been given conflicting grooming/instructions on how to interact with Jeffery.   My grandmother groomed me to trust Jeffery & always be well behaved in his presence & with any of the men/people he may take me to since very early childhood; &, my mother, had instructed me to "avoid Jeffery because what he was doing with those men/people & my grandmother was extremely wrong- but [I] was too young to grasp it or stop it so [I] did need to behave when with him".

10. And Jeffery was always super protective, kind, accommodating, loving & entertaining when I was with him.   As a child groomed to trust him, it took many years into my adulthood to understand what had happened & why our relationship was not socially acceptable.

11. By puberty, Jeffery was forced to create cover stories to explain why I was with him engaging in sex work.   Because, although he was permitted to traffick me from my grandmother, my mother did not permit this & a very violent but delicate battle over me was waged beginning at home & extending to violent, bloody, bullet riddled clashes in the streets of Chicago.

12. The risks of retaliation, abuse, harm/injury class counsel described in their Motion to permit anonymity in this class action are injuries & abuses I (& others known to me) can describe at

length & in great detail because we survived them.   When my mother refused to allow my grandmother to traffick me, and I began to mature over the course of decades to also prevent Jeffery from trafficking me, we were targeted for all manner of abuses, harassment, rights violations, & injuries to punish us in the interest of forcing us to comply with the trafficking arrangements that were put in place before & after Jeffery became involved.

13.   By puberty & pre-adolescence age ranges, Jeffery began defaming me with a cover story that lead   his associates & newer, high-profile clients to believe that he had "found [me] working as a child/underaged prostitute in the streets of Hialeah, FL or FL; & took her in to pimp her with his circle of a network of ' rich guys' that 'would love [me]' & 'he knew [I] could make a LOT of money with them ...since [I] was already [prostituting] when [he] found me".

14.   As an innocent child, naive & naturally incapable of understanding these very adult themes of prostitution, rituals, money, world travel & conflicts between society & whether sex with a child is socially acceptable on any level, I simply adhered to my grooming.

15.   I collected names, dates, conversational details, facts, witnesses, comments, records & data to use to help me understand what was happening as I matured.

16.   By the time I was in my late twenties & thirties, I had collected enough information to sort through to begin a more formal process of collecting data/evidence to establish legal claims for public review & purpose of litigation.

17.   I invested tens of thousands of man-hours in private investigation, record compiliing & fact analysis to attempt to litigate in the courts; with significant financial and personal resources in investigating my involvement in this sex trafficking enterprise, my connections with many notable persons in society and the injuries I was being caused by some of these people/entities & Jeffery Epstein.

18.   As a non-attorney, I was quickly able to corroborate Jeffery's numerous warnings that the courts & its officers (clerks, attorneys & judicial officers alike) would be biased against me; and would operate the courts to violate my human rights & obstruct/hinder my ability to prosecute any legal claims related to his relationship with me if I ever attempted to sue him or anyone else involved.

19.   Explaining that this bias would be effected to protect the "powerful & wealthy" persons I serviced under his ruse of being a consenting prostitute, my attempts to prosecute my legal claims have been thwarted as warned. *Latham* is only one example of the obstruction; I have many.

20.   In *Latham* I filed an administrative motion for a statutory waiver of court fees. With this statutory application that is automatically granted seal, I provided supporting documents. These documents included an affidavit stating the Plaintiff's case.   I was advised by the court, prior to filing the application to waive court fees in *Latham*, that the application & all the supporting documents I submitted with it would be destroyed after the judge reviewed them to decide

whether to waive fees.

21. I was assured, repeatedly, that nothing I submitted with the fee waiver application would ever enter the public record or be saved by the court.   I was assured that, in the event that the fee waiver was denied, the court may temporarily delay destruction of any documents I submitted with the application in order to allow me time to appeal the decision or remit fees to the court to process filing.

22. I was advised, repeatedly by US Courts, that if I did not remit fees to the court if a fee waiver was denied then the court will destroy all documents & there would be no public record of them "because you have to pay to have any documents entered into the public record/courts".

23.   As the world knows, that didn't happen in *Latham* or any of the other cases involving similar litigation.   The protections granted under *Kolko* were not afforded to Doe #7 in *Latham*; despite them being regarded as acceptable & reasonable under the circumstances (sexual assault & confidential matters involving sex abuse victims/claims).

24. The *color of law* rights violations committed in *Latham* evidences the types of bias & injury I have been made to endure from the "powerful & wealthy" persons Jeffery Epstein is well known to have served through his sex trafficking enterprise.

25. I have objected arguing that class counsel has a bias; & proposed settlement in the interest or benefit of the Defendants & Litigating Parties at the expense of the class. See *Mirfasihi v. Fleet Mortgage Corp.* (7th Cir. 2006) 450 F.3d 745, 748 [*requiring convincing justification for a settlement that extinguished the claims, yet provided no relief for one segment of the class*]

26.   I requested permission to conduct discovery to support my claims that the settlement was inadequate & made without sufficient development of the legal claims of the class or adequate litigation from the attorneys. See *In re High-Tech Emp. Antitrust Litigation* & *Luevano v. Campbell* (D.D.C. 1981)      ["*it is important to consider whether the settlement was reached after extensive factual development, so that counsel on both sides would have had information sufficient to make a reasonable assessment of their risks.*]"

27.   The case record in *Latham*   clearly indicates that no federal lawsuit was filed; & no prosecution of a lawsuit was conducted. The court denied waiver of the fees (there is no order granting waiver of fees), there are no entries of Appearances, no answers, no motion practice, no record of fees paid, no docket scheduling orders, no judicial assignment orders, no certificates of service- nothing to indicate a legitimate prosecution of federal lawsuit was initiated in *Latham*.

*Latham* is an unresolved case whose very knowledge of existence by the general public is evidence of the *color of law* violations the "powerful & wealthy" members of the Epstein Organization will & have committed against me to obstruct my right to argue this legal dispute for a final resolution in American courts.

28. The arguments made in favor of ignoring my objections reeks of self-dealing & collusion to

settle the case in the interest of the settling parties, at the expense of the objecting parties (I have made it clear that the objections raised are classwide with the interest of improving settlement terms for the entire class & or raised in regards to a unique subset of the class that is so large with similar legal claims & injuries that it is certifiable as a subclass by itself).

29. Discovery is justifiable to establish claims raised in the objection arguing that the class representative may not be an adequate representative & class counsel did not litigate long enough to thoroughly assess & establish legal claims of the class for settlement.

30. By their own admission, class counsel knew of *Latham* and of the legal claims in *Latham*. They know that Deboies is named as a defendant.

31. Yet, throughout this process of class action litigation, or during any investigation in any related litigation, Deboies, nor any of the other attorneys involved, reached out to Doe #7 to obtain an interview or discuss her claims?

32. It is not unreasonable for the attornes to assume Doe #7 would have presented a claim in this class action based on her claims in *Latham*. Even where Doe #7 disputes the Order of Dismissal in *Latham* is not a valid court order at all, the various copies of this voidable Order that I have seen all indicated the dismissal was allegedly conducted without prejudice.   It would be an insufficient, amatuerish *color of law* argument for class counsel to allege they don't understand that this meant Doe #7 could still pursue her legal claims; and that she would likely be bound by or interested in any class action lawsuit filed relating to the sex trafficking & racketeering.

33.   Discovery will show that while the attorneys allege Doe #7's objections are frivolous & etc; & they allege they conducted "extensive" litigation in support of the class settlement, they did not invest a CENT into investigating Doe #7's claims. They never conducted a single deposition of her or her witnesses, never subpoenaed a single document to corroborate her claims or protect her rights in this class.

34.   While Doe #7 has conducted extensive investigation; investing significant resources of time, money & personal resources into investigation of the Epstein Enterprise, especially the ultra deceptive acts of racketeering involving the Banks & other high profile companies and persons after she was made a high-ranking or key, founding member of the Enterprise during her childhood.   Groomed since the age of innocence (aged 3/4) to participate in & protect the interests of the Enterprise since then & well into my adulthood.   I have all of the salacious, mortifying, and ultra destructive secret facts of the Enterprise. I know the identities of the "powerful & wealthy" associates of the Enterprise. I know their crimes & their profits.    Partially from deep investigation & evidence gathering over the course of decades; & partially simply from observing what was going on around me.

35.   I request permission to conduct discovery to further establish the claims in my objections as

valid   claims to instruct the parties to continue litigation to develop more reasonable settlement terms.

36. & to analyze the work of the attorneys, the sufficiency of representation of Doe #1 to the class, & similarity, legitimacy, severity of injury, existence of any injury and demographics in the claims of the class members class counsel & their claims administrator assured were submitted & accepted in a timely manner.

37.   Doe #7 argues that the fact that Doe #1, & other class members didn't object, indicates that their injuries were not severe as Doe #7's or the subset she represents.   And it also speaks to an issue of varying levels of complicity in the trafficking where some class members may be adults who participated in the enterprise as vulnerable adults for less than 7 years; and they never suffered any ecnomic injury or retaliatory harassment & abuse from refusing to comply with the Enterprise's criminal demands.   Comparing those claims to the subset who were targeted and abused for decades, beginning in childhood; & extending into adulthood with specific, targeted imposition of economic injury & harm to reputation or careers justifies discovery be conducted pre-settlement.

38. Doe #7 submits this addendum to the Objector's request for Discovery on October 18 2023.   There is an issue of timeliness and deadlines with the final fairness hearing in the instant action pending for October 20 2023.   There is a need to submit additional supporting evidence (such as affidavit attesting to the conflict of interest with the Claims Administrator & copies of the attorney-client communication class counsel ignored/failed to respond to that was sent to class counsel to notify them of the proper contact information for the subset to be contacted to submit claims in a timely manner).   Doe #7 requests permission to submit these supporting exhibits at a later date.

Dated: 10/18/2023

Signed,

/s/ Jane Doe #7
janedoenumber7@gmail.com
USPS Mail Address Redacted
Phone Number Redacted
ALL Unredacted Contact Information is on record with the court

End Addendum pg 7 of 7