UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE 1, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    -v-<br><br>DEUTSCHE BANK AKTIENGESELLSCHAFT, DEUTSCHE BANK AG NEW YORK BRANCH, DEUTSCHE BANK TRUST COMPANY AMERICAS,<br><br>        Defendants. | 22-cv-10018 (JSR)<br><br>MEMORANDUM ORDER |

| | |
|---|---|
| JANE DOE 1, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    -v-<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>        Defendant. | 22-cv-10019 (JSR) |

| | |
|---|---|
| GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,<br><br>        Plaintiff,<br><br>    -v-<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>        Defendant. | 22-cv-10904 (JSR) |

JED S. RAKOFF, U.S.D.J.:

Non-party Epstein Victims' Compensation Program ("EVCP") has filed a motion pursuant to Federal Rule of Civil Procedure 45 seeking reimbursement of approximately $1.5 million in costs it allegedly incurred in connection with its efforts to comply with subpoenas it received from JPMorgan and Deutsche Bank in the above-captioned actions. *See* Dkt. 189.[1] The subpoenas sought information about, among other things, Epstein victims who submitted claims to the EVCP, which the banks intended to use in their class certification oppositions. JPMorgan and Deutsche Bank acknowledge that EVCP is entitled to some amount of reimbursement, but dispute how much that amount should be, and which of the two banks should be required to pay it. For the reasons set forth below, the Court grants in part and denies in part EVCP's request for reimbursement.

I.   Background

EVCP was created as part of a court-approved alternative dispute resolution program established to confidentially resolve sexual abuse claims against Jeffrey Epstein and others. It received claims from 361 individuals and paid out approximately $121 million. EVCP had largely ceased its operations by April 2022, although certain peripheral claims-processing continued into 2023.

---

[1]   Unless otherwise indicated, docket numbers refer to the docket in Doe 1 et al. v. JPMorgan Chase Bank, N.A., 22-cv-10019.

In February 2023, JPMorgan and Deutsche Bank served substantially similar subpoenas on EVCP to produce documents and information relating to EVCP's claims program and claimants. EVCP objected to both subpoenas, largely on the ground that the subpoenas impermissibly invaded the confidentiality of victims who submitted claims. While Deutsche Bank was able to resolve the dispute informally, JPMorgan ultimately filed a motion to compel responses to 12 of its 19 requests for production on March 1, 2023. EVCP offered a variety of arguments for why it was not required to comply, but its principal argument was that all information about claimants was protected by the mediation privilege. EVCP also raised substantial confidentiality concerns with producing any of the documents.

After briefing and oral argument, the Court, on March 24, 2023, granted in part and denied in part JPMorgan's motion to compel. Specifically, the Court granted JPMorgan's motion with respect to six of the requests for production, granted the motion in part with respect to two others, and denied the motion with respect to five of the requests. Mar. 24, 2023 Order (Dkt. 70), at *1. The Court expressly rejected EVCP's argument regarding the mediation privilege. To address EVCP's confidentiality concerns, the Court directed that the documents would "be produced on an attorneys-eyes-only basis" and that all personally identifying information be redacted. *Id* at *2.

After this Order was entered, EVCP apparently expressed to JPMorgan its continued reluctance to comply with the subpoena and expressed an intent to seek reconsideration if JPMorgan did not agree to limit the requests further. After several weeks of negotiations, on April 18, 2023, EVCP, JPMorgan and Deutsche Bank entered into an agreement whereby, in lieu of producing redacted documents, EVCP would prepare a spreadsheet containing specific categories of information about each claimant. The final spreadsheet was prepared on a compressed timeline so that JPMorgan would be able to use it in its opposition to plaintiffs' motion for class certification that was due on May 12, 2023. On the question of reimbursement, the agreement preserved EVCP's right to seek reimbursement, but also preserved the banks' right to object to any reimbursement request.

EVCP now seeks reimbursement for approximately $1.5 million in expenses it has incurred in connection with the banks' two subpoenas. Of this amount, the sum of $993,698.01 was incurred by EVCP staff and its vendors in connection with preparing subpoena responses and the sum of $568,447.32 was incurred by EVCP staff and outside counsel negotiating the scope of the subpoena and litigating the motion to compel.

II.  Legal Standard

Under Federal Rule of Civil Procedure 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and the Court may take steps to "ensure[] that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(d)(1), (d)(3)(C)(ii). "[A] party issuing a subpoena is not [necessarily] required to bear the subpoenaed nonparty's cost of compliance," but can be required "to bear some or all of the expenses where the equities of the particular case demand it." *In re World Trade Ctr. Disaster Site Litig.*, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010). "The factors to be considered in determining whether cost-shifting is warranted include (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear the costs; and (3) whether the litigation is of public importance." *Contant v. Bank of Am. Corp.*, 2020 WL 3260958, at *3 (S.D.N.Y. June 17, 2020) (internal quotation marks omitted).

Even where reimbursement is appropriate, "only reasonable expenses are compensable." *Id.* (internal quotation marks omitted). "A non-party who moves for costs and fees bears the burden of demonstrating that those costs and fees are reasonable." *In re Aggrenox Antitrust Litig.*, 2017 WL 4679228, at *2 (D. Conn. Oct. 18, 2017). "The determination of ... reasonableness is committed

to the sound discretion of the trial court." *Contant*, 2020 WL 3260958, at *4 (internal quotation mark omitted). "'[T]rial courts need not, and indeed should not, become green-eyeshade accountants,' rather the goal 'is to do rough justice, not to achieve auditing perfection.'" *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

III. Discussion

  A.  Costs of Preparing Subpoena Response.

    EVCP seeks reimbursement for $993,698.01 in expenses that it contends are directly tied to preparing responses to the subpoenas. Of this amount, the sum of $404,947.50 was billed by outside vendors: $346,091.50 by PWC and $58,856.00 by Ankura. The remaining sum of $588,750.51 was the hourly rate attributed to three in-house EVCP staff members who worked on preparing the response -— $485,088.01 by EVCP's head administrator Jordana Feldman, $98,817.50 by EVCP's chief legal counsel, and $4,845 by EVCP's chief of staff. All told, these individuals billed approximately 2000 hours of work in preparing subpoena responses. The banks do not dispute that EVCP is entitled to some amount of reimbursement for these expenses, but instead dispute the exact amount that is reasonable.

    JPMorgan argues that the amounts EVCP incurred in preparing the spreadsheet are not recoverable. JPMorgan offered to pay for

contract reviewers to produce redacted documents, but EVCP declined this offer, apparently on confidentiality grounds. According to JPMorgan, had EVCP accepted this offer, the cost of the ultimate production would have been a fraction of the cost EVCP ultimately incurred. JPMorgan has offered to pay half the cost incurred by PWC, approximately $170,000, which it argues is a reasonable approximation of the cost that otherwise would have been incurred in redacting and producing the documents.

The Court agrees with JPMorgan that EVCP cannot recover for excess costs incurred as a result of its insistence on preparing a spreadsheet, instead of simply producing redacted documents. EVCP claims that, in light of its ongoing privacy concerns, producing redacted documents, or using JPMorgan's contract reviewers to do so, was not a viable option because it would not have adequately preserved victim's privacy. But in granting JPMorgan's motion to compel, the Court expressly rejected this argument, finding that producing the documents with redactions and designating them attorneys-eyes-only was sufficient to protect the victims' privacy. EVCP offers no reason for the Court to reconsider that finding. And if EVPC's concern was with using contract reviewers provided by JPMorgan, EVCP had its own external vendors -- PWC and Ankura -– that presumably could have performed such redactions. Similarly, EVCP's argument that the banks consented to the costs associated with preparing the spreadsheet when they

entered into the agreement in April is belied by the fact that the agreement expressly preserved the banks' right to object to any fee application. *See* Dkt. 193-3 ¶¶ 10-11.

Nevertheless, JPMorgan has failed to establish that the costs of preparing the spreadsheet was greater than simply producing redacted documents (and if so, how much greater). While JPMorgan asserts that the fees incurred by PWC are a reasonable approximation, it offers no support for this contention. Further, JPMorgan plainly benefited from -— and saved substantial expense as a result of -— the work EVCP did in preparing the spreadsheet, which collected and aggregated in to one convenient source all of the datapoints that JPMorgan thought were relevant. Since presumably JPMorgan would have had to do this same work itself and without the benefit of EVCP's knowledge of the underlying materials, any additional costs incurred by EVCP in preparing the spreadsheet is made up for in time saved by JPMorgan.[2]

JPMorgan also takes issue with the rates EVCP's billers charged in preparing the spreadsheet, accusing EVCP of using "expensive attorneys." JPMorgan Opp. at 2. However, having reviewed the invoices that have been submitted, most of the work

---

[2]   EVCP also argues that redacted files would have been useless to JPMorgan, since they could not have tied a particular document to a particular claimant. This is an overstatement, since presumably EVCP could have pseudonymized the files, rather than completely redacting them, although doing this would have increased the expense further.

to prepare the spreadsheet was done by PWC, whose employees billed at rates between $300 and $650 per hour, which the Court finds to be reasonable under the circumstances. The same is true of EVCP's chief legal counsel, who billed at a rate of $300 per hour, and EVCP's chief of staff, who billed at a rate of $190 per hour. JPMorgan's criticism does, however, have some validity with respect to the administrator of EVCP, Jordana Feldman, who billed at a rate of no less than $1,000 per hour and single-handedly billed $485,088.01 in fees for approximately 485 hours of work from March to May.

Accordingly, the Court grants EVCP's request for reimbursement of this portion of its expenses, except with respect to the $485,088.01 in fees incurred by Ms. Feldman, which the Court finds should be reduced by half. EVCP is therefore entitled to reimbursement of $751,154.01 in expenses incurred in connection with subpoena compliance.

B. Legal Fees of Outside Counsel & Costs of Opposing Subpoena.

EVCP also seeks reimbursement of attorney's fees incurred by its outside counsel, as well as certain other expenses incurred resisting JPMorgan's subpoena and motion to compel, totaling $568,447.32. This amount can be broken into two categories: fees incurred before JPMorgan's motion to compel was granted and fees after the motion to compel was granted. As explained below, the Court finds that neither category is recoverable.

*First*, EVCP seeks reimbursement of $271,333.62 in legal fees and costs incurred during the process of initially resisting JPMorgan's subpoena and then litigating JPMorgan's motion to compel.

JPMorgan argues that costs incurred resisting a subpoena, as opposed to complying with it, are not recoverable under Rule 45. See *Contant*, 2020 WL 3260958, at *5 (holding that "that [that] was not spent in connection with subpoena compliance, but rather was spent seeking to avoid compliance" was not recoverable); *In re World Trade Ctr. Disaster Site Litig.*, 2010 WL 3582921, at *2 ("Hiring outside counsel is appropriate when a nonparty wishes to resist a subpoena duces tecum for its own independent reasons, but that is not a sufficient reason to charge legal costs to the issuing party."). EVCP responds that the Court may, in its discretion, award attorney's fees to a party that successfully resists a motion to compel. *See* EVCP Reply, at 1 n.2 (citing *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 2015 WL 10767718, at *2 (S.D.N.Y. Oct. 6, 2015)).

The Court agrees with JPMorgan that the costs of litigating a motion to compel are not recoverable here. It is true that the Court partially sustained EVCP's objection to the subpoena, finding certain of the requests to be overly broad. But JPMorgan essentially prevailed with respect to all the core issues presented by its motion. In particular, the Court rejected EVCP's principal

contention that almost all the requested documents were protected by the mediation privilege. This is not a case where EVCP was "ordered to produce documents on substantially the same conditions it had offered" prior to the motion to compel. *Sonoma*, 2015 WL 10767718, at *2.

*Second*, EVCP seeks $296,115.77 in legal fees incurred by its outside counsel at Quinn Emanuel, who were brought in after the Court granted JPMorgan's motion to compel.  It is unclear what work Quinn did to incur these fees. Quinn has not submitted any billing records, and the invoices it submitted simply describe Quinn's work as "Professional Services . . . in connection with JP Morgan and Deutsche Bank's efforts to obtain (via subpoena) confidential and potentially privileged documents from the program." EVCP's brief describes Quinn's work as "legal fees not related to opposition to the Subpoenas," but explicitly acknowledges that "outside counsel did not participate in the preparation of the Spreadsheet." Reply, at 2 nn.4-5.

As best as the Court can determine, Quinn's fees were incurred negotiating the agreement that ultimately led to the production of the spreadsheet. Accordingly, the Court finds these fees were not incurred in connection with subpoena compliance, but instead in continuing to resist the subpoena. As noted, EVCP could have simply produced redacted documents as the Court previously ordered it to do. While EVCP was free to enter into an agreement with JPMorgan

modifying the scope of that obligation, it is not entitled to reimbursement of additional costs incurred in doing so.[3]

C. Division of Fees Between Defendants.

The two banks disagree about how any amount that must be reimbursed should be divided between them. JPMorgan argues that a 50/50 split is appropriate, whereas Deutsche Bank argues the Court lacks authority to shift any costs to it pursuant to Rule 45 (EVCP takes no position on this question).

Deutsche Bank argues that the spreadsheet was prepared exclusively in response to JPMorgan's subpoena, since Deutsche Bank had already entered into two agreements with EVCP in February and March to resolve outstanding disputes concerning its subpoena, and so, according to Deutsche Bank, it cannot be held liable under Rule 45. Neither of those agreements contained any express provision absolving Deutsche Bank of liability for compliance costs. Nor is it correct that the spreadsheet was prepared exclusively in response to JPMorgan's subpoena. While, in March, Deutsche Bank did waive its right to further litigate its subpoena,

---

[3]    The invoices for work done by Quinn and EVCP's prior counsel, Smith Villazor, do not even list the number of hours worked by each firm, let alone offer a meaningful description of it. So even if the Court believed that this work was, as a general matter, within the realm of what may be reimbursed under Rule 45, the Court would still have to deny this portion of the motion, because EVCP has failed to demonstrate that the amount of these fees are reasonable. *See In re Aggrenox Antitrust Litig.*, 2017 WL 4679228, at *2.

it did so only on the condition that any documents produced to JPMorgan would also be produced to Deutsche Bank. In effect, Deutsche Bank did not withdraw its subpoena but instead narrowed it to include only the materials JPMorgan would receive.

Even assuming those two agreements collectively withdrew Deutsche Bank's subpoena such that a fee award under Rule 45 would be improper, those agreements were superseded by the subsequent agreement Deutsche Bank signed in April 2023 that led to the creation of the spreadsheet. That agreement expressly granted Deutsche Bank the right to "move the Court for relief with respect to issues arising from compliance with the Order, and to seek other relief pursuant to the subpoena it served upon EVCP." Dkt. 194-1 ¶ 11. Even if Deutsche Bank's subpoena was dead at that time, this agreement revived it. Further, Deutsche Bank received a final copy of the spreadsheet and even asked for modifications in the scope of the spreadsheet, including to expand its timeframe. While Deutsche Bank claims its modifications were minor, that argument is entirely unpersuasive. Expanding the timeframe served to add individuals to the spreadsheet, including most of the class members suing Deutsche Bank who otherwise would not have been included, thereby creating substantially more work for EVCP. Deutsche Bank therefore cannot plausibly claim it was simply a passive recipient of this document (even if that were a defense).

While Deutsche Bank should clearly be required to bear some portion of the costs of compliance, the Court agrees that it should bear a lesser share than JPMorgan. JPMorgan was the driving force behind the subpoena, whereas Deutsche Bank expressed a willingness to accept far less information than JPMorgan, and JPMorgan was the only party that actually used the information (although at the time the spreadsheet was completed Deutsche Bank had not yet entered into its settlement with the class). Further, based upon the parties' submissions seeking final approval of the class action settlements in the two respective cases, there are approximately three to four times as many JPMorgan class members than there are Deutsche Bank class members. Accordingly, the Court finds that Deutsche Bank should bear one quarter of EVCP's cost of subpoena compliance and JPMorgan should bear three quarters of EVCP's cost of subpoena compliance.

IV.   Conclusion

For the reasons set forth above, JPMorgan is hereby ordered to pay EVCP $563,365.51 and Deutsche Bank is hereby ordered to pay EVCP $187,788.50 to compensate EVCP for its reasonable costs of subpoena compliance. The Clerk of the Court is respectfully directed to close Dkt. 189 in Jane Doe 1 v. JPMorgan Chase Bank, N.A., 22-cv-10019.

SO ORDERED.

New York, NY
November 22, 2023

JED S. RAKOFF, U.S.D.J.